**F I L E D**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

JAN 1 8 2012

GREGORY C. LANGHAM
CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| Civil Action No. 11-cv-03238-PAB-KMT | ) |
| | ) |
| | ) |
| | ) |
| Samuel M Walker, pro se | ) |
| Diane H Walker, pro se | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| Fred Wegener, individual and official capacity | ) |
| Bobby Priestly, individual and official capacity | ) |
| Cindy Hardey, individual and official capacity | ) |
| Rebecca Bramlett, individual and official capacity | ) |
| Amy Franck, individual and official capacity | ) |
| Juan Gallegos, individual and official capacity | ) |
| Dep Sgt Brown, individual and official capacity | ) |
| Park County | ) |
| Park County Commissioners | ) |
| Attorney General, Colorado, official capacity | ) |
| Court Clerk, individual and official capacity | ) |
| | ) |
| Defendants | ) |
| | ) |

## PLAINTIFF'S ANSWER TO DEFENDANTS MOTION TO DISMISS

Plaintiff's Samuel M Walker and Diane H Walker, each pro se, Answer Defendants

Suthers and McLimans motion to dismiss.

## INTRODUCTION

In 2009, officials of Park County, with willful and wanton conduct, violated Plaintiff's

guaranteed Constitutional Rights to be free from unlawful searches and seizures, cruel and

unusual punishment, the taking without just compensation, equal protection under the law,

and access to Due Process.  Plaintiffs' guilty pleas were economic decisions 9-12 months

after the Park County officials initially violated the Walker's constitutional rights. Through the 'claim' development process we determined that Suthers and McLimans were also Constitutional rights violators and part of the official Park County way of doing business.

We regret to see that the Attorney General has lost sight of the real issues and instead focused his attention on protecting the alleged criminal conduct of governmental officials. As a result of Struthers and McLimans failure to do their respective duties, they also engaged in the violations of the Walker's constitutional rights.

Though our complaint is not a model of clarity, we will include exhibits to reflect our inputs to a future one-time amended complaint in accordance with Fed.R.Civ.P 15(a)(1). However, these exhibits will provide the particularity necessary for the court to understand Plaintiff's Answer to Defendants Motion to dismiss.

For reference, **Exhibit A** is the draft revised Caption, **Exhibit B** is the draft revised Parties, **Exhibit C** is the draft revised Factual Background, **Exhibit D** is the revised Counts, and if needed **Exhibit E** will be the revised Prayers for Relief. All subsequent Exhibits, if required, will be documents required to support Plaintiffs' Answer.

## ARGUMENT

I. **Filing of a Notice of Claim in accordance with the Colorado Governmental Immunity Act (CGIA) is not required when claims are made under a 42 U.S. § 1983 complaint.**

In Defendant's motion to Dismiss, the first section I (p2), paragraph A addresses the provisions of the CGIA (p3); paragraph B addresses Defendants rationale for claims are barred due to failure to file a notice of claim (p3-5); and paragraph C addresses the CGIA waived functional areas of which plaintiffs claims are alleged to not fall within the waived areas (p5-7). A Notice of Claim was filed within 180 days of the initial

constitutional rights violations (**Exhibit F**).  Defendants Suthers and McLimans would

have been one of the John and Jane Doe future defendants identified on the initial Notice

to the county.  However, Plaintiffs assert that a Notice of Claim is not required.

A Notice of Claim is not required when filing a complaint under 42 U.S.C. § 1983 for

civil rights violations.  [A] "cause of action asserted pursuant to 42 U.S.C. § 1983 does

not require service of a Notice of Claim".  *Rapoli v Village of Red Hook, 41 AD 3d 456.*

To continue our analyses, the Supremacy Clause states:

"This Constitution, and the Laws of the United States which shall be made in
Pursuance thereof; and all treaties made, or which shall be made, under the Authority of
the United States, shall be the supreme Law of the Land; and the Judges in every State
shall be bound thereby, any Thing in the Constitution of Laws of any State to the contrary
notwithstanding."
U.S. Constitution, Art VI, para 2

Therefore, Plaintiffs' continue to assert that the state statute requiring a Notice of Claim

prior to filing a complaint for civil rights violations "…stands as an obstacle to the

accomplishment and execution of the full purposes and objectives of Congress." *Edgar v*

*Mite Corp, 457 U.S. 624, 631 (1982).*  In addition, "…[the] Notice of Claim statute

undermines section 1983 unique remedy against state governmental bodies and their officials

by conditioning the right of recovery so as to minimize governmental liability.  …Congress

never intended that those injured by governmental wrongdoers could be required, as a

condition of recovery, to submit their claims to the government responsible for their

injuries." *Felder v Casey, 487 U.S. 131 (1988) Pp 141-142*.  "…States retain the authority to

prescribe the rules and procedures governing suits in their courts [but] that authority does not

extend so far as to permit States to place conditions on the vindication of a Federal Right."

*Pp 487 U.S. 146-150.*

Plaintiffs' conclude that all arguments provided by Defendants Motion to Dismiss

regarding any and all aspects of the CGIA do not apply to our claim as submitted.  A Notice of Claim is not required at any time prior to filing in federal courts.  Therefore, our claims against Suthers and McLimans are not barred due to the Supremacy Clause and well established case law.

## II.    Plaintiffs' official capacity claims are NOT barred by Eleventh Amendment immunity.

The defendants have raised the shield of Eleventh Amendment immunity.  As the Defendant's correctly point out, the Eleventh Amendment (transcribed in their Motion) generally (not explicitly) bars federal jurisdiction over lawsuits against state officials acting in their Official capacities when the state is the real party at interest. *MCI Telecomm. Corp v Illinois Bell Tel Co, 222 F.3d 323, 337 (7th Cir 2000). (citing Pennhurst State Sch & Hosp v Halderman, 465 U.S. 89, 101-102, 104 S.Ct 900, 79 L.Ed.2d 67(1984)).*

However, there are three specific exceptions to the Eleventh Amendment 'state' immunity to lawsuits in federal court.  Defendants Motion references only two of the three exceptions so Plaintiffs' will restate each exception and respond to each.  The three exceptions are stated as follows: (1) "Congress has abrogated the state's immunity from suit through an unequivocal expression of its intent to do so through a valid exercise of its power"; (2) a state "has properly waived its immunity and consented to suit in federal court"; and (3) the plaintiff "seeks prospective equitable relief for ongoing violations of federal law…under the Ex Parte Doctrine." *Marie O. v Edgar, 131 F.3d 610, 614-615 (7th Cir 1997) (citing Seminole Tribe of Fla v Florida, 517 U.S. 44, 55-56, 116 S Ct 1114, 134 L. Ed. 2d 252 (1996), and Ex Parte*

*Young, 209 U.S. 123, 159-160, 28 S. Ct. 441, 52 L. Ed. 714 (1908)).*

A. Addressing the first exception, "has Congress abrogated the 'states' immunity from suit…?" Case law review for applicability seems to focus on claims involving violations to fundamental rights: (1) the right of access to the courts (*Tennessee v Lane, 541 U.S. 509, 522-523 (2009)*); and (2) a claim that alleges an actual constitutional violation. U.S v Georgia, 546 U.S. 151 (2006) and U.S. v Lazarenko, 564 F.3d 1062 (9th Cir 2009). With respect to access to the courts, it appears that the Defendants want immunity so as to deny a hearing of Plaintiffs' claims.

With respect to constitutional violations, Plaintiffs' allege that there are ongoing constitutional violations associated with at least three state statutes:

(a) The animal cruelty statute, 18-9-202 CRS, (**Exhibit**   ) is defective as it fails to provide Due Process associated with a seizure of property (animals).  Law enforcement is not required to provide Notice of a seizure to the property owner (Complaint paragraphs 62, 81-82, 86, 111) and law enforcement blatantly abuses this omission.  "The government is not permitted to deprive an animal owner of his property without due process of law". (*The Louisville Kennel Club, Inc, Et al v Louisville/Jefferson County Metro Government, US District Court, Western District of Kentucky at Louisville, pp19 (October 2009))* This statute is also not linked to the bonding statute;

(b) the financial bonding statute 18-9-202.5 CRS (**Exhibit**   ), requires the owner of the property that was seized to provide 'notice' to the government but does not have a requirement to provide Constitutionally required Due Process of Notice and a hearing to the property owner.  Again, law enforcement blatantly abuses this omission of the law.  This statute should also be linked to the seizure statute in (a) as they are closely related.

The bonding statute is defective due to a taking of property prior to a finding of guilt. "Consequently we must hold that … [it] would permanently deprive a pet owner of his property, absent a finding of guilt, is unconstitutional." Louisville, pp19 (2009).

{c}. The interception statutes 16-11-101.8, 16-18.5-106.5 and 24-35-605 CRS fail to provide constitutional safeguards to ensure failures of due process, mis-allocations, and unlawful seizures of gambling winnings and state tax refunds are controlled, supervised and abuses eliminated.

The statutes require the appropriate court (court of record) to certify the restitution balances are correct, monthly.  The Clerk of the Court, Defendant McLimans, has the duty to certify these balances in accordance with some unknown procedures (subject to discovery).  Managers of the balances working for the probation department maintain the financial accounts due to the monthly payments made by all defendants under their jurisdiction.  It is not clear nor apparent how often, McLimans reviews or certifies the Restitution Balances, but it is not monthly.  The Restitution balance was paid to zero on August 4, 2011, yet in late September 2011, Plaintiff, S Walker, had approximately half of a jackpot seized due to a Restitution balance near $1500.  (Court Clerk has a record of all transactions of intercepts for both Plaintiffs or the Record may be at the Court of Appeals).  Defendant McLimans failed to do her duty to perform the administrative task, to monthly, certify the correct Restitution balance.  Her failure to do her duty was a direct and proximate cause of the unlawful seizure.

A second seizure involved that of the state tax refund in March 2011 (**Exhibit**   ). Defendant McLimans failed to provide notice to Plaintiff, S Walker, who was incarcerated.  An administrative review was required (part of due process) to be

conducted for the determination of the amount of the joint return that belonged to Walker and the proper distribution of the tax refund.  Ultimately the entire tax refund was applied to the Plaintiff D Walker Restitution balance.  A challenge to the assessed Restitution amount was conducted on June 28, 2011 and at that time the S Walker Restitution amount was determined and so ordered as joint and several between both Plaintiffs. Again, though the Restitution is joint and several (balance is the same for both parties) the Restitution balances through their life failed to track with each other as each of the Plaintiffs made their respective payments in different amounts and on different days. Again Defendant McLimans failed in her duty to ensure the correct balances wee certified as correct.  Plaintiffs' also determined during their investigation that the Restitution balances reflected on the judicial computers, are NOT the same balances as reflected in the balances as displayed on the 'registry' or casino computers (discovery required to obtain judicial documentation).

Plaintiffs' conclude that these defective statutes were a direct and proximate cause for unlawful seizures, excessive bonding requirements, failure to provide 'notice and hearings' represent ongoing violations of constitutional rights and violations of existing federal laws.  Defendants McLimans and Suthers failed to do their duty to ensure Plaintiffs' constitutional rights were not violated.  Plaintiffs' therefore assert state immunity has been abrogated.

B.  Plaintiffs' allege the State of Colorado has waived its Eleventh Amendment immunity and consented to suit in federal court.  There are three conditions where the state can properly waive its immunity. (a) by state legislation explicitly waiving immunity from suit; (b) by accepting federal funds that have been provided on the condition that

sovereign immunity is waived, and (c) by removing state court litigation to federal court. In the first condition, there are no known (to Plaintiffs) state legislative actions where the State of Colorado has explicitly waived its immunity.

In the second condition, states waive their immunity by accepting federal funds contingent upon waiver. Congress may impose conditions on states in exchange for provisions of federal funds. *(South Dakota v Dole, 483 U>S> 203 (1987) and Fullilove v Klutznick, 448 U>S> 488, 474 (1980).* Congress may require that the states waive their sovereign immunity as a condition of receiving federal funds but there must be a clear notice of the consequences of accepting the money. *Atascadero State Hosp v Scanlon, 473 U.S. 234, 246-247 (1985).* The court has stated that Congress crafted an unambiguous waiver of the state's Eleventh Amendment immunity in 42 U.S.C. § 2000d-7. *Lane v Pena, 518 U.S. 187, 200 (1996).* Section 2000d-7 applies to the states as a waiver of immunity arising from a state accepting federal funds. *Id at 198 (1996).* The Rehabilitation Act provides that if one part of a department or agency receives federal financial assistance, the entire entity is considered to receive federal assistance and must conform to the Act's requirements. *29 USCA § 794(b); Schroeder v Chicago, 927 F.2d 957,962 (7th Cir 1991); Fed Reg 24314-22 (2005).* Finally, "...states waive their sovereign immunity under the Rehabilitation Act by accepting federal funds." *Constantine, 411 F.3d 474, 491-96 (4th Cir 2005); Miller v Tex. Tech Univ. Health Scis Ctr, 421 F3d 342, 349 (5th Cir 2005) (en banc); Barbour v Washington Metro Area Transit Auth, 374 F.3d 1161 (DC Cir 2004); Nieves-Marquez v Puerto Rico, 353 F.3d 108, 127-129 (1st Cir 2003); Brockman v Wyo Dep't of Family Services, 342 F.3d 1159,1167-1168 (10th Cir 2003); Koslow, 302 F.3d 161, 167-176 (3d Cir 2002); Locell v*

*Chandler, 303 F.3d 1039, 1050-1052 (9th Cir 2002); Nihiser v Ohio Envtl Prot Agency, 269 F.3d 626 (6th Cir 2001); Garrett v Univ of Ala at Birmingham Bd of Trs, 276 F.3d 1227, 1228 (11th Cir 2001) (en banc); Stanley v Litscher, 213 F.3d 340, 344 7th Cir 2000); Jim C v United States, 235 F.3d 1079, 1081-1082 (8th Cir 2000) (en banc).*

C. In the third condition, Waiver of Immunity by litigation, Plaintiffs' are not aware of any applicable actions by the state of Colorado.

Plaintiffs' therefore conclude that due to the states abrogation of immunity, ongoing violations of federal rights and statutes, and acceptance of federal funds, the State of Colorado has explicitly waived their Eleventh Amendment Immunity.

**III.     State officials acting in their official capacities can be subject to suit under 42 U.S.C. § 1983.**

Claims against state officials in their official capacity are limited to prospective injunctive relief, it does not affect damage claims against those officials in their individual capacity. *Hafer v Melo, 502 U.S. 21, 29-30 (1991); Scheuer v Rhodes, 416 U.S. 232, 237 (1994); Davis v Scherer, 468 U.S. 183 (1984).* A government employee can be sued in his or her personal [individual] or official capacity or both, the distinction being the person or entity that the plaintiff is ultimately holding responsible. The Supreme Court has stated: "Personal capacity suits seek to improve personal liability upon a government official for actions he takes under color of state law... Official capacity suits, in contrast, 'generally ' represent only another way of pleading an action against an entity of which an officer is an agent. *Kentucky v Graham, 473 U.S. 159, 165-166 (1985) (quoting Monell, 436 U.S. 690, n. 55.* The court explained " [The] phrase acting in their official capacities is best understood as a reference to the capacity in which

the state officer is sued, not the capacity in which the officer inflicts the alleged injury."

*Hafer v Melo, 502 U.S. 21 (1991).*

[A] suit against a state official in his or her official capacity is not a suit against an official but rather a suit against the officials office. *Will v Mich Dept of State Police, 491 U.S. 58, 71 (1989).* Agency liability must be founded on a deprivation caused by the institution's "custom, policy or practice, and is not as a result of aberrant behavior by a rogue employee. Government can be a person if the deprivation of federal rights stems from a government policy. *Monell, 436 U.S. 690-691 (    ), Connick v Thompson, 131 S. Ct 1350, 1359 (2011).* Note that the policies, acts, and practices of the government must be so wide spread as to "practically have a force of law". *Los Angele, Co v Humphries, 131 S Ct 447 (2010).*

In the previous section (II) we expanded on all the problems associated with defective statutes and failures of the defendants to do their respective duties. They have and are demonstrating a custom, pattern and practice of not doing their duties cease protecting citizen's rights and inflict damage as described in the complaint and our Answer. These defendants have impacted the entire area of the Park County District Court through McLimans conduct and the entire state of Colorado with Suthers failure to ensure the statutes are constitutionally compliant. Defendant is "the state's top law enforcement official", where every day we work hard to ...prosecute criminals who prey upon our citizens". http://www.coloradoattorneygeneral.gov/. Retrieved 1/15/12.

Defendants can be sued in their officials and individual capacities. They were both served in their individual and official capacities.

IV.   **All Plaintiffs' claims for damages against Defendant McLimans are not barred by judicial immunity.**

As stated by the Defendants, few doctrines are more solidly established...then absolute immunity...for acts committed within their judicial discretion.

However, the administrative function of the Court Clerk, McLimans, to monitor and certify financial transactions is NOT discretionary. The Defendant has a monthly balance certification task which is required by statute. Very clear, very specific, and without any judgement required to make a decision other than to not do the monthly certifications of all Restitutions within her jurisdiction. McLimans also has a statute compliance requirement/task to provide notice to a party when the county intercepts a state tax refund. Again no subjective decisions required other than to not do her duty. "An act that is administrative in nature and that does not alter the rights and liabilities of the parties". Morrison v Lipscomb, 877 F.2d 463,464-466 (6th Cir 1989). A judge is not immune for tortuous acts committed in a purely administrative, non-judicial capacity. Forrester v White, 484 u.s. 227-229, 108 S Ct at 544-545; Stump v Sparkman, 435 U.S. 380, 98 S.Ct 1106. Mireles v Waco, 112 S.Ct 286, 288 (1991). When a judge knows that he lacks jurisdiction OR acts in the face of clearly valid statutes expressly depriving him of jurisdiction, judicial immunity is lost. Rankin v Howard, (1980),633 F.2d 844, cert den. Zeller v rankin, 101 S.Ct 2020, 451 U.S. 939, 68 L.Ed 2d 326.

The U.S. Supreme Court stated that hen a state officer acts under a state law in a manner violative of the Federal Constitution, he/she comes into conflict with the superior authority of the Constitution, and [she] is in that case stripped of [her]

official or representative character and is subjected in [her] person to the

consequences of [her] individual conduct.  The state has no power to impart to [her]

any immunity from responsibility to the supreme authority of the United States."

*Scheuer v Rhodes, 416 U.S. 232, 94 S.Ct 1683, 1687 (1974).*

Plaintiffs' assert Defendant McLimans has no judicial immunity due to her

administrative tasks associated with the Plaintiffs and her willful non-compliance

with state statute requirements which are not discretionary which is a direct and

proximate cause of Plaintiffs' claims.

**V.      Plaintiffs' § 1983 claims against Defendant Suthers must NOT be dismissed because Plaintiffs' have provided particularity to their allegations that Defendant Suthers personally participated in the violation of Plaintiffs' constitutional rights.**

Personal participation is an essential allegation in a § 1983 civil rights action.

Bennet v Passic, 545 F.2d 1260,1262-1263 (10th Cir 1976).  To establish personal

liability, there must be an affirmative link between the alleged constitutional violation

and each defendant's participation, control or direction, or failure to supervise.  Se

Ashcroft v Iqbal, 556 U.S. 662, 29 S.Ct 1937, 1948 (2009); Butler v City of Norman,

992 F.2d 1053, 1055 (10th Cir 1993).

Plaintiffs' allegations are detailed in the Factual Background section of the

complaint (Exhibit C).  However, Defendant Suthers has a duty to ensure state

statutes are constitutionally compliant.  Plaintiffs' assert state statutes are defective

because they are void of constitutional safeguards.  The direct and proximate cause of

Suthers failure in his duty directly not only allows violations of constitutional rights

of the Plaintiffs' but the violations have become a state wide custom and practice with

the appearance of law of all the citizens of the state.

Defendant Suthers participated personally through direct participation, control and direction, or failure to supervise. Defendant is the Attorney General of the State of Colorado. By virtue of his position and web site Welcome statement, he is the "state's top law enforcement official and he continues with his hard work to orisecute criminals who prey upon our citizens [the people]. Suthers, as the top law enforcement official has failed to maintain cognizance of judicial rulings that may and are impacting the state's citizens and all law enforcement agencies within the state. As the top enforcement official he has a duty to ensure citizens constitutional rights are protected and blatant abuses are investigated and offenders prosecuted to the extent of the law.

Defendant Suthers direct participation to do his duty or not ensures his direct and personal participation with protecting or violating Plaintiffs' constitutional rights.

**VI.     Defendants are NOT entitled to qualified immunity.**

CONCLUSION

Based upon the arguments and authorities cited in this Answer, Plaintiffs' Samuel and

Diane Walker request this court to continue the litigation against Defendants Suthers and

McLimans and allow the scheduling and discovery processes to move forward.

Respectfully submitted,

Samuel M Walker
Pro Se
POB 59
Florissant, CO 80816
719-646-1919 (h)

Diane H Walker
Pro Se
POB 59
Florissant, CO 80816
719-330-7325 ©

## CERTIFICATE OF SERVICE

This is to certify that I have duly served the within Answer to Motion to Dismiss all claims against Defendants Suthers and McLimans upon all parties or representing attorneys herein by depositing of same in the United States mail, first-class postage prepaid, at _Woodland Park_, Colorado, this 17th day of January 2012 addressed as follows:

Name: _William Evans, Sr_
Address: _1700 Wildhorn Rd_
_Florissant CO 80816_

Kathleen Spalding                    US District Court
1525 Sherman St,  7th Floor          901 19th St, Rm A-105
Denver, CO 80203                     Denver, CO 80294-3589

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-03238-PAB-KMT )
)
)
)
**Samuel M Walker, pro se** )
**Diane H Walker, pro se** )
)
Plaintiffs, )
)
v. )
)
**Fred Wegener, individual and official capacity** )
**Bobby Priestly, individual and official capacity** )
**Cindy Hardey, individual and official capacity** )
**Rebecca Bramlett, individual and official capacity** )
**Amy Franck, individual and official capacity** )
**Juan Gallegos, individual and official capacity** )
**Dep Sgt Brown, individual and official capacity** )
**Park County** )
**John Tighe, individual and official capacity** )
**Dick Hodges, individual and official capacity** )
**Mark Dowaliby, individual and official capacity** )
**John Suthers, individual and official capacity** )
**Debra McLimans, individual and official capacity** )
)
)
**Defendants** )
)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-03238-PAB-KMT                    )
                                                        )
                                                        )
                                                        )
Samuel M Walker, pro se                                 )
Diane H Walker, pro se                                  )
                                                        )
Plaintiffs,                                             )
                                                        )
v.                                                      )
                                                        )
Fred Wegener, individual and official capacity          )
Bobby Priestly, individual and official capacity        )
Cindy Hardey, individual and official capacity          )
Rebecca Bramlett, individual and official capacity      )
Amy Franck, individual and official capacity            )
Juan Gallegos, individual and official capacity         )
Dep Sgt Brown, individual and official capacity         )
Park County                                             )
John Tighe, individual and official capacity            )
Dick Hodges, individual and official capacity           )
Mark Dowaliby, individual and official capacity         )
John Suthers, individual and official capacity          )
Debra McLimans, individual and official capacity        )
                                                        )
    Defendants                                          )
                                                        )

---

## COMPLAINT

---

Come the Plaintiffs, pro se, and for cause of action would state as follows:

### INTRODUCTION

EXHIBIT A

## III. PARTIES

### A. Plaintiffs

1.  The Plaintiff, Samuel M Walker [Sam], is a citizen and resident of Teller County, Colorado and owned property in Park County where the violations occurred.

2.  The Plaintiff, Diane H Walker, is a citizen and resident of Teller County, Colorado and owned property in Park County where the violations occurred.

### B. Defendants

3.  County Sheriff Fred Wegener, employed by Park County, is a citizen of the State of Colorado, was at all times material to the allegations in this complaint, acting individually and in his capacity as County Sheriff, and was acting under color of state law.

11. Officer Bobby Jo Priestly, employed by Park County, is a citizen of the State of Colorado, was at all times material to the allegations in this complaint, acting individually and in her capacity as Animal Control (ACO)/Code Enforcement Officer, and was acting under color of state law.

12. Officer Rebecca Bramlett, employed by Park County, is a citizen of the State of Colorado, was at all times material to the allegations in this complaint, acting individually and in her capacity as Animal Control (ACO)/Code Enforcement Officer, and was acting under color of state law.

13. Officer Cindy Hardey, employed by Park County, is a citizen of the State of Colorado, was at all times material to the allegations in this complaint, acting individually and in her capacity as Animal Control (ACO)/Code Enforcement Officer, and was acting under color of state law.

EXHIBIT B

14. Officer Amy Franck, employed by Park County, is a citizen of the State of Colorado, was at all times material to the allegations in this complaint, acting individually and in her capacity as Park County deputy, and was acting under color of state law.

15. Deputy Juan Gallegos, employed by Park County, is a citizen of the State of Colorado, was at all times material to the allegations in this complaint, acting individually and in his capacity as Park County deputy, and was acting under color of state law.

16. Deputy Sgt Brown, employed by Park County, is a citizen of the State of Colorado, was at all times material to the allegations in this complaint, acting individually and in his capacity as Park County deputy, and was acting under color of state law.

17. John Tighe, Park County Commissioner for District 1, employed by Park County, is a citizen of the State of Colorado, is at all times material to the allegations in this complaint, acting individually and in his official capacity in the governing body of Park County, and was acting under color of state law.

18. Dick Hodges, Park County Commissioner for District 2, employed by Park County, is a citizen of the State of Colorado, is at all times material to the allegations in this complaint, acting individually and in his official capacity in the governing body of Park County, and was acting under color of state law.

19. Mark Dowaliby, Park County Commissioner for District 3, employed by Park County, is a citizen of the State of Colorado, is at all times material to the allegations in this complaint, acting individually and in his official capacity in the

*Exhibit B*

governing body of Park County, and was acting under color of state law.

20. John W Suthers, Attorney General, employed by State of Colorado, is a citizen of the State of Colorado, is at all times material to the allegations in this complaint, acting individually and in his capacity as the state legal authority, acting under color of state law.



21. Debra L McLimans, Park County Combined Court Clerk, employed by Park County, is a citizen of the State of Colorado, was at all times material to the allegations in this complaint, acting individually and in her capacity as Park County Combined Court Clerk, and was acting under color of state law.

Exhibit B

194.     The Park County Court Clerk, Debra McLimans, has the administrative

duty to monitor and timely update the county Restitution balances.

195.     The Park County Combined Court Clerk is required to timely certify

Restitution balances at the court of record for Defendants.

196.     Park County Combined Court Clerk, McLimans, failed to ensure the

Walker's Restitution balance was correct throughout the life of the balance.

197.     McLimans failed to provide notice in March 2011 to Plaintiff, Sam Walker,

prior to seizure of his portion of the 2010 state tax refund filed jointly.

198.     McLimans unlawfully applied Sam Walker's portion of the joint tax refund

in March 2011 to the Plaintiff Diane Walker Restitution balance prior to any

restitution ordered by the court to Plaintiff Sam Walker.

199.     The Restitution balance was ordered 'joint and several' on June 28, 20211.

200.     The Restitution balance was paid to zero on August 4, 2011.

201.     Casino's unlawfully seized Sam Walker property (winnings) based upon

incorrect balances reflected in the system in late September 2011.

202.     The Restitution balance was zero but the system reported greater than zero.

203.     The court clerk, McLimans, failed to certify a zero balance in August 2011.

204.     The state Attorney General, John Suthers, has a duty to ensure state statutes

are constitutionally compliant.

205.     The state Attorney General, John Suthers, failed to ensure the animal

cruelty statute, 18-9-202 CRS, was constitutionally compliant.

206.     The animal seizure provision of 18-9-202 CRS is defective because it is

void of a 'notice of seizure and hearing' requirement to the owner of the property.

EXHIBIT C

207.     The state Attorney General failed to ensure the financial bonding statute, 18-9-202.5 CRS, was constitutionally compliant.

208.     The bonding statute is defective because notice is dependent upon the 'citizen' property owner providing 'notice' to the government instead of the notice requirement TO the citizen FROM the government (the notice and hearing requirement by county officials).

209.     The bonding statute is defective because it is designed to coerce through intimidation bonding of an animal prior to a finding of guilt.

210.     The state Attorney General failed to ensure the numerous intercept statutes (restitution, tax refunds, gambling winnings, etc) xxxxxx CRS, were consistent, linked and constitutionally compliant.

*EXHIBIT* C

Revised
Counts

Exhibit D

## PRAYERS FOR RELIEF

WHEREFORE, the above premises considered, Plaintiffs demand:

1.  That process issue to the Defendants and ~~that~~ they be required to answer in time allowed by law.

2.  That judgement be rendered in favor of the Plaintiffs and against the Defendants on all *claims* ~~causes of action~~ asserted herein.

3.  That Plaintiffs be awarded those damages to which it may appear they are entitled by proof submitted in this cause for their *actual damages,* physical and mental pain and suffering, both past and future; permanent injury and disability; loss of enjoyment of life; loss of their personality, our dogs; and medical and psychological expenses, both past and future.

4.  That Plaintiffs be awarded treble punitive damages against Defendants.

5.  That Plaintiffs be awarded reasonable expenses incurred in this litigation, including reasonable attorney and expert fees, pursuant to 42 U.S.C Section 1988 (b) and (c).

6.  That the Plaintiffs receive any further and general *equitable* relief to which they are entitled, *such as prospective relief that warrants injunctive or declaratory relief.*

7.  That Defendants be immediately remanded into custody of Federal authorities and prosecuted by the Department of Justice for violations of specified Federal regulations to the furthest extent of the law.

8.  A jury for the trial of this matter.

    Respectfully submitted,


_____
Samuel M Walker
Pro Se
POB 59
Florissant, CO 80816
719-646-1919 (h)

_____
Diane H Walker
Pro Se
POB 59
Florissant, CO 80816
719-330-7325 ©


Exhibit  E

## NOTICE OF CLAIM
## PURSUANT TO COLORADO GOVERNMENTAL IMMUNITY ACT
### C.R.S. § 24-10-109

**VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED**

County Sheriff Fred Wegener
Park County Sheriff's Office
POB 604
1180 PCR 16
Fairplay, CO 80440

Park County
501 Main Street
Fairplay, CO 80440

Officer Cindy Hardy
Park County Sheriff's Office
POB 604
1180 PCR 16
Fairplay, CO 80440

Officer Rebecca Bramlett
Park County Sheriff's Office
POB 604
1180 PCR 16
Fairplay, CO 80440

Officer Amy Frank
Park County Sheriff's Office
POB 604
1180 PCR 16
Fairplay, CO 80440

Officer Bobby Priestly
Park County Sheriff's Office
POB 604
1180 PCR 16
Fairplay, CO 80440

Re:   *Notice of Claim of Samuel M and Diane H Walker.*

Dear Ladies and Gentlemen:

Please consider this communication a Notice of Claim under the Governmental Immunity Act on behalf of Samuel M Walker and Diane H Walker. This claim relates to the improper search and seizure of the Walker's property, failure to provide equal protection under the law, and the right to privacy and due process of the law on or about December 15, 2009. This Notice is provided within 180 days of the date of these incidents. In accord with the provisions of C.R.S. § 24-10-109, the following information is set out:

**I.      Name and Address of the Claimants**

Samuel M Walker
Diane H Walker
POB 59
1711 Wildhorn Rd
Florissant, CO 80816

EXHIBIT   F

April 27, 2011
Page 2

## II.  Statement of Basis for Claim

On Tuesday, December 15, 2009 at or about 130pm, Park County Animal Control was notified that an anonymous complaint was submitted through the American Humane Society to conduct a welfare check of the Walker's sled dog kennel.  Samuel Walker was out of town on a business trip in California and Diane Walker was at their residence in Florissant, CO. Caretakers were on verbal contract to feed, water, and care for the dogs until Mr. Walker's return on the 19th of December.

When the Park County Animal Control officers arrived at the kennel, located at 6000 FS 108, the officers conducted an initial assessment with selected photographs.  They removed 1 to 3 dogs at this time and decided to obtain a search warrant for the next day, December 16, and also requested the State veterinarian and her staff to conduct a systematic and consistent assessment of each dog in the kennel.

On 16 December, 2009 at or around 930am, Diane Walker received a message at the Walker residence in Florissant Co, that the Animal Control had received a complaint about the dogs and they were on route with a search warrant.  After the kennel assessment was completed on December 16, 2009, it was determined that approximately 30% of the kennel would be seized and turned over to Park County Animal Control.  However, the State veterinarian determined that the remaining 70% of the dogs were not in any danger and would not have to be removed from the property. Park County Animal Control Officer Priestly decided to seize and remove all of the dogs off the property anyway, despite this recommendation by the State veterinarian and the availability of the caretakers who were still on verbal contract to care for the remaining dogs.

During the course of the decisions being made and the  intimidating conduct of the Park County officers toward Mrs. Walker, she was coerced into signing an animal release of 98 dogs in the kennel on December 16, 2009.  After the final removal of the dogs on 17 December 2009, missing and stolen property was identified to Park County Sheriff's Department on December 20, 2009.

A second search warrant was justified to pickup 6 deceased dogs left on the property, and not buried, from the 15-17 Dec 2009 seizures. During this second search, conducted in January 2010, approximately 5 dog carcasses and bones were removed and there was a failure on the county's part to completely bury all dog remains, especially those animals that had been euthanized.  Their total disregard for existing laws and negligence in completing their task properly created a hazardous and toxic condition to the environment, wildlife, and endangered species, violating state and federal laws.

County officials failed to secure the Walker's property and contents while under their jurisdiction of the search warrant.

EXHIBIT  F

April 27, 2011
Page 3

The actions of the municipal, county employees violated the civil rights of Sam and Diane Walker and their federal and constitutional rights to be free from unwarranted search and seizure, the right to equal protection and the right to privacy and due process of law.

**III.    Name and Address of Public Employees Involved**

The public employees involved include the staff of the Park County Sheriff's Office.

The public employees involved also include employees who failed to train and properly supervise the employees and other persons working at the Park County Sheriff's Office.

The names of specific employees involved in the illegal and improper conduct set forth above are:

> County Sheriff Fred Wengerer
> Park County Sheriff's Office
> POB 604
> 1180 PCR 16
> Fairplay, CO 80440

> Officer Bobby Priestly
> Park County Sheriff's Office
> POB 604
> 1180 PCR 16
> Fairplay, CO 80440

> Officer Cindy Hardy
> Park County Sheriff's Office
> POB 604
> 1180 PCR 16
> Fairplay, CO 80440

> Officer Rebecca Bramlett
> Park County Sheriff's Office
> POB 604
> 1180 PCR 16
> Fairplay, CO 80440

> Officer Amy Frank
> Park County Sheriff's Office
> POB 604
> 1180 PCR 16
> Fairplay, CO 80440

EXHIBIT  F

April 27, 2011
Page 4

> And John/Jane DOES 1-20 who's names are not known and who may be identified during the course of the investigation of this matter.

The addresses of the potential entities are as follows:

> Park County
> 501 Main Street
> Fairplay, CO 80440

> Park County Sheriff's Office
> POB 604
> 1180 PCR 16
> Fairplay, CO 80440

## IV. Statement of Nature and Extent of Injury

As a result of the intentional, reckless, deliberately indifferent, and/or negligent actions detailed above, property was improperly and illegally taken.

County officials failed to secure the Walker's property and contents while under their jurisdiction of the search warrant.

The falsified affidavit for the second search warrant and the improper digging of the dog grave yard with the resulting improper reburial of euthanized dogs created a deadly hazard to our property and to the environment, wildlife and endangered species, violating state and federal statutes.
These actions severely threaten the Walker's lively hood.
These actions violated the state and federal civil rights of Samuel and Diane Walker.
Damages to both Sam and Diane Walker include pain and suffering and emotional distress.

## V. Monetary Damages Sought

> 1.   $7,500 economic damages
> 2.   $1,000,000 non-economic damages
> 3.   $2,000,000 exemplary damages

Plus litigation costs and attorney fees and other relief allowed by law.

Sincerely,

Samuel M Walker                         Diane H Walker
POB 59                                  POB 59
1711 Wildhorn Rd                        1711 Wildhorn Rd
Florissant, CO 80816                    Florissant, CO 80816

*EXHIBIT F*

April 27, 2011
Page 5

EXHIBIT F