IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.        11-CV-03238-PAB-KMT

SAMUEL M. WALKER, *pro se*
DIANE H. WALKER, *pro se*

Plaintiffs,


v.


FRED WEGENER, et al.

Defendants.

___

## INDIVIDUAL DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(B)(1)

___

The individual Defendants, Fred Wegener, Bobby (sic) Priestly,[1] Cindy Hardey, Rebecca Bramlett, and Dep. Sgt. Brown ("the Law Enforcement Officers")[2], by and through their attorneys, Timothy P. Schimberg and Andrew R. McLetchie of Fowler, Schimberg & Flanagan, P.C., hereby move to dismiss the claims asserted against them in their individual capacities pursuant to Fed.R.Civ.P. 12(b)(1) and in support thereof state as follows:

## I.        INTRODUCTION

The issue presented by this motion is whether the Law Enforcement Officers are entitled to qualified immunity in connection with their search of Plaintiffs' property and the subsequent seizure of dogs that were starving, sick, dead, and dying.  On December 15,  2009,  the  Law

___

[1] Bobby Priestly is spelled incorrectly in the caption.  Ms. Priestly's name is "Bobbi."
[2] Deputy Sergeant Brown is included in the definition of the Law Enforcement Officers for ease in drafting this Motion.  There are only two allegations in the Complaint directed to Deputy Sergeant Brown.  In Paragraphs 160 and 161, Plaintiffs' allege that Deputy Sergeant Brown failed to take a police report regarding the Sheriff's alleged "theft" of their dogs and as such, "condoned the theft."  Thus, Deputy Sergeant Brown did not participate in any deprivation of constitutional rights within the meaning of § 1983.  *See Leer v. Murphy,* 844 F.2d 628, 633 (9th Cir. 1988); *see also Gomez v. Rowland,* 17 F.3d 394 (Table) 1994 WL.

Enforcement Officers received a call from the Humane Society that dogs were sick, starving, dead, and dying on Park County land.  The Humane Society advised that the source of its information was Brian Whelan.  Plaintiffs had requested Mr. Whelan to take care of their kennel and dogs.   Mr. Whelan had Plaintiffs' permission to access their property.   The Law Enforcement Officers interviewed Mr. Whelan and Mr. Whelan escorted Fred Wegener, Bobbi Priestly, Cindy Hardey, and Rebecca Bramlett onto Plaintiffs' property to address the emergency of sick, starving, dead, and dying dogs on Plaintiffs' property.

When Mr. Whelan brought Fred Wegener, Bobbi Priestly, Cindy Hardey, and Rebecca Bramlett to Plaintiffs' property to perform a welfare check they observed dead dogs that Plaintiffs had stuffed into dog food bags and left in the snow.  *See* Exhibit A, photographs.  They also observed numerous starving dogs such as this:



In short, the conditions observed were deplorable and it was evident that dogs were in imminent danger and the dead and dying dogs posed a risk to public and environmental health.

The Plaintiff, Samuel Walker, subsequently pled guilty to felony animal cruelty and Plaintiff, Diane Walker, pled guilty to misdemeanor animal cruelty. *See* Exhibit B.[3]  Plaintiffs now have the *chutzpah* to allege that the Law Enforcement Officers' conduct: (1) violated their Fourth Amendment right to be free from unlawful searches and seizures; (2) violated their Fifth and Fourteenth Amendment rights because their dogs were seized without due process of law; and (3) violated various federal statutory rights.[4]

To the contrary, the conduct of Fred Wegener, Bobbi Priestly, Cindy Hardey, and Rebecca Bramlett comported with the Fourth Amendment because their initial "search" of Plaintiffs' home without a warrant was justified by the exigent circumstances exception to the warrant requirement and because Mr. Whelan provided third-party consent to search the property.  Both the exigent circumstances exception and third-party consent doctrine have been long recognized exceptions to the Fourth Amendment's warrant requirement by the United States Supreme Court and Tenth Circuit.  The subsequent searches of the Plaintiffs' property did not violate the Fourth Amendment because they were conducted pursuant to a warrant duly executed by a neutral and detached magistrate (a Colorado District Court Judge).  The seizure of the two dogs on the first day from Plaintiffs' property did not violate the Fifth or Fourteenth Amendment's due process clauses because it was consistent with C.R.S. § 18-9-202(1.8), which allows a peace officer to take possession of and impound an animal that the peace officer has probable cause to believe is a victim of animal cruelty.  No Court has opined that this statutory provision violates the due process clauses of the Fifth and Fourteenth Amendment to the United States Constitution.

---

[3] The Court may take judicial notice of this conviction pursuant to FIRE. 201.

[4] There are also fleeting allegations in general allegations of the *pro se* Complaint to the Eighth Amendment and *Miranda* violations.  These are not well pleaded allegations and are not included in the claims for relief. Nevertheless, these "claims" will be addressed briefly below.

As such, the Law Enforcement Officers' conduct did not violate any clearly established Constitutional or federal statutory right.   Therefore, they are cloaked with qualified immunity and are immune from suit.   Accordingly, the claims asserted against the Law Enforcement Officers should be dismissed with prejudice pursuant to Fed.R.Civ.P. 12(b)(1).

## II.   STANDARD OF REVIEW

An attack on a complaint based on sovereign or qualified immunity is evaluated under Fed.R.Civ.P. 12(b)(1). *Meyers v. Colo. Dept. of Human Servs.*, 62 Fed. Appx. 831, 831 (10th Cir. Jan. 6, 2003) (unpublished decision).   Rule 12(b)(1) motions to dismiss generally take one of two forms.   *See, e.g., Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002).   First, a defendant may make a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction.   *Id.*   Alternatively, a defendant may challenge the actual facts upon which subject matter jurisdiction is based.   *Id.*   In either event, the determination of whether a defendant is entitled to qualified immunity presents a question of law that must be resolved by the Court.   *See Robinson v. City & County of Denver*, 39 F. Supp. 2d 1257, 1265-66 (D. Colo. 1999).

When determining a motion to dismiss under Rule 12(b)(1), the court may consider not only the complaint itself, but also affidavits, deposition testimony, and other materials outside the complaint. *U.S. Synthetic Corporation v. Reed Hycalog, Ltd*.,  407 F.Supp.2d 1274, 176-77 (D.Utah 2005) (citing *United States v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 n. 5 (10th Cir. 1999).   When, as here, a party attacks the factual basis for subject matter jurisdiction, the court may not presume the truthfulness of the factual allegations in the complaint, but may consider evidence to resolve disputed jurisdictional facts.   *SK Finance SA v. La Plata County, Bd. of County Com'rs*, 126 F.3d 1272 (10th Cir. 1997) (citing *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).

## III.     STATEMENT OF FACTS

1.      The Complaint alleges that Mr. Brian Whelan had access to and authority and control over Plaintiffs' property on December 15, 2009.  Complaint at ¶¶ 31-38.

2.      On December 15, 2009, Sergeant Bobbi Priestly, an Animal Control Officer with the Park County Sheriff's Department, received a call from dispatch requesting that she contact Ashley Mauceri of the Humane Society of the United States regarding an animal cruelty complaint.[5]  *See* Exhibit C, Sergeant Bobbi Priestly's report at 9 of 24.[6]

3.      Sergeant Bobbi Priestly called Ms. Mauceri and Ms. Mauceri advised as follows:

- She had received a telephone call from a male party named Brian.
- Brian called her regarding approximately one hundred fifteen dogs in the Hartsel area.
- The dogs were reported as being very skinny and in need of assistance immediately.
- The dogs belong to Sam and Diane Walker.
- He would like to meet with someone and take the proper authorities to the location.
- His cellular telephone number is 719-221-7777.

4.      Sergeant Bobbi Priestly called the man identified as Brian and found out that his name was Brian Whelan.  *Id.*

5.      Mr. Whelan advised Sergeant Priestly as follows:

- He first met Sam Walker approximately 8 weeks ago and he adopted four dogs from Sam.

---

[5] Sergeant Bobbi Priestly's report is admissible under the public records and reports exception to the hearsay rule. *See* FRE 803(8).  *See also, Beech Aircraft Corp. v. Raney,* 488 U.S. 153, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988). To the extent any hearsay statements are contained within Sergeant Bobby Priestly's report (i.e., hearsay within hearsay) those statements are offered not for the truth of the matter asserted, but for the fact that they were said. Regardless of whether these statements are true, they are relevant and admissible because it bears on whether the investigating law enforcement officers believed there were exigent circumstances and whether they had third party consent to search the premises regardless of whether the statements were true.

[6] The first page of Sergeant Bobbi Priestly's report is labeled 9 of 24.  The first eight pages are labeled 1 of 8; 2 of 8; etc.  In the interest of brevity, those pages, which are simply forms containing biographical information and data are omitted.  Only the narrative report is submitted.

- Most of the dog's conditions at the time were poor, but he was supposedly starting to get them back to a healthier condition.
- "Thursday December 10, 2009 Sam gave me a call to take care of his dogs as payback for my previous kind-hearted adoption."
- He was to feed the dogs on Tuesday, Thursday and Saturday, December 15th, 17th, and 19th.
- Debra-Su Stevens[7] notified him of the condition of the dogs and what to expect.
- He showed up on December 15, 2009 and proceeded to feed the dogs.
- After the dogs were fed he found the dog pit with the dead dogs in it that Debra-Su described to him.
- He filled some if the doghouses with straw when a thought came over him that he should go and get his camera and document the scene with photographs.
- On the way to get his camera, his wife phoned and helped him make the decision to report the scene to the proper authorities.
- He called the Humane Society in Washington D.C. and they in turn contacted the proper authorities.    *Id.*

6.      Sergeant Priestly, Corporate Hardey, and Sheriff Wegener agreed to meet Mr. Whelan at Plaintiffs' property.  *Id.* at 10 of 24.

7.      After Mr. Whelan provided the Law Enforcement Officers access to Plaintiffs' property, he made numerous statements to the Law Enforcement Officers regarding the sick, starving, dying, and dead dogs on the property and Plaintiffs' maltreatment of the dogs.  *Id.* at pages 10 and 11 of 24.

8.      As the reports indicate, when on the property, the Law Enforcement Officers observed sick, starving, dying, and dead dogs on the property.  *Id.; see also,* photographs of the dogs attached hereto as Exhibit D.

9.      Sergeant Bobbi Priestly confirmed that there were six dead dogs on the property.  *Id.*

10.     Sergeant Bobbi Priestly counted that there were approximately 104 or 105 dogs on the property.  *Id.* at 12 of 24.

---

[7] As is discussed in the reports, Ms. Stevens is another person Plaintiffs requested to care for the dogs.

11.     Approximately 25 of the dogs scored a "1" on the Henneke Body Condition

Scoring System.  As the report indicates:

> The Henneke Scale is used by investigators to rate every animal on a scale of one
> to nine.  One being emaciated and nine being obese, the ideal score for an animal
> would be a five.  It was my estimation that upon visual inspection that none of the
> dogs on the Walker property would rate higher than a "2.5."  *Id.*

12.     Sergeant Priestly further observed that she:

> …counted approximately twenty doghouses that were empty with no animals
> chained to the houses.  All the remaining dogs on the property were chained on a
> swivel clasp attached to a pipe that was buried on the ground.  The chains holding
> dogs were approximately six feet in length and none of the dogs had liquid water
> or food.  I did not observe any feces near the dog's houses.  This could indicate
> the dogs were eating their stool in the absence of food.  A large percentage of the
> dogs had poor hair coats and some dogs had matted fur hanging on them.  *Id.*

13.     Sergeant Priestly concluded:

> …based on my training and experience, it was decided that two of the dogs were
> in iminate [sic] danger would be impounded and taken to the Animal Control
> Facility in Bailey, Colorado that evening.  We impounded a female Heeler dog
> that was in a separate kennel located at the south end of the compound.  This dog
> was underweight and scored a "2" on the Henneke Body Condition Scoring
> System.  The dog had no shelter from the elements and no food or water.  The
> second dog that was impounded scored a "1" and was lethargic.  This dog was
> housed in a house with the name "Hannah" on it.  This dog was a female black
> Husky-mix dog.  Both the Heeler and the Husky-mix were dehydrated.  *Id.*

14.     Following this initial investigation, Sergeant Priestly contacted Dr. Kate

Anderson with the Colorado State Veterinarian's Office, Scott Dutcher, and some of the

Commissioners for the State of Colorado Department of Agriculture by telephone.  Sergeant

Priestly advised these people of the situation and of her intent to seize the dogs on the Walker

property consistent with C.R.S. § 18-9-202.  *See id.* at 13 of 24.

15.     On December 16, 2009, a search warrant was obtained.  *See id.* at 14 of 24; *see

also* Exhibit E, search warrant.

7

16.     On December 16, 2009, all of the dogs were examined by Dr. Kate Anderson pursuant to the Henneke Body Condition Scoring System.

17.     Following the investigation on December 16, 2009, Plaintiff Diane Walker consented to surrender the remaining dogs on her property.  *See* report at 17 of 24; *see also,* Exhibit F, Surrender Form.

18.     Ms. Walker also completed a consent to search document.

19.     Attached hereto as Exhibit G is the report of Corporal C. Hardey of the Park County Sheriff's Department, which corroborates Sergeant Bobbi Priestly's report in all material respects.

## IV.     THE LAW ENFORCEMENT DEFENDANTS ARE IMMUNE FROM SUIT

A law enforcement officer is entitled to qualified immunity if it is objectively reasonable for him or her to believe his actions did not violate a plaintiff's rights.  *Hollingsworth v. Hill*, 110 F.3d 733, 738 (10th Cir. 1997).   Qualified immunity shields government officials performing discretionary functions from individual liability under 42 U.S.C. § 1983 unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known."   *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1255 (10th Cir. 1998) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

The determination of whether a defendant is entitled to qualified immunity presents a question of law that must be resolved by the Court.  *See Robinson v. City & County of Denver*, 39 F. Supp. 2d 1257, 1265-66 (D.Colo. 1999).   Once a § 1983 defendant asserts a qualified-immunity defense, the plaintiff is required to show that (1) the defendant violated a constitutional or statutory right and (2) the right violated was clearly established when the violation occurred. *See Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002).

The Tenth Circuit has held that that for a right to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of the authorities from other courts must have found the law to be as plaintiff maintains. *Medina v. City & County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992)). Thus, the Court must determine whether the conduct was objectively reasonable in light of clearly established law at the time it took place. *See Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987). When analyzing this issue, it important to be mindful that the burden rests squarely with Plaintiffs. *Id.*

**A.    The Law Enforcement Defendants Did Not Violate Any Clearly Established Fourth Amendment Right**

*1. Exigent Circumstances Justified the December 15, 2009 "Search"*

The only "search" of Plaintiff's property conducted without a warrant was on December 15, 2009.[8] The December 15, 2009 "search" was proper under the exigent circumstances exception to the search warrant requirement. In reviewing application of the exigent circumstances exception to the Fourth Amendment's warrant requirement, a court evaluates the circumstances as they would have appeared to prudent, cautious, and trained officers. *U.S. v. Creighton*, 639 F.3d 1281, 1288 (10th Cir. 2011) (citing *Armijo ex rel. Armijo Sanchez v. Peterson*, 601 F.3d 1065, 1071 (10th Cir. 2010). The propriety of the defendant's actions are assessed "based upon what the officers reasonably believed at that time. It does not matter that, in retrospect, information provided to the officers was wrong." *Id*. (citations omitted). Exigent circumstances arise when: (1) officers have reasonable grounds to believe there is an immediate need to protect the lives or property of others; (2) search is not motivated by an intent to seize

---

[8] The Walkers subsequently consented to searches of their property.

evidence; and (3) there is some reasonable basis, approaching probable cause, to believe an emergency situation exists. *United States v. Anderson*, 981 F.2d 1560, 1567 (10th Cir. 1992).

In *DiCesare v. Stuart*, the Tenth Circuit held that the exigent circumstances may be applicable in an animal cruelty case. *See DiCesare v. Stuart*, 12 F.3d 473 (10th Cir. 1993) (the Court held that no exigent circumstances were present in that case). In an unpublished case with a very similar name, *DiCesare v. Stout*, the Tenth Circuit found that the exigent circumstances exception did in fact apply in an animal cruelty case. *DiCesare v. Stout*, 992 F.2d 1222(Table), 1993 WL 137110 (10th Cir. 1993). That Court held:

> The exigent standard test applies to situations involving mistreatment of animals. Cruelty to animals is a statutory offense. It is therefore state policy to render aid to relatively vulnerable and helpless animals when faced with people willing or even anxious to mistreat them." *Id*. at *4 (citing State v. Bauer, 379 N.W.2d 895, 899 (Wis.Ct.App. 1985); *Tuck v. United States*, 477 A.2d 1115, 1120 (D.C. 1984) (public interest in preservation of life in general and in prevention of cruelty to animals in particular requires some flexibility in application of general rule that valid warrant is prerequisite for search).

In *Stout*, prior to seizing the horses, the sheriff's department received complaints about the horses and upon investigation, the horses were found to be malnourished. *Id*. at *4. The *Stout* Court held that no Fourth Amendment Violation occurred. The *Stout* Court reasoned that: (1) the officers acted as promptly and properly as was reasonable to provide for the horses' safety and well-being; (2) the officers' failure to obtain a warrant did not reflect an absence of concern for protecting Fourth Amendment values; and (3) the scope of the entry was limited to that necessary to provide assistance to the suffering animals. *Id*.

Similarly, in *Pennington v. Penner*, the United States District Court for the District of Kansas found that animal control officers, and others, were entitled to qualified immunity

regarding the warrantless search and seizure of horses.  297 F. Supp. 2d 1225.  In that case the

Court held:

> As alleged in the complaint, Penner and a veterinarian inspected the stallion on
> July 28th and immediately took the stallion to the veterinarian's clinic for care and
> treatment. The reasonable inference to be drawn is that the veterinarian was of the
> opinion the stallion needed additional immediate care that he could not provide at
> the site. Given these circumstances, a reasonable officer in Penner's position
> would have believed, mistakenly or not, that exigent circumstances existed to
> justify the warrantless seizure.  *Id*. at 1241.

Numerous other courts have reached have reached similar conclusions.  *People v. Burns*, 593

P.2d 351 (Colo. 1979) (exigent circumstances justified a warrantless search of the premises to

locate a missing calf because the young calf ran the risk of dying from lack of nourishment due

to separation from its mother); *Manhke v. Garrigan*, 2010 WL 2643618 (W.D. Wis. 2010)

(animal control officer entitled to qualified immunity under similar facts); *Jackson v. Silicon

Valley Animal Control Authority*, 2008 WL 4544455 (N.D. Cal. 2008) (same); *Anderson v.

Smith*, 2009 WL 2139311 (E.D. Cal. 2009) (same); *Scott v. Jackson County,* 403 F.Supp.2d 999

(D.Ore. 1999) ("emergency exception" justified search where officers believed 400 rabbits

required immediate care).

In this case, the exigent circumstances exception to the warrant requirement justified the

welfare check and alleged warrantless "search" on December 15, 2009.  The Law Enforcement

Officers were provided with credible information that there were sick, starving, dying and dead

dogs on Plaintiffs' property.  As such, the Law Enforcement Officers' conclusion that there was

exigent circumstances was objectively reasonable.  Plaintiffs' cannot meet their burden to

establish that the Law Enforcement Officers' conduct violated United States Supreme Court or

Tenth Circuit Case law because their conduct in fact comported with the United States Supreme

Court and Tenth Circuit Case law.

### 2. *The Law Enforcement Officers Had Third Party Consent*

The allegations of the Complaint and Police reports, discussed above, make clear Brian

Whelan had access and control to Plaintiffs' property and the ability to consent to a search on

December 15, 2009. At a minimum, it would have been objectively reasonable for the Law

Enforcement Officers to believe that he had such authority. The seminal third party consent case

is *United States v. Matlock*, 415 U.S. 164 (1974). In *Matlock*, the Court held that, "the authority

which justifies the third-party consent does not rest upon the law of property ... but rests rather

on mutual use of the property by persons generally having joint access or control for most

purposes." *Id.* In *United States v. Thompson*, the Tenth Circuit opined as follows:

> Actual authority…rests on mutual use of the property by persons generally having
> joint access or control for most purposes, so that it is reasonable to recognize that
> any of the co-inhabitants has the right to permit the inspection in his own right
> and that the others have assumed the risk that one of their number might permit
> the common area to be searched. In *United States v. Rith*, we clarified that actual
> authority requires either (1) mutual use of the property by virtue of joint access, or
> (2) control for most purposes over it. Apparent authority exists when officers
> reasonably, even if erroneously, believe that the person consenting to the search
> has the authority to do so. *U.S. v. Thompson*, 524 F.3d 1126, 1132-33 (10th Cir.
> 2008)(citations and quotations omitted).

Here, the allegations of the Complaint, the Police Reports, and Mr. Whelan's statement

demonstrate that he had joint access to and control over the property on December 15, 2009.

The property was used solely as a kennel, therefore, Mr. Whelan had control over the property

for that purpose. There is no residence on the property. When Plaintiffs asked Mr. Whelan to

serve as a care taker, they assumed the risk he would consent to search on their behalf. At a

minimum, based on a totality of the circumstances, the Law Enforcement Officers would

objectively and in good faith believe that Mr. Whelan had authority to provide them access to the

property given his statements. As such, the Law Enforcement Officers conduct comported with

applicable case law and Plaintiffs cannot meet their burden to establish that they violated a

clearly established right.   Therefore, they are entitled to qualified immunity.

### B.    The Law Enforcement Officers Did Not Violate any Clearly Established Fifth or Fourteenth Amendment Right

Plaintiffs appear to argue that seizure of their dogs without due process violated the Fifth

and Fourteenth Amendments.   Colo.Rev.Stat. § 18-9-902 is a criminal statute regarding animal

cruelty in Colorado.   Colo.Rev.Stat. § 18-9-902(1.8) provides:

> (1.8)   A peace officer having authority to act under this section may take possession of and impound an animal that the peace officer has probable cause to believe is a victim of a violation of subsection (1) or (1.5) of this section or is a victim of a violation of section 18-9-204 and as a result of the violation is endangered if it remains with the owner or custodian.

The two dogs seized on December 15, 2009 were seized pursuant to this statute.[9]   Subsection 1

of the statute makes it an offense to, *inter alia,* deprive an animal of sustenance, allow an animal

to be housed in a manner that causes physical harm, fail to protect an animal, abandons an

animal or otherwise mistreat an animal.  Subsection 1.5 makes it a crime to, *inter alia,* needlessly

kill or torture an animal.  Based on the facts discussed above, there was clearly probable cause to

believe the statute had been violated and these facts provided probable cause under the statute for

the Law Enforcement Officers to seize the animals.  At a minimum, based on this statute, it was

objectively reasonable for the Law Enforcement Officers to conclude they could do so.   No

Tenth Circuit or United Supreme Court case has found this statute unconstitutional.[10]   Therefore,

Plaintiffs cannot establish that the Law Enforcement Officer violated a clearly established right

---

[9] As is discussed above, Plaintiffs' consented to the subsequent seizures.  But, the subsequent seizures would have also been justified by the statute if there was no consent.

[10] Several Colorado cases have found the statute constitutional albeit on slightly different grounds.  *See People v. Allen,* 657 P.2d 447 (Colo. 1983); *People v. Wilhelm,* 676 P.2d 702 (Colo. 1984).

because any alleged unconstitutionality of Colo.Rev.Stat. § 18-9-902  is not "clearly established."  As such, the Law Enforcement Officers are entitled to qualified immunity.

### C.   The Law Enforcement Officers Did Not Violate Any Clearly Established Right Under The Eighth Amendment

Plaintiffs make vague reference to the Eighth Amendment in their Complaint.  Plaintiffs do not articulate how these Defendants violated any clearly established Eighth Amendment Right.  Plaintiffs fail to allege that the Law Enforcement Officers violated any United States Supreme Court or Tenth Circuit precedent concerning any clearly established Eighth Amendment Right.  Therefore, to the extent Plaintiffs even assert such a claim, the Law Enforcement Officers are entitled to qualified immunity.  The contemporaneously filed 12(b)(6) Motion regarding this issue is incorporated herein.

### D.   The Law Enforcement Defendants Did Not Violate Any Clearly Established Right Under *Miranda*

Plaintiffs make vague reference to alleged *Miranda* violations notwithstanding the absence of the requisite custodial interrogation to trigger *Miranda.  United States v. Griffin*, 7 F.3d 1512, 1518 (10th Cir.1993).  To the extent Plaintiffs attempt to state a claim in this regard, the alleged failure to give a *Miranda* warning cannot give rise to liability under § 1983.  *Bennett v. Passic*, 545 F.2d 1260, 1263 (10th Cir.1976).  "As for plaintiffs' claim that they were subjected to custodial interrogation in their home because they did not feel free to leave, the remedy for any violation of their Miranda rights is to exclude their statements from the evidence at trial; a police officer who fails to give a *Miranda* warning is not subject to liability under § 1983."  *Hinton v. Franck*, 242 F.3d 388 (Table) (10th Cir. 2000)(citing *Bennett*, *supra*). Therefore, the issue of qualified immunity need not be addressed because to the extent any claim was asserted, it fails to state a claim.

**E.**     **The Law Enforcement Defendants Did Not Violate Any Clearly Established Right Under 18 U.S.C.A. § 241, 18 U.S.C.A. § 242, 18 U.S.C.A. § 371, 18 U.S.C.A. § 1001, 18 U.S.C. § 2234**

The arguments set for the in the contemporaneously filed 12(b)(6) Motion are incorporated herein.  Aside from failing to state a claim under these statutes, Plaintiffs' fail to articulate how violation of these statutes violated clearly established rights.  Moreover, the claims Plaintiffs' attempt to assert under these statutes are entirely duplicative of the Constitutional claims discussed above.  As such, for the same reasons, Defendants are entitled to qualified immunity.

## V.     CONCLUSION

The Law Enforcement Officers did not violate any clearly established Constitutional or statutory right of Plaintiffs.  The Law Enforcement Officers searches of Plaintiffs' property and seizure of Plaintiffs' dogs comported with applicable United States Supreme Court and Tenth Circuit precedents.  Therefore, Plaintiffs cannot meet their burden to demonstrate that the Law Enforcement Officers' conduct was not objectively reasonable.  As such, the Law Enforcement Officers are cloaked with qualified immunity and the claims asserted against them in their individual capacities should be dismissed with prejudice.

Respectfully submitted this 23rd day of January, 2012.

*(Original signatures on file at the offices of Fowler, Schimberg & Flanagan, P.C.)*

s/Timothy P. Schimberg
Timothy P. Schimberg


s/Andrew R. McLetchie
Andrew R. McLetchie

FOWLER, SCHIMBERG & FLANAGAN, P.C.
1640 Grant Street, Suite 150
Denver, Colorado 80203
(303) 298-8603
ATTORNEYS FOR PARK COUNTY
DEFENDANTS

16

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of January, 2012, I caused a true and correct copy of the foregoing **INDIVIDUAL DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(B)(1)** to be filed via the ECF system, with notice of same being electronically served to the following:

Herbert C. (Lee) Phillips, Esq.
Park County Attorney
Hayes, Phillips, Hoffman & Carberry, P.C.
P.O. Box 1046
675 Main Street
Fairplay, CO 80440


Transmitted via electronic mail and First Class U.S. Mail, proper postage prepaid, to the following:

Samuel M. Walker
Diane H. Walker
P.O. Box 59
Florissant, CO 80816
reddog0918@yahoo.com
*Pro Se* **Plaintiffs**


s/Leslie Johnson
Leslie Johnson