IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11–cv–03238–PAB–KMT

SAMUEL M WALKER, and
DIANE H WALKER,

      Plaintiffs,

v.

FRED WEGENER, individual and official capacity,
BOBBY PRIESTLY, individual and official capacity,
CINDY HARDEY, individual and official capacity,
REBECCA BRAMLETT, individual and official capacity,
AMY FRANCK, individual and official capacity,
JUAN GALLEGOS, individual and official capacity,
DEPT SGT BROWN, individual and official capacity,
PARK COUNTY, and
PARK COUNTY COMMISSIONERS,

      Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**Magistrate Judge Kathleen M. Tafoya**

      This matter is before the court on the following motions: (1) Defendants' "Motion to

Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)" (Doc. No. 14, filed Jan. 23, 2012 [hereinafter

"Park County Defs.' Mot. Dismiss"]); (2) "Individual Defendants' Motion to Dismiss Pursuant

to 12(b)(1)" (Doc. No. 15, filed Jan. 23, 2012 [hereinafter "Indiv. Defs.' Mot. Dismiss"]); and

(3) Plaintiffs' "Opposed Motion for One Time Amendment of Plaintiffs' Complaint as a Matter

of Course" (Doc. No. 33, filed Mar. 27, 2012 [Mot. Am.]).

## FACTUAL BACKGROUND

The following factual background is derived from Plaintiffs' Complaint (Doc. No. 1, filed Dec. 12, 2011 [Compl.]) and the parties' briefing with respect to this Recommendation.

Plaintiffs are residents of Teller County, Colorado and owned property in Park County, Colorado.  (Compl. ¶ 20.)  Prior to December 15, 2009, Plaintiffs raised, trained, and occasionally bred sled dogs on 160 acres of ranch land near the town of Hartsel in Park County (hereinafter the "Park County Property").  (*Id.* ¶ 21.)

In late November 2009, Plaintiff Samuel Walker was informed that he had to be in California for business from December 14 through December 19, 2009.  (*Id.* ¶ 33.)  As such, Mr. Walker solicited the help of Brian Whelan, as well as Mark and Debra Stephens (collectively, "the Stephens"), to act as caretakers at Plaintiffs' kennel on alternating days while Mr. Walker was away.  (*Id.* ¶¶ 34-35, 37-38.)

On December 15, 2009, Defendant Priestly, a Park County Animal Control Officer/Code Enforcement Officer (*id.* ¶ 11), received a call from a representative with the Humane Society of the United States (*id.* ¶ 51).  The Humane Society representative reported that she had received a complaint regarding the conditions of the dogs located on the Park County Property.  (*Id.* ¶ 51).  Based on this information, Defendant Priestly proceeded to the Park County Sheriff's Office and contacted Defendant Wegener, the Park County Sheriff (*id.* ¶ 9), and Defendants Bramlett and Hardey, both Park County Animal Control/Code Enforcement Officers (*id.* ¶¶ 11-12).  (*Id.* ¶¶ 53-54).

2

Two hours after receiving the call from the Humane Society, Defendants Wegener, Priestly, Bramlett, and Hardey proceeded to the Park County Property without a search warrant. (*Id.* ¶¶ 54-55.)  They drove up a 1-1/2 mile gated driveway, entered into enclosed sections of the Park County Property where the dog kennel was located, and documented the state of the dogs and the Park County Property.  (*Id.* ¶¶ 57-59.)  Defendants Wegener, Priestly, Bramlett, and Hardley seized two of the approximately 100 dogs on the Park County Property.  (*Id.* ¶ 62.) Defendant Priestly also determined that 30 dogs would be seized and removed from the Park County Property on December 16, 2009.  (*Id.* ¶ 86.)  Later that day, Defendant Hardey drafted a search warrant, which was signed on the morning of December 16, 2009.  (*Id.* ¶ 63.)[1]

On December 16, 2009, Defendants returned to the Park County Property with the search warrant obtained by Defendant Hardey.  (*Id.* ¶ 92.)  When Plaintiff Diane Walker arrived at the kennel, Defendant Gallegos, a Park County Sheriff's Deputy (*see id.* ¶ 15), served her with the search warrant (*id.* ¶ 93).  Defendant Gallegos then allegedly "shadowed Diane with threats and intimidation everywhere she went on the property keeping his hand very near to his weapon the entire day."  (*Id.* ¶ 94.)  As a consequence, Ms. Walker considered herself in to be in Defendant Gallegos' custody.  (*Id.* ¶ 95.)  Plaintiffs maintain that, despite the fact that Ms. Walker was asked numerous questions throughout the day, neither Defendant Gallegos, Defendant Priestly, or any other officer at the Park County Property provided Ms. Walker with *Miranda* warnings.

---

Plaintiffs maintain that the search warrant was almost entirely comprised of information obtained from the December 15, 2009 warrantless entry onto the Park County Property.  (*Id.* ¶ 64.)

(*Id.* ¶ 97.)  Additionally, numerous officers allegedly listened in on telephone conversations

between Mr. and Ms. Walker and questioned both Plaintiffs during those conversations.  (*Id.* ¶¶

100-101.)  Mr. Walker also alleges that he was not read any *Miranda* warnings.  (*Id.* ¶ 100.)

According to Plaintiffs, the Colorado State Veterinarian, Doctor Kate Anderson,

determined that the remaining 70 dogs did not need to be removed since they "were not in

immediate danger."  (*Id.* ¶ 109.)  Defendant Priestly nevertheless insisted that the remaining

dogs be removed to the custody of Park County because "she did not have the manpower to

come out to the property to ensure the dogs were cared for."  (*Id.* ¶ 111.)  Allegedly, Defendant

Priestly demanded that the dogs be bonded immediately, pursuant to Colo. Rev. Stat. § 18-9-

202.5,[2] or released to Park County, stating that it would "be easier" if Ms. Walker released the

dogs to Park County.  (*Id.* ¶ 114.)  Defendant Priestly further stated that bonding for all 100 dogs

would be approximately $60,000 per month with no assurance that any of the animals would be

returned.  (*Id.* ¶ 116; *see also id.* ¶ 105.)  Ms. Walker elected to sign a release for the dogs,

---

[2] Colo. Rev. Stat. 18-9-202.5(1)(a) provides, *inter alia*,

The owner or custodian of an animal that has been impounded by an impound agency because of alleged neglect or abuse, or because of investigation of charges of cruelty to animals pursuant to section 18-9-202; animal fighting pursuant to section 18-9-204; mistreatment, neglect, or abandonment under article 42 of title 35, C.R.S.; or unlawful ownership of a dangerous dog as described in section 18-9-204.5, may prevent disposition of the animal by an impound agency by posting a bond with the court in an amount sufficient to provide for the animal's care and provision at the impound agency for at least thirty days, including the day on which the animal was taken into custody.

4

although Plaintiffs maintain that she did so "due to threats, intimidation, and coercion." (*Id.* ¶ 118.)

During the December 16, 2009 search, Defendant Priestly obtained Ms. Walker's consent to allow Park County Officials to return to the Park County Property the next day to continue their search and to seize the remaining dogs. (*Id.* ¶¶ 102, 120.) Plaintiffs allege that Ms. Walker's consent was sought by unspecified "means of coercion and duress." (*Id.* ¶ 104.)

Pursuant to that consent, Park County officials, other government officials, and civilian volunteers returned to the Park County Property on December 17, 2009. (*Id.* ¶ 126.) Defendants allegedly allowed Mr. Whelan, the Stephens, the alleged temporary caretakers, and other civilian volunteers to move about the property unsupervised. (*Id.* ¶ 130.) Plaintiffs allege that Mr. Whelan and the Stephens, and Park County officials removed dogs, dog food, equipment, and other personal property from the Park County Property. (*Id.* ¶¶ 131, 139, 152-153, 163.) When Plaintiffs called the Sheriff's office to file a stolen property report, Defendant Brown allegedly refused to take a report over the phone and challenged Plaintiffs' assertion that any property had been taken without authorization. (*Id.* ¶ 161.)

Sometime "before Christmas day," arrests warrants were issued for Plaintiffs, and Plaintiffs were arrested on or around December 24, 2009. (*See id.* ¶¶ 116-118.)

On January 11, 2010, Defendant Priestly returned to the Park County Property with a search warrant to remove five deceased dogs that had not been removed during the December 2009 searches. (*Id.* ¶¶ 171-72.) However, although Defendants found the deceased dogs specifically described in the warrant on the surface of the Park County Property (*id.* ¶ 228),

5

Defendant Priestly allegedly obtained a backhoe to dig up a dog graveyard located on the Park County Property (*id.* ¶ 173).  Although Defendants were allegedly looking for more than 100 deceased dogs, only 35 deceased dogs were actually located in the dog graveyard.[3]  (*Id.* ¶ 175-176.)

Ms. Walker pled guilty misdemeanor animal cruelty on September 27, 2010 and was sentenced on June 28, 2011.  (Park Cnty Defs.' Mot. Dismiss, Ex. B.)  Mr. Walker pled guilty to felony animal cruelty on December 15, 2010 and was sentenced on August 23, 2011.  (*Id.*, Ex. A.)[4]

## PROCEDURAL HISTORY

Plaintiffs' *pro se* Complaint, filed on December 12, 2011, filed nearly two years after the events described therein, is far from a model of clarity.  Although Plaintiffs' Complaint facially asserts six claims pursuant to 42 U.S.C. § 1983, each of these claims incorporate a number of different alleged constitutional violations.

Plaintiffs' first claim concerns the December 15, 2009 search of the Park County Property and asserts that the search without a warrant violated their Fourth Amendment rights.

---

[3] It appears that the disparity between the number of deceased dogs suspected to be buried in the dog graveyard and the actual number of dogs located therein was the result of Ms. Stephen's alleged "false statements."  (*Id.* ¶ 174.)

[4] The court takes judicial notice of Plaintiffs' convictions as a public record pursuant to Fed. R. Evid. 201.  *See United States v. Rodriguez-Chavez,* 153 F. App'x 524, 528 (10th Cir. 2005); Fed. R. Evid. 201 (court may take judicial notice of a fact not subject to reasonable dispute that is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned).

(Compl. ¶ 201.)  That claim also alleges that Plaintiffs' Fifth and Fourteenth Amendment due process rights were violated, ostensibly when Defendants seized two dogs from the Park County Property.  (*Id.*)  Plaintiffs' second claim concerns the December 16, 2009 search of the Park County Property and asserts (1) violations of their Fourth Amendment rights insofar as the search warrant authorizing that search was based on information derived from the December 15, 2009 warrantless search (*see id.* ¶ 307); (2) violations of their Eighth Amendment rights to be free from cruel and unusual punishment based on Defendants' alleged demand that Ms. Walker provide $60,000.00 per month in bond for the seized dogs (*id.* ¶ 210); (3) violations of their Fourteenth Amendment due process rights alleging that Defendants coerced Ms. Walker to sign over ownership of Plaintiffs' dogs without due process (*id.* ¶ 211); and (4) violations of their Fifth Amendment rights based on Defendants alleged failure to provide Plaintiffs with *Miranda* warnings (*id.* ¶ 212).

Plaintiffs' third claim concerns the December 17, 2009 search and asserts violations of their Fourth Amendment rights insofar as Defendants allegedly coerced Ms. Walker into consenting to their return to the Park County Property  (*id.* ¶¶ 218-19), and violations of their Fifth and Fourteenth Amendment rights alleging that Defendants seized dog food, hardware, and equipment without just compensation or due process (*id.* ¶ 220).  Plaintiffs' fourth claim concerns the January 11, 2010 search of the Park County Property and asserts violations of their Fourth Amendment rights insofar as Defendants "willfully exceed[ed] the authority and scope of the court approved search and seizure warrant."  (*Id.* ¶¶ 227-28.)

Plaintiffs' fifth claim alleges that Defendants' demand that Plaintiffs either provide bond for all dogs seized from the Park County Property or transfer ownership of the dogs to the county constituted an unlawful taking of property without due process in violation of their Fifth and Fourteenth Amendment rights, as well as cruel and unusual punishment under the Eighth Amendment.  (*Id.* ¶ 235.)  As part of this claim, Plaintiffs also allege that Colo. Rev. Stat. §§ 18-9-202 and 18-9-202.5, the statutes pursuant to which Defendants seized Plaintiffs' dogs and demanded bonding,  are unconstitutional.  (*Id.* ¶ 236.)[5]  Finally, Plaintiffs' sixth claim alleges a claim for municipal liability against Defendant Wegener in his official capacity and Park County for unconstitutional policies, customs, and practices.  (*Id.* ¶¶ 239-46.)

On December 22, 2011, former defendants John Suthers and Debra McLimans filed a Motion to Dismiss.  (Doc. No. 3.)  On March 2, 2012, the court entered a Recommendation that former defendants Suthers and McLimans's Motion to Dismiss be granted.  (Doc. No. 21 [hereinafter "March 2, 2012 Recommendation"].)  On March 23, 2012, District Judge Philip A. Brimmer accepted the March 2, 2012 Recommendation as an order of the court, and former defendants Suthers and McLimans were dismissed from this case.  (*See* Order Accepting Magistrate Judge's Recommendation, Doc. No. 32.)

The Park County Defendants' Motion to Dismiss and the Individual Defendants' Motion to Dismiss were both filed on January 23, 2012.  (*See* Park County Defs.' Mot. Dismiss; Indiv.

---

[5] This claim also alleges a violation of their Fourth Amendment rights based on the December 15, 16, and 17, 2009 searches.  However, these allegations are redundant of those asserted in claims one through three.

Defs.' Mot. Dismiss.)  After receiving an extension of time to respond (*see* Minute Order, Doc.

No. 20, filed Feb. 15, 2012), Plaintiffs' Responses to the Park County Defendants' and the

Individual Defendants' Motions to Dismiss were filed on March 27, 2012.  (Doc. No. 34 [Resp.

Park Cnty. Defs.' Mot. Dismiss]); Doc. No. 35 [Resp. Indiv. Defs.' Mot. Dismiss].)  Defendants'

Replies in support of both motions to dismiss were filed on May 4, 2012.  (Doc. No. 41 [Reply

Indiv. Defs.' Mot. Dismiss]; Doc. No. 42 [Reply Park Cnty. Defs.' Mot. Dismiss].)

Plaintiffs' Motion to Amend was filed at the same time as Plaintiffs' Responses to

Defendants' Motions to Dismiss.  (*See* Mot. Am.)  Defendants filed their Response to the Motion

to Amend on May 4, 2012.  (Doc. No. 40 [Resp. Mot. Am.].)  Pursuant to D.C.COLO.LCivR

7.1C, Plaintiffs had until May 21, 2012 to file a reply.  However, no reply was filed before, or at

any time after, that date.  Accordingly, these motions are ripe for the court's review and

recommendation.

## LEGAL STANDARDS

### A. Pro Se *Plaintiffs*

Plaintiffs are proceeding *pro se*.  The court, therefore, "review[s] his pleadings and other

papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys."

*Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also*

*Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding allegations of a *pro se* complaint "to less

stringent standards than formal pleadings drafted by lawyers").  However, a *pro se* litigant's

"conclusory allegations without supporting factual averments are insufficient to state a claim

upon which relief can be based."  *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991)

(citations omitted).  A court may not assume that a plaintiff can prove facts that have not been

alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged.  *Associated*

*Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see*

*also Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (a court may not "supply

additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*,

927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the

plaintiff in the absence of any discussion of those issues").

**B.**     ***Qualified Immunity***

As a preliminary matter, the court notes that Defendants argue that "[a]n attack on a

complaint based on . . . qualified immunity is evaluated under Fed. R. Civ. P. 12(b)(1)."  (First

Mot. Dismiss at 4 (citing *Meyer v. Colo. Dept. of Human Servs.,* 62 F. App'x 831, 831 (10th Cir.

2003) (unpublished)).  The court disagrees.  Although *Meyer* arguably suggests that all immunity

issues are considered under Rule 12(b)(1), it is notable that the *Meyer* court only considered an

assertion of Eleventh Amendment immunity.  62 F. App'x at 832.  Furthermore, contrary to

Defendants' interpretation of *Meyer,* other Tenth Circuit decisions plainly hold that, unlike

sovereign immunity, qualified immunity is not jurisdictional, but rather a defense on the merits

that is properly evaluated under Fed. R. Civ. P. 12(b)(6).  *Neal v. Davis,* No. 12-5005, 2012 WL

1139026, at *2 (10th Cir. Apr. 6, 2012) (unpublished) (citing *FDIC v. Meyer,* 510 U.S. 471, 474

(1994); *Harlow v. Fitzgerald,* 457 U.S. 800, 815 (1982)); *see also Peterson v. Jensen,* 371 F.3d

1199, 1201 (10th Cir. 2004) (although summary judgment provides the typical vehicle for

asserting a qualified immunity defense, it may also be asserted in a motion to dismiss filed pursuant to Rule 12(b)(6)).

The doctrine of qualified immunity shields government officials from individual liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Saucier v. Katz*, 533 U.S. 194, 121 (2001).

Although qualified immunity is most often raised at the summary judgment stage, the Tenth Circuit has recognized the propriety of raising a qualified immunity defense in a motion to dismiss. *See Pueblo Neighborhood Health Ctr., Inc. v. Losavio*, 847 F.2d 642, 645–46 (10th Cir.1988). However, unlike an analysis conducted under Rule 12(b)(1), where the court may consider facts outside the pleadings, *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995), the court's review of an assertion of qualified immunity under Rule 12(b)(6) is limited to the pleadings. *Workman v. Jordan,* 958 F.2d 332, 334 n.2 (10th Cir. 1992), *accord Guiden v. Morrow,* 92 F. App'x 663, 666 n.10 (10th Cir. 2004).

Once the defense is asserted, the burden shifts to the plaintiff to establish (1) that the defendants' actions violated a federal constitutional or statutory right and (2) that the federal right was clearly established at the time of the challenged conduct. *PJ ex rel. Jensen v. Wagner,* 603 F.3d 1182, 1196 (10th Cir.2010); *see also Losavio*, 847 F.2d at 646. The latter determination, that is whether the right was clearly established, must be made "in light of the

11

specific context of the case, not as a broad general proposition." *Saucier,* 533 U.S. at 201.

"[T]he relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that

his conduct was unlawful in the situation he confronted." *Id.* at 202.  Although the qualified

immunity analysis involves a two-part inquiry, if the plaintiff fails either prong, reviewed in any

order, qualified immunity is appropriate and no further inquiry need be undertaken. *Pearson v.

Callahan*, 555 U.S. 223, 236 (2009).

**C.**      ***Failure to State a Claim Upon Which Relief Can Be Granted***

        Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss

a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6)

(2007).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that

the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally

sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d

1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

        "A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual

allegations are true and construes them in the light most favorable to the plaintiff." *Hall v.

Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991).  "To survive a motion to dismiss, a complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic

Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility, in the context of a motion to dismiss,

means that the plaintiff pled facts which allow "the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." *Id.*  The *Iqbal* evaluation requires two

prongs of analysis.  First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory.  *Id*. at 1949–51.  Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief."  *Id*. at 1951.  If the allegations state a plausible claim for relief, such claim survives the motion to dismiss.  *Id*. at 1950.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments.  *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 129 S. Ct. at 1940.  Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* at 1949 (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Iqbal*,129 S. Ct. at 1949 (citation omitted).

**D.    *Amendment of Pleadings***

As a preliminary matter, it appears that Plaintiffs seek to amend their Complaint as a matter of course.  However, the time for them to do so passed before their Motion to Amend was filed.  More specifically, Federal Rule of Civil Procedure 15(a)(1) provides:

> A party may amend its pleading once as a matter of course within: (A) 21 days
> after serving it, or (B) if the pleading is one to which a responsive pleading
> is required, 21 days after service of a responsive pleading or 21 days after service of
> a motion under Rule 12(b), (e), or (f), whichever is earlier.

Here, Plaintiffs' Motion to Amend was filed on March 27, 2012, more than 21 days after

Defendants' filed their Motions to Dismiss.  Accordingly, Fed. R. Civ. P. 15(a)(2) governs

whether Plaintiffs' may amend their Complaint.

Pursuant to Rule 15(a)(2), "[t]he court should freely give leave [to amend the pleadings]

when justice so requires."  *See also York v. Cherry Creek Sch. Dist. No. 5*, 232 F.R.D. 648, 649

(D. Colo. 2005); *Aspen Orthopaedics & Sports Medicine, LLC v. Aspen Valley Hosp. Dist.*, 353

F.3d 832, 842 (10th Cir. 2003).  The Supreme Court has explained the circumstances under

which denial of leave to amend is appropriate.

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper
> subject of relief, he ought to be afforded an opportunity to test his claim on the
> merits.  In the absence of any apparent or declared reason - such as undue delay,
> bad faith or dilatory motive on the part of the movant, repeated failure to cure
> deficiencies by amendments previously allowed, undue prejudice to the opposing
> party by virtue of allowance of the amendment, futility of the amendment, etc. -
> the leave sought should, as the rules require, be "freely given."  Of course, the
> grant or denial of an opportunity to amend is within the discretion of the District
> Court, but outright refusal to grant the leave without any justifying reason
> appearing for the denial is not an exercise of discretion; it is merely abuse of that
> discretion and inconsistent with the spirit of the Federal Rules.

*Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Triplett v. LeFlore County, Okl.*, 712 F.2d

444, 446 (10th Cir. 1983).  The Federal Rules reject the approach "that pleading is a game of

skill in which one misstep by counsel may be decisive to the outcome and accept the principle

that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 48 (1957).

Here, Defendants argue that Plaintiffs' Motion to Amend should be denied because their proposed amendments are futile.  "Although Fed.R.Civ.P. 15(a) provides that leave to amend shall be given freely, the district court may deny leave to amend where amendment would be futile.  A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Jefferson Cnty. Sch. Dist. v. Moody's Investor's Services*, 175 F.3d 848, 859 (10th Cir. 1999); *see also Ketchum v. Cruz*, 961 F.2d 916, 920 (10th Cir. 1992).

## ANALYSIS

In their motions to dismiss, Defendants lodge a number of arguments as to why Plaintiffs' claims against them should be dismissed.  The court addresses these arguments in turn below, and, where appropriate, also considers whether the allegations contained in Plaintiffs' proposed First Amended Complaint (Doc. No. 33-1 [Proposed Am. Compl.]) are sufficient to overcome Defendants' arguments for dismissal.  Finally, the court considers several remaining issues with respect to Plaintiffs' Motion to Amend.

### A.    **Heck v. Humphrey, *512 U.S. 447 (1994)***

Defendants argue that all of Plaintiffs' claims are barred under *Heck v. Humphrey,* 512 U.S. 447 (1994) because resolving Plaintiffs' claims in their favor would imply the invalidity of their criminal convictions for animal cruelty.  (Park Cnty. Defs.' Mot. Dismiss at 5-7.)  The court disagrees with this argument.

In *Heck*, the United States Supreme Court held that if a judgment for damages favorable to a plaintiff in a § 1983 action necessarily would imply the invalidity of the plaintiff's criminal conviction or sentence, the § 1983 action does not arise until the "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by an authorized state tribunal or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486–87.

However, "[n]ot every civil judgment will imply the invalidity of the underlying criminal conviction." *Pearson v. Weischedel,* 349 F. App'x 343, 347 (10th Cir. 2009). First, Defendants do not argue, and the court does not find, that success on Plaintiffs' claims would "negate an element of the offense of which [they have] been convicted." *Heck,* 512 U.S. at 486 n.6. Second, Plaintiffs' Fourth Amendment claims are not barred under *Heck* because Plaintiffs were convicted following guilty pleas. "'[T]he validity of [Plaintiffs'] convictions cannot be affected by an alleged Fourth Amendment violation because the conviction[s] do[] not rest in any way on evidence that may have been improperly seized.'" *Easterling v. Moeller,* 334 F. App'x 22, 24 (7th Cir. 2009) (quoting *Haring v. Prosise,* 462 U.S. 306, 321 (1983)); *see also Garza v. Burnett,* 672 F.3d 1217, 1220 (10th Cir. 2012) (quoting *Trusdale v. Bell,* 85 F. App'x 691, 693 (10th Cir. 2003)) (noting that while the Tenth Circuit has "eschewed a [] categorical rule" that *Heck* never applies to alleged Fourth Amendment violations, it has only applied *"Heck* in the 'rare' situation in which 'all of the evidence obtained . . . was the result of' an illegal search.").[6]

---

[6] Indeed, in *Heck,* the Supreme Court specifically suggested that "a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced

Similarly, Plaintiffs' claims that Defendants took their dogs and property and demanded bond in violation of their Fifth, Fourteenth, and Eighth Amendment rights do not relate directly to their convictions, let alone imply their invalidity.[7]  Altogether, Plaintiffs' claims seeks damages under § 1983 "for using the wrong procedures, not for reaching the wrong result" and therefore do not "necessarily imply the invalidity" of their convictions.  *Heck,* 512 U.S. at 482-83.  Accordingly, the court finds that Defendants' First Motion to Dismiss is properly denied to the extent it seeks to dismiss Plaintiffs' claims pursuant to *Heck.*

## B.    *Municipal Liability and Official Capacity Claims*

Defendants argue that Plaintiffs' § 1983 claims against Park County, the Park County Board of Commissioners, and the individual defendants in their official capacities fail because Plaintiffs have failed to allege a constitutional deprivation pursuant to an official policy or custom.  (Park Cnty. Defs.' Mot. Dismiss at 4-5.)  The court agrees.

---

evidence that was introduced into a state criminal trial . . . because of doctrines like independent source and inevitable discovery, and especially harmless error . . . ."  *Heck,* 512 U.S. 477, 487 n.7 (1994) (internal citations omitted).  The facts presented here go even further than the example provided in *Heck* because, due to Plaintiffs' guilty pleas, no state criminal trial was held and therefore their convictions do not rest on any of the evidence obtained by way of these searches.

[7] Whether Plaintiffs' claim for violation of their Fifth Amendment self-incrimination rights are barred under *Heck* might be a closer call.  *Compare Franco v. City and Cnty. of San Francisco,* No. C 10-0478 WHA, 2012 WL 1980799, at *6 (June 1, 2012) (*Heck* bars *Miranda* violations claims) *with Walke v. Cullen,* No. 05-6665, 2009 WL 1416076, at *4 (E.D. Pa. May 15, 2009) (court unable to determine on the record whether alleged violations of the plaintiff's *Miranda* rights were barred by *Heck.*)  However, because these claims clearly fail on other grounds, *see infra,* the court does not address whether *Heck* also bars them.

As a threshold matter, the court notes that "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dept. of Soc. Servs.,* 436 U.S. 658, 690 n. 55 (1978); *Kentucky v. Graham,* 473 U.S. 159, 165 (1985). Thus, "where a suit contains both entity and official capacity claims, the only defendant is the entity." *Doe v. Douglas Cnty. Sch. Dist.,* 775 F. Supp. 1414, 1416 (D. Colo. 1991). "Naming either is sufficient. Naming both is redundant." *Stump v. Gates,* 777 F. Supp. 808, 816 n.3 (D. Colo. 1991). Therefore, while Plaintiffs have named all of the remaining individual defendants in their official capacities, as well as Park County and the Park County Commissioners, only the municipality, Park County, is a proper defendant to Plaintiffs' § 1983 municipal liability claims.

Turning then to the merits of Plaintiffs' municipality liability claims, § 1983 does not provide for liability against a municipality under a theory of *respondeat superior*. *Monell,* 436 U.S. at 691. Rather, municipalities, like Park County, may be held liable under § 1983 only when a constitutional deprivation is inflicted pursuant to a municipal policy or custom. *See id.* at 690-91, 694 ("Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort.").

> [M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question. Municipal liability may be based on a formal regulation or policy statement, or it may be based on an informal custom so long as this custom amounts to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law. Municipal liability may be also be based on the decisions of employees with final policymaking authority or

the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval.  Finally, municipal liability may be based on injuries caused by a failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Brammer-Hoelter v. Twin Peaks Charter Academy,* 602 F.3d 1175, 1188-89 (10th Cir. 2010)

(internal quotations marks and citations omitted).

Here, Plaintiffs allege that Defendant Wegener, as Sheriff of Park County,

implicitly adopted and implemented . . . policies, customs or practices that included . . . allowing employees of the Park County Sheriff's office to [1] conduct warrantless searches and seizures without training to ensure the protection of Constitutional Rights of citizens while conducting their enforcement duties[,] . . . [2] conduct searches and seizures of property without just compensation, [3] conduct criminal investigations without established processes and procedures for property control, evidence tracking, and protection of personal property, and [4] threaten, intimidate, and coerce to get around or avoid rights and privileges guaranteed by the US Constitution.

(Compl. ¶¶ 243-44.)  The court finds that these conclusory allegations fail to provide any basis

for municipal liability against Park County.

First, Plaintiffs fail to point to any specific policy or unofficial custom that resulted in the

alleged deprivations of their constitutional rights.  *Dalcour v. City of Lakewood,* No. 11-1117,

2012 WL 3156342, at *4 (10th Cir. Aug. 6, 2012) (unpublished) (citing *Graham,* 473 U.S. at 166

(a plaintiff "must allege sufficient facts to show that a *specific* policy or custom was the moving

force behind the alleged [constitutional] violation.") (emphasis added).  Plaintiffs' conclusory

allegation that Defendant Wegener "implicitly adopted and implemented" unspecified policies,

customs, and/or practices is insufficient.  *Southern Disposal, Inc.*, 161 F.3d at 1262 (the court

need not accept conclusory allegations without supporting factual averments).  To the extent that

Plaintiffs premise their claim for municipal liability on their constitutional challenge to Colo. Rev. Stat. §§ 18-9-202 & 18-9-202.5 (*see* Resp. Park County Defs.' Mot. Dismiss at 3), these are *state* statutes and therefore do not constitute a muncipal policy for the purposes of § 1983 claim municipal liability. *Nichols* v. *Brown,* --- F. Supp. 2d ----, 2012 WL 1604852, at *11 (C.D. Cal. May 7, 2012) ("Mere enforcement of a state statute is not a sufficient basis for imposing § 1983 municipal liability.") (citation omitted); *see also Surplus Store and Exchange, Inc. v. City of Delphi,* 928 F.2d 788, 791 n. 4 (7th Cir.1991) (refusing to construe state law as a municipal policy in § 1983 claim as doing so "would allow municipalities to be nothing more than convenient receptacles of liability for violations caused entirely by state actors—here, the [state] legislature").

Second, Plaintiffs fail to sufficiently allege municipal liability based on inadequate training or supervision. "Municipal liability based on a policy of inadequate training requires proof that the policy 'reflect[ed] a deliberate or conscious choice by a municipality.'" *Lewis v. McKinley*, 425 F. App'x 723, 726 (10th Cir. 2011) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)); *see also Bryson v. City of Okla. City*, 627 F.3d 784, 789 (10th Cir. 2010) ("the City cannot be held liable for its failure to train or supervise . . . unless the City's policymakers 'can reasonably be said to have been deliberately indifferent to the need' for further training or supervision"). "This may be demonstrated 'when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm.'" *Lewis,* 425 F. App'x at 726 (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998)).

20

Plaintiffs have set forth only conclusory allegations that "employees of the Park County Sheriff's department [] conduct[ed] warrantless searches and seizures without training to ensure protection of Constitutional Rights" and that the failure of Defendant Wegener and Park County to "adequately train and supervise the Defendants Priestly, Hardey, Bramlett, Brown, Franck, and Gallegos amount to a callous and deliberate indifference" to Plaintiffs' rights.  (Compl. ¶¶ 243-44.)  Plaintiffs' Complaint does not contain any factual allegations indicating that Park County, through is policymakers, had actual or constructive notice that its alleged failure to train Sheriff's Department employees would result in violations of Plaintiffs' constitutional rights. Accordingly, Plaintiffs fails to state a claim for municipal liability under this theory as well.

Finally, the court finds that Plaintiffs' proposed Amended Complaint fails to remedy the deficiencies with respect to their municipal liability claims.  Plaintiffs' proposed allegations in support of their claims for municipal liability are generally identical to the allegations of the original Complaint, save for two additional paragraphs.  (*Compare generally* Compl. ¶¶ 239-46 *with* Proposed Am. Complaint ¶¶ 260-68.)  In the first additional paragraph, Plaintiffs proposed to allege that the procedures executed during the December 15, 2009 search of the Park County Property "were not in accordance with the approved county resolution for Animal Control execution but [instead] Defendants Priestly, Hardey, Bramlett operate [in accordance with] unwritten policies established by Sheriff Wegener."  (Proposed Am. Compl. ¶ 219.)  However, even assuming that Defendant Wegener is an "employee with final policymaking authority" or that his "unwritten policies" constituted an informal municipal custom, Plaintiffs' proposed First Amended Complaint is devoid of any facts describing these unspecified "unwritten policies."  As

21

such, these proposed allegations are conclusory and fail to support a claim for § 1983 municipal liability. *Southern Disposal, Inc.*, 161 F.3d at 1262

In the second additional paragraph of the proposed Amended Complaint, Plaintiffs allege that the Board of County Commissioners, which includes proposed defendants John Tighe, Dick Hodges, and Mark Dowaliby, "actively participated and approved County Resolution No. 2009-07 which defines county charges, fees, and fines enforced by animal control." (Proposed Am. Compl. ¶ 267.) However, although Plaintiffs allege that County Resolution No. 2009-07's "fees are excessive and violate the 8th Amendment excessive bail, fees, with resulting cruel and unusual punishment" (*id.*), Plaintiffs' proposed Amended Complaint is devoid of any factual allegations as to whether and, if so, how this resolution was implemented to violate *their* constitutional rights. *See Nasious v. Two Unknown B.I.C.E. Agents,* 492 F.3d 1158, 1163 (10th Cir. 2007) (stating that a complaint "must explain what each defendant did to [each Plaintiff]; when the defendant did it; how the defendant's actions harmed him or her; and, what specific legal right the plaintiff believes the defendant violated.") Consequently, this additional factual allegation against proposed defendants Tighe, Hodges, and Dowaliby also fails to support a claim for § 1983 municipal liability.

Altogether, the court finds that Plaintiffs' Complaint fails to state a claim for municipal liability under § 1983. The court further finds that the official-capacity and municipal liability claims included in Plaintiffs' proposed First Amended Complaint are futile because they fail to remedy the deficiencies noted above. Therefore, the court finds that the Park County

Defendants' Motion to Dismiss is properly granted, and Plaintiffs' Motion to Amend is properly denied, with respect to Plaintiffs' § 1983 municipal liability claims.

### C.    *Eighth Amendment Claims*

Defendants argue that they are entitled to qualified immunity from Plaintiffs' Eighth Amendment claims because Plaintiffs' allegations do not concern any actions taken after they were convicted for animal cruelty.  (Park Cnty. Defs.' Mot. Dismiss at 7; Indiv. Defs.' Mot. Dismiss at 14.)  The court agrees.

In their Complaint, Plaintiffs allege that Defendants violated their right to be free from cruel and unusual punishment by demanding that Ms. Walker post bond for all of the dogs seized from the Park County Property or transfer ownership of those dogs to the county.  (Compl. ¶¶ 210, 235.)  However, it is clear from the allegations in the Complaint that these actions were taken well in advance of Plaintiffs' ultimate convictions for animal crueltyl in fact, they were taken before either Plaintiff was even criminally charged. (*See id.*)  The Eighth Amendment's bar on cruel and unusual punishment "does not apply until after an adjudication of guilt."  *Hewitt v. City of Truth or Consequences,* 758 F.2d 1375, 1377 n.2 (10th Cir. 1985) (citations omitted) *overruled on other grounds by Graham v. Connor,* 490 U.S. 386 (1989); *see also Ingraham v. Wright,* 430 U.S. 651, 671 n.40 (1977) (Government officials do "not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law.").  Thus, the Eighth Amendment's ban on cruel and unusual punishment is clearly inapplicable to the facts alleged.

In their proposed Amended Complaint, Plaintiffs propose to allege that the same actions, the demand that Plaintiffs' provide bond for their dogs, violated their Eight Amendment rights to be free from excessive bail.  (Proposed Am Compl. ¶¶ 228, 256.)  However, these proposed

allegations also fail to establish an Eighth Amendment violation because the bonding demanded

by defendants did not constitute, or relate to, "bail."  By providing that "[e]xcessive bail shall not

be required," the "Eighth Amendment addresses pretrial release."  *United States v. Salerno,* 481

U.S. 739, 752 (1987) (further providing that the "primary function of bail is to safeguard the

courts' role in adjudicating the guilt or innocence of defendants").  Here, the bonding provisions

of Colo. Rev. Stat. § 18-9-202.5 do not relate to pretrial release, nor do they concern the courts'

role in adjudicating guilt or innocence.  Rather, "bonding" under § 18-9-202.5 requires the

posting of a bond simply to ensure that the animal's care while at the impound agency is paid for

by the animal's owner.  As such, the bond allegedly demanded by Defendants does not relate to,

or constitute bail, and, consequently, Plaintiffs' reliance on the Eighth Amendment's prohibition

on excessive bail is misplaced.

Accordingly, the court finds that Plaintiffs' Complaint and their proposed Amended

Complaint both fail to state a claim for violations of their Eighth Amendments rights.  As a

consequence, Defendants are entitled to qualified immunity from Plaintiffs' Eighth Amendment

claims.  Therefore, the Park County Defendants' and the Individual Defendants' Motions to

Dismiss are properly granted as to Plaintiffs' Eighth Amendment cruel and unusual punishment

claims, and Plaintiffs' Motion to Amend is properly denied as futile to the extent that it proposes

to allege an Eighth Amendment claim for excessive bail.

**D.**      ***Fifth Amendment Self Incrimination Claims***

Defendants argue that they are entitled to qualified immunity from Plaintiffs' claims for

violations of their Fifth Amendment self-incrimination rights because a failure to advise a

criminal suspect of his or her rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), colloquially known as *Miranda* rights, alone cannot form the basis of a § 1983 claim for damages.  (Park Cnty. Defs.' Mot. Dismiss at 7; Indiv. Defs.' Mot. Dismiss at 14.)  The court agrees.

It is well settled that an alleged failure to warn an individual of their *Miranda* rights alone cannot form the basis of a § 1983 claim for liability.  *Chavez v. Martinez,* 538 U.S. 760, 772-73 (2003) (plurality opinion); *Bennett v. Pasic,* 545 F.2d 1260, 1263 (10th Cir. 1976); *Marshall v. Columbia Lea Reg'l Hosp.,* 345 F.3d 1157, 1165 n.6 (10th Cir. 2003).  Rather, the "only available remedy for a *Miranda* violation [] is the suppression of an incriminating statement."  *Starr v. Downs,* 117 F. App'x 64, 66 n.1 (10th Cir. 2004).  Instead, "a violation of the constitutional right against self-incrimination occurs only if one has been compelled to be a witness against himself in a criminal case."  *Chavez,* 538 U.S. at 770.

Here, Plaintiffs plead guilty to the charges of animal cruelty against them (Park Cnty. Defs.' Mot. Dismiss, Ex. A-B); thus, there was no trial and no testimony to which the Fifth Amendment would apply.  Since Defendants failure to warn Plaintiffs' of their *Miranda* rights alone cannot form the basis § 1983 claim for damages, the court finds that Defendants are entitled to qualified immunity from Plaintiffs' Fifth Amendment self-incrimination claims.  Furthermore, the allegations of Plaintiffs' proposed Amended Complaint do not, and indeed cannot, overcome this basis for dismissal.  Therefore, the court finds that the Park County Defendants' and the Individual Defendants' Motions to Dismiss are properly granted as to Plaintiffs' § 1983 claim for violations of their Fifth Amendment rights against self-incrimination,

and that Plaintiffs' Motion to Amend is properly denied as futile to the extent that their proposed

Amended Complaint seeks to assert a similar claim

**E.      *Fourth Amendment Claims***

At the outset, the court finds that Defendants were permitted to *enter* the Harstel

Property, regardless of whether they had a warrant or probable cause, because the ranchland

constituted "open fields."  The Supreme Court has held that the Fourth Amendment's protections

do not extend to "open fields," even where law enforcement entry may be considered a trespass.

*Oliver v. United States,* 466 U.S. 170, 173 (1984); *Rieck v. Jensen,* 651 F.3d 1188, 1192 (10th

Cir. 2011) ("[T]he Supreme Court has made it clear that the Fourth Amendment does not track

property law.")  Unlike a person's home and its curtilage, "open fields do not provide the setting

for those intimate activities that the [Fourth] Amendment is intended to shelter from government

interference or surveillance." *Id.* at 179.  "The term 'open fields' may include any unoccupied or

undeveloped area outside of the curtilage" and need not be either "'open' nor a 'field' as those

terms are used in common speech."  *Oliver,* 466 U.S. at 180 n.11.

Further, the Supreme Court has explicitly "rejected[ed] the suggestion that steps taken to

protect privacy establish that expectations of privacy in an open field are legitimate." *Id.* at 182.

Thus, whether a parcel of land constitutes open fields is unaffected by attempts to conceal

criminal activity, such as limiting those activities to secluded land, erecting fences, or posting

"No Trespassing" signs. *Id.*

Here the allegations of the Complaint make clear that the Harstel Property constitutes

open fields.  The Park County Property consisted of a 160-acre ranch, with only a "½ mile long

gated driveway, a recreational vehicle (RV),[8] and a completely fenced in area for operating their licensed dog kennel." (Compl. ¶ 25.) Within the "fenced kennel area [] was also an 8ft x 15ft steel shipping container . . . use[d] as a warming hut, storage of all dog food, hardware, and equipment, and office/break area for kennel operations and caretakers." (*Id.* ¶ 26.)

Conspicuously absent from this sole description of the Park County Property is any reference to a house or other dwelling. The steel shipping container surely falls short of a home. *See United States v. Dunn,* 480 U.S. 294, 304 (1987) (rejecting that a the Fourth Amendment's protections extended to the area immediately outside of a barn, even after assuming the barn was an essential part of the landowner's business and was therefore itself entitled to protection). As such, by definition, the Park County Property did not constitute either a home or its curtilage. *See id.* ("the central component of [the curtilage] inquiry [is] whether the area harbors the intimate activities associated with the sanctity of a man's home and the privacies of life.") The mere fact that Plaintiffs may have posted "No Trespassing" signs and erected fences around the dog kennel (Compl. ¶ 68) does not affect the court's analysis. Instead, the court finds that the Park County Property constituted open fields and therefore Defendants' entry on December 15, 2009 did not constitute a search subject to Fourth Amendment protection. *Oliver,* 466 U.S. at 177. *See also United States v. Pinter,* 984 F.2d 376,379 (10th Cir. 1993) ("The open fields doctrine does not require that law enforcement officials have some objective reasons—either probable cause or reasonable suspicion—before entering an open field.")

---

[8] There are no allegations that Plaintiff lived in this recreational vehicle. (Compl. ¶¶ 25-26; *see also id.* ¶ 20.)

Nevertheless, here, Defendants went beyond merely observing the Park County Property and seized effects contained thereon (i.e. two dogs). In the absence of a search warrant, or some exception to the warrant requirement, this additional step was impermissible. *See Husband v. Bryan,* 946 F.2d 27, 30 (5th Cir. 1991) (the Supreme Court has not extended the open fields doctrine to anything beyond observations searches); *see also Oliver,* 466 U.S. at 177 ("the government's intrusion upon the open fields is not one of those 'unreasonable *searches*' proscribed by the text of the Fourth Amendment.") (emphasis added). As such, the court must consider whether Defendants' seizure of Plaintiffs' two dogs on December 15, 2009 once legally on the Park County Property was permissible.

### 1.     December 15, 2009 Warrantless Seizure

Defendants argue that seizure of two of the dogs found on the Park County Property was permissible because of exigent circumstances. (Indiv. Defs.' Mot. Dismiss at 9-11.) Because the court is persuaded by this argument, it does not address Defendants' alternative argument that Mr. Whelan consented to Defendants' actions.[9]

---

[9] If it were required to reach this issue, the court would likely find that Defendants are not entitled to qualified immunity from this claim based on Mr. Whelan's consent. More specifically, although a warrantless search may be valid when law enforcement officials obtain the voluntary consent of someone with actual or apparent authority to so consent, *Georgia v. Randolph,* 547 U.S. 103, 106 (2006), there are no allegations in the Complaint suggesting that Mr. Whelan actually consented to any search and seizure. (*See generally* Compl. ¶¶ 50-91.) Although Defendants appear to cite to a report prepared by Defendant Priestly to support their position that Mr. Whelan gave his consent (Mot. at 12), the court is not permitted to consider this evidence at this procedural juncture. *Workman,* 958 F.2d at 334 n.2.

"A warrantless seizure is *per se* unreasonable unless it falls within a few carefully delineated exceptions to the warrant requirement. *DiCesare v. Stuart,* 12 F.3d 973, 977 (10th Cir. 1993).  One of those exceptions is exigent circumstances, which arise when "(1) law enforcement officers [] have reasonable grounds believe that there is immediate need to protect their lives or others or their property or that of others, (2) the search [is] not motivated by an intent to arrest or seize evidence, and (3) there [is] some reasonable basis, approaching probable cause, to associate an emergency with the area or place to be searched." *United States v. Smith,* 797 F.2d 836, 840 (10th Cir. 1986).  "As an exception to the warrant requirement, exigent circumstances must be 'jealously and carefully drawn.'" *United States v. Anderson,* 981 F.2d 1560, 1567 (10th Cir. 1992) (quoting *United States v. Aquino,* 836 F.2d 1268, 1270 (10th Cir. 1988); *Smith,* 797 F.2d at 841).

The Tenth Circuit has recognized that exigent standard applies to situations involving the mistreatment of animals.  *DiCesare v. Stout,* 992 F.2d 1222, 1993 WL 137110, at *4 (10th Cir. Apr. 23, 1993) (unpublished table opinion) (finding exigent circumstances to support a seizure of the plaintiff's horses where officers had observed the horses' continued decline); *see also DiCesare v. Stuart,* 12 F.3d 973, 978 (10th Cir. 1993) (finding a lack of exigent circumstances where officers waited approximately sixteen hours after discovering malnourished horses before seizing them).

Based on the allegations in Plaintiffs' Complaint, the court finds that exigent circumstances supported Defendants' warrantless seizure of the two dogs on December 15, 2009. First, after receiving a complaint regarding the condition of the dogs on the Park County

30

Property, an individual with the Humane Society of the United States was sufficiently concerned to contact the proper local authorities, Defendant Priestly.  (*See* Compl. ¶ 51.)  Defendant Priestly was likewise sufficiently concerned about the substance of that phone call to round up several other Sheriff's Department officials, including the Sheriff himself, Defendant Wegener, and report to the Park County Property within *two hours* of receiving the Humane Society call. (*See id.* ¶¶ 53-54.)  Perhaps most importantly, after assessing the dogs on the Park County Property, which included conducting a body scoring test on some of the dogs,[10] Defendants elected to remove only two of approximately 100 dogs located on the Park County Property. (*See id.* ¶¶ 58-62.)  Notably, Defendants decided against seizing another 30 dogs that Plaintiffs admit were determined by a veterinarian to be in "immediate danger," until a search warrant was obtained for the following day.  (*See id.* ¶¶ 106-07.)

Under these circumstances, the *only* reasonable inference that can be drawn from these allegations is that Defendants were presented with reasonable grounds to believe, mistakenly or not, that there was an immediate need to protect the lives of the two dogs seized.  S*ee Pennington v. Penner,* 207 F. Supp.2d 1225, 1241 (D. Kan. 2002) (citing *Siebert v. Severino,* 256 F.3d 648,658 (7th Cir. 2001) (finding a reasonable inference that a stallion needed additional immediate care sufficient to support a finding of exigent circumstances where the stallion was immediately taken to a veterinarian's clinic after being inspected).  *See also Sanders v. Brown,*

---

[10] Plaintiffs contest the use of the body scoring test at issue, the Henneke Body Scoring System, because it was developed for horses.  (Compl. ¶ 61, 75-78.)  However, even assuming it was an improper methodology, Plaintiffs do not maintain that Defendants reached an improper *conclusion* as to the condition of the dogs.  (*See id.*)

504 F.3d 903, 910 (9th Cir. 2007) (unreasonable inferences are insufficient to defeat a motion to

dismiss).  The only conclusion that the court can reach from these allegations is that Defendants

were presented with sufficient information, through the phone call received from the Humane

society and their direct observation and testing of the dogs, to reasonably conclude that there was

an immediate threat to the lives or safety of these dogs.  *See id.*

Accordingly, because the allegations of Plaintiffs' Complaint, and the only reasonable

inferences derived therefrom, demonstrate that Defendants seizure of two dogs was supported by

exigent circumstances, the court finds that Plaintiffs have failed to allege a Fourth Amendment

claim based on the seizure of these dogs.  Furthermore, the court has reviewed the additional

allegations of Plaintiffs' proposed Amended Complaint and finds that they fail to rebut or

overcome this conclusion.  As such, the court finds that Defendants are entitled to qualified

immunity from Plaintiffs' Fourth Amendment claim relating to the December 15, 2009 entry on

to the Park County Property and seizure of the two dogs.  Therefore, the court finds that the

Individual Defendants' Motion to Dismiss is properly granted with respect to this claim.

### 2. *December 16, 2009 Search*

Plaintiffs acknowledge that the December 16, 2009 search of the Park County Property

was conducted pursuant to a search warrant.  (Compl. ¶ 92; Proposed Am. Compl. ¶ 94.)

Plaintiffs' sole challenge to that search, in both their original Complaint and proposed Amended

Complaint, is that "the averments contained in the search warrant were almost entirely

comprised of information obtained during the warrantless entry onto the Walkers [sic] property

on December 15, 2009."  (Compl. ¶¶ 64, 208; Proposed Am. Compl. ¶¶ 64, 226.)  However, as

discussed above, Defendants were lawfully on the Park County Property pursuant to the open

fields doctrine and  Defendants lawfully seized two dogs that day based on exigent

circumstances.  As such, because the information supporting the December 16, 2009 search

warrant was lawfully obtained, the search conducted pursuant to that search warrant was lawful.

*See United States v. Magers,* 123 F. App'x 344, 347 (10th Cir. 2005) (citing *Illinois v. Gates,*

462 U.S. 213, 236 (1983)) ("[A] search warrant and its supporting affidavit are presumed valid . .

. .")

Accordingly, the court finds that, between their original Complaint and their Proposed

Amended Complaint, Plaintiffs fail to state a Fourth Amendment violation based on the

December 16, 2009 search of the Park County Property.  As a consequence, Defendants are

entitled to qualified immunity from this claim.  Therefore, the court finds that the Individual

Defendants' Motion to Dismiss is properly granted, and that Plaintiffs' Motion to Amend is

properly denied with respect to Plaintiffs' Fourth Amendment claim concerning the December

17, 2009 search of the Park County Property.

### 3.    *December 17, 2009 Search*

Defendants appear to argue that they are entitled to qualified immunity with respect to

Plaintiffs' Fourth Amendment claim concerning the December 17, 2009 search because Ms.

Walker consented to that search.  (Indiv. Defs.' Mot. Dismiss at 9 n.8.)  The court agrees.

A warrantless search may be consistent with the Fourth Amendment if it is consensual

and the consent is freely given by someone with actual or apparent authority over the premises.

*United States v. Patten,* 183 F.3d 1190, 1194 (10th Cir. 1999).  Here, Plaintiffs concede in their

Complaint that, on December 16, 2009, Ms. Walker signed a consent form allowing Defendants to return to the Park County Property on December 17, 2009 to continue their search and to seize the remaining dogs.  (Compl. ¶ 120).  *See also Eidson v. Owens,* 515 F.3d 1139, 1147 (10th Cir. 2008) ("A signed consent form is indicative of a voluntary consent").  Plaintiffs do not contend that Ms. Walker lacked actual or apparent authority to consent to this search.  Rather, Plaintiffs' contend that Ms. Walker's consent was "sought by means of coercion and duress."  (Compl. ¶ 102.)  However, Plaintiffs do not support these conclusory allegations with any facts supporting an inference that Ms. Walker was somehow coerced into signing the consent form, or that she did so under duress.  As such, Plaintiffs' Complaint fails to state a claim that the December 17, 2009 search violated their Fourth Amendment rights.

Furthermore, having reviewed Plaintiffs' proposed Amended Complaint, the court finds that Plaintiffs' proposed additional allegations do not enhance their unsupported allegations that Ms. Walkers' consent was obtained by coercion or duress.  (*See* Proposed Am. Compl.  ¶¶ 104-05, 122, 126.)

Accordingly, because Plaintiffs' Complaint concedes that Ms. Walker consented to the December 17, 2009 search of the Park County Property and because the Complaint does not include factual allegations supporting Plaintiffs' conclusory assertion that Ms. Walker signed this consent form under coercion or duress, the court finds that Plaintiffs have failed to establish a Fourth Amendment claim based on the December 17, 2009 search of the Park County Property.  Therefore, the court finds that Defendants' are entitled to qualified immunity with respect to this claim.  Consequently, the court finds that Defendants' Motion to Dismiss is properly granted and

Plaintiffs' Motion to Amend is properly denied with respect to Plaintiffs' Fourth Amendment claim concerning the December 17, 2009 search of the Park County Property.

### 4.    January 11, 2010 Search

Defendants also appear to allege that the January 11, 2010 search of the Park County Property was permissible because it was conducted pursuant to a search warrant. (*See* Indiv. Defs.' Mot. Dismiss at 3.) However, Defendants fail to acknowledge that Plaintiffs do not challenge the legality of the search *per se*. Rather, Plaintiffs allege that Defendants violated their Fourth Amendment rights by "willfully exceed[ing] the scope of the court approved search and seizure warrant." (Compl. ¶ 228.) In particular, Plaintiffs maintain that Defendants "found the deceased dogs specifically described by the warrant on the surface [of the Park County Property], but continued to dig up the entire grave yard" to find an additional 35 deceased dogs, which allegedly caused significant destruction to the Park County Property. (*Id.*)

The court finds that these allegations sufficiently state a claim for a violation of the Fourth Amendment. Where "a warrant clearly and precisely specifies items to be seized, and the officers executing the warrant seize additional items, those officers act unreasonably for Fourth Amendment purposes unless their conduct may be justified under an exception to the warrant requirement, such as the plain-view exception." *Bowling v. Rector,* 584 F.3d 956, 971 (10th Cir. 2009). Moreover, this constitutional right was established at least as early as 1990. *See id.* (citing *Horton v. California,* 496 U.S. 128, 140 (1990)).

The court notes that neither party has presented the search warrant authorizing the January 11, 2010 search to the court. *Alvarado v. KOB-TV, L.L.C,* 493 F.3d 1210, 1215 (10th

Cir. 2007) (notwithstanding the usual rule that a court should consider no evidence beyond the pleadings on a Rule 12(b)(6) motion to dismiss, the court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents authenticity).  As such, the court must presume the truth of Plaintiffs' allegations that the search warrant only authorized Defendants to seize five dogs found on the surface of the land, and that Defendants' efforts uncover additional deceased dogs by digging up the dog graveyard exceeded the scope of that warrant.[11]  Because Defendants have not responded to Plaintiffs' allegations that they exceeded the lawful scope of the search warrant, the court cannot conclude that they are entitled to qualified immunity based on the plain-view or a similar exception to the warrant requirement.

Additionally, the court notes that Defendants rely primarily on the argument asserted in their motions to dismiss to oppose Plaintiffs' Motion to Amend.  (*See* Resp. Mot. Am. ¶¶ 5-6.) As such, the court cannot conclude that Plaintiffs' proposed Amended Complaint is futile to the extent that it asserts a Fourth Amendment claim premised on the January 11, 2010 search. Accordingly, the court finds that the Individual Defendants' Motion to Dismiss is properly

---

[11] Pursuant to the open fields doctrine, Defendants may have lawfully been on the Park County Property on January 11, 2010, regardless of whether they had a search warrant. However, as noted above, that doctrine does not extend beyond observational searches. *See Husband,* 946 F.3d at 29-30.  Moreover, neither the Supreme Court, *see id.,* or the Tenth Circuit has extended the open fields doctrine to include land *underneath* the open fields.  *Cf. Donovan v. Dewey,* 452 U.S. 594, 602-03 (1981) (Fourth Amendment applies to searches of mines).  As such, the open fields doctrine has no bearing on whether Defendants would be entitled to qualified immunity from this claim.

denied, and that Plaintiffs' Motion to Amend is properly granted, with respect to Plaintiffs' Fourth Amendment claim concerning the January 11, 2010 search of the Park County Property.

**F.      Fifth Amendment and Fourteenth Amendment Due Process Claims**

Defendants maintain that they are entitled to qualified immunity from Plaintiffs' claims alleging that the seizure of their dogs and other property amounted to a taking without just compensation and a seizure without due process in violation of their Fifth and Fourteenth Amendment rights.  (Indiv. Defs.' Mot. Dismiss at 13-14.)  In particular, Defendants argue that because no Tenth Circuit or United States Supreme Court decision has found Colo. Rev. Stat. § 18-2-202 to be unconstitutional Plaintiffs cannot demonstrate that Defendants violated any clearly established law.  The court agrees.

Plaintiffs concede that their dogs were taken pursuant to Colo. Rev. Stat. § 18-9-202.  *See* Compl. ¶ 236; Resp. Indiv. Defs.' Mot. Dismiss at 3.)  That statute provides, *inter alia,* that

> A peace officer having authority to act under this section may take possession of and impound an animal that the peace officer has probable cause to believe is a victim of a violation of subsection (1) or (1.5) of this section or is a victim of a violation of section 18-9-204 and as a result of the violation is endangered if it remains with the owner or custodian.

Colo. Rev. Stat. § 18-9-202(1.8).

Plaintiffs' nevertheless maintain that this statute, as well as Colo. Rev. Stat. § 18-9-202.5, which governs bonding of impounded animals, are unconstitutional because § 18-9-202 "fails to provide any due process for notice and hearing for the citizen" and § 18-9-202.5 "requires the owner to provide notice to the agency instead of the reverse."  (Compl. ¶ 236.)  However, even if the court assumes that these statutory provisions are unconstitutional, Plaintiffs must also show

that this unconstitutionality was clearly established at the time of Defendants' actions.  *Jensen,*

603 F.3d at 1196.  Plaintiffs have not proffered, nor can the court otherwise find, any United

States Supreme Court or Tenth Circuit decisions holding that these statutory provisions, or other

substantially similar provisions, are unconstitutional.  Therefore, to the extent that Plaintiffs

maintain that the seizure of their dogs pursuant to Colo. Rev. Stat. § 18-9-202 amounted to a

taking without just compensation and a violation of their due process rights, the court finds that

Defendants are entitled to qualified immunity

Plaintiffs also argue that the their claim "includes the theft of their personal property by

law enforcement officials, caretakers, and volunteers, which has nothing to do with dogs and

[§§] 18-9-202 and 202.5."  (Resp. Indiv. Defs.' Mot. Dismiss at 3.)  However, both procedural

due process and takings claims fail where the state provides adequate post-deprivation remedies.

*See Harmon v. Williams,* 77 F. App'x 440, 441-42 (10th Cir. 2003) (citing *Hudson v. Palmer*,

468 U.S. 517, 533, 536 (1984); *Parratt v. Taylor*, 451 U.S. 527, 541 (1981)) *overruled on other*

*grounds by Daniels v. Williams,* 474 U.S. 327 (1986) (rejecting civil rights claims for damages,

including a claim under the takings clause, caused by unauthorized conduct during searches and

for return of property where the state provided adequate post-deprivation remedies in the form of

an action for replevin or other state law torts).  S*ee also Williamson Cnty. Reg'l Planning*

*Comm'n v. Hamilton Bank of Johnson City,* 473 U.S. 172, 194 ("If a state provides an adequate

procedure for seeking just compensation, the property owner cannot claim a violation of the Just

Compensation Clause until it has used the procedure and been denied just compensation.");

*Gillihan v. Shillinger,* 872 F.2d 935,939 (10th Cir. 1989) *overruled on other grounds by Clark v.*

*Wilson,* 625 F.3d 686, 691 (10th Cir. 2010) (neither negligent nor intentional deprivations of property that are random and unauthorized give rise to a § 1983 claim where the plaintiff has an adequate state remedy).

Here, Plaintiffs had adequate state law remedies, such as a conversion or replevin claim, to recover the property that was allegedly improperly taken from them. *See* Colo Rev. Stat. § 24-10-118(1) (public employees are immune from tort claims "unless the act or omission causing such injury was willful and wanton."); *see also Bethel v. United States,* 456 F. App'x 771, 775 n.11 (10th Cir. 2012). Plaintiffs have not maintained that such state law remedies were inadequate to obtain damages or the return of their property. *See Allen v. Reynolds,* 09-cv-2605-CMA-MJW, 2010 WL 2483888, at *2 (citing *Montana v. Hargett,* 84 F. App'x 15, 17 (10th Cir. 2003)) ("The Tenth Circuit requires a plaintiff to plead that [state law] remedies are inadequate to survive a 12(b)(6) motion.") Consequently, the court finds that Plaintiffs' procedural due process and takings claims fail to the extent that they are premised on the seizure of their personal property.

Accordingly, for the reasons stated above, the court finds that Defendants are entitled to qualified immunity from Plaintiffs' procedural due process and takings claims as asserted in Plaintiffs' original Complaint. Furthermore, the court has reviewed Plaintiffs' proposed Amended Complaint and find that the additional allegations contained therein fail to overcome these grounds for dismissal. (*See* Proposed Am Compl.) Therefore, the court finds that Defendants' First Motion to Dismiss is properly granted with respect to Plaintiffs' Fourteenth

Amendment due process claim and Fifth Amendment takings claim, and Plaintiffs' Motion to Amend is properly denied as futile to the extent it seeks to reassert these same claims.

### G.  Remaining Issues with Respect to Plaintiffs' Motion to Amend

#### 1.  Claims Premised on Criminal Statutes

In their original Complaint, each of Plaintiffs' claims refer to the following statutes: (1) 18 U.S.C. § 241, (2) 18 U.S.C § 242, (3) 18 U.S.C. § 371, (4) 18 U.S.C. § 1001, and (5) 18 U.S.C. § 2234.  In their Rule 12(b)(6) Motion, Defendants argue that, to the extent that Plaintiffs are asserting claims pursuant to these statutes, those claims fail because these criminal statutes do not provide for a private, civil cause of action.

It is unclear whether Plaintiffs actually seek to assert claims pursuant to these criminal statutes.  However, by removing any reference to these criminal statutes from their proposed Amended Complaint (*see* Proposed Am. Compl.; *see also* Resp. Park Cnty. Defs.' Mot. at 8; Resp. Indiv. Defs.' Mot. Dismiss at 6), Plaintiffs appear to acknowledge that "a plaintiff cannot recover civil damages for an alleged violation of a criminal statute," *Shaw v. Neece,* 727 F.2d 947, 949 (10th Cir. 1984).  Accordingly, the court finds that Plaintiffs' Motion to Amend is properly granted to the extent that it seeks to remove any reference to the above-noted criminal statutes from their proposed Amended Complaint, and that Defendants' First Motion to Dismiss is properly denied as moot to the extent that it seeks to dismiss Plaintiffs' "claims" pursuant to 18 U.S.C. §§ 241, 242, 371, 1001, and 2234.

#### 2.  Proposed Defendants Tighe, Hodges, and Dowaliby

In their proposed Amended Complaint, Plaintiffs seek to add three individual Park County Commissioners, John Tighe, Dick Hodges, and Mark Dowaliby, in both their individual and official capacities.  The court has already determined that Plaintiffs' proposed official capacity claims against these individuals fail to state a § 1983 claim for municipal liability.  (*See supra.*)

The court also finds that Plaintiffs' individual capacity claims against these proposed defendants are futile.  The only allegations against these proposed defendants are that they "approved County Resolution No. 2009-07 which defines county charges, fees, and fines enforced by animal control."  (Proposed Am. Compl. ¶ 267.)  These allegations fail to establish these defendants personal involvement in the alleged violations of Plaintiffs' constitutional rights.  *Foote v. Speigel,* 118 F.3d 1416, 1423 (10th Cir. 1997) ("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation.")  In any event, Mr. Tighe, Mr. Hodges, and Mr. Dowaliby would be entitled to legislative immunity because Plaintiffs' allegations relate solely to the enactment of a county resolution.  *Grace Church of Roaring Fork Valley v. Bd. of Cnty. Comm'rs,* 742 F. Supp. 2d 1156, 1168 (D. Colo. 2010) (citing *Lake Cnty. Estates, Inc. v. Tahoe Reg'l Planning Agency,* 440 U.S. 391 (1979); *see also B Street Commons, Inc. v. Bd. of Cnty. Comm'rs,* 835 F. Supp. 1266 (D. Colo. 1993) (county commissioners entitled to absolute immunity from liability for damages for enacting legislation determined to be unconstitutional).

Accordingly, the court finds that Plaintiffs' proposed addition of County Commissioners Tighe, Hodges, and Dowaliby fail to state a claim for relief and are therefore futile.  Therefore,

41

the court finds that Plaintiffs' Motion to Amend is properly denied with respect to Plaintiffs' claims against these proposed defendants.

### 3.     *Former Defendants Suthers and McLimans*

Plaintiffs' original Complaint named former defendant John Suthers in his official capacity and Debra McLimans in both her individual and official capacity.  District Judge Brimmer already dismissed these individuals as defendants on March 26, 2012.  (*See* Order Accepting Magistrate Judge's Recommendation, Doc. No. 32.)  Nevertheless, Plaintiffs' proposed Amended Complaint again seeks to include both of these individuals as defendants. The court reviews Plaintiffs' proposed allegations against these former defendants to determine whether they overcome the previously-asserted grounds for dismissal.

### a.     *Official Capacity Claims*

The court again finds that Plaintiffs' claims against Defendant Suthers and McLimans in their official capacities for money damages are barred by Eleventh Amendment immunity.  As explained in greater detail in the court's March 2, 2012 Recommendation, "the Eleventh Amendment [] shields state officials, acting in their official capacities, from claims for monetary relief.  (Doc. No. 21 at 11 (citing *Hill v. Kemp*, 478 F.3d 1236, 1255–56 (10th Cir. 2007)).  Both Defendant Suthers and McLimans are state officials.  (*Id.*)  Thus, Plaintiffs proposed allegations against Defendants Suthers and McLimans are futile to the extent that they seek monetary damages.

In their proposed Amended Complaint, however, Plaintiffs seek a declaration that Colo. Rev. Stat. §§ 18-9-202 and 202.5 are unconstitutional and injunctive relief in the form of a

"cease and desist order on enforcement of these unconstitutional statutes." (Proposed Am. Compl. at 36.)  The Supreme Court has recognized an exception to Eleventh Amendment immunity where a plaintiff is seeking prospective enforcement of his or her federal rights. *See Ex Parte Young,* 209 U.S. 123, 159-60 (1908).  However, this exception "may not be used to obtain a declaration that a state officer has violated a plaintiff's federal rights in the past." *Buchwald v. Univ. of N.M. Sch. of Med.,* 159 F.3d 487, 495 (10th Cir. 1998) (citations and quotations omitted).  Furthermore, plaintiffs seeking prospective injunctive relief "must show more than past harm or speculative future harm."  *Riggs v. City of Albequerque,* 916 F.2d 582, 586 (10th Cir. 1990).

Here, Plaintiffs' claims relate solely and completely to incidents that occurred in the past. Plaintiffs' do not allege, nor does it otherwise appear, that there is a substantial likelihood that their constitutional rights will be violated in the same alleged way in the future.  As such, Plaintiffs' claim for declaratory relief are barred by the Eleventh Amendment, and Plaintiffs' lack standing to seek prospective injunctive relief.  *See Lippoldt v. Cole,* 468 F.3d 1204, 1217-18 (10th Cir. 2006).

### b.    *Individual Capacity Claims*

As noted above, Plaintiffs also seek to assert claims against Mr. Suthers and Ms. McLimans in their individual capacities.  Although Plaintiffs original Complaint did name Ms. McLimans in her individual capacity, it only named Mr. Suthers in his official capacity. Nevertheless, the court finds that Plaintiffs' proposed individual capacity claims against Mr. Suthers and Ms. McLimans would be futile.

First, Plaintiffs' proposed allegations against Mr. Suthers fail to demonstrate that Mr. Suthers personally participated in any alleged constitutional violation. Plaintiffs proposed allegations against Mr. Suthers merely state that "[t]he state Attorney General, John Suthers failed to ensure the animal cruelty statute, 18-9-202 CRS, was constitutionally compliant." ( ¶ 207.) These allegations fail to demonstrate an affirmative link between the alleged violations of Plaintiffs' constitutional rights and Mr. Suther's participation, control or direction, or failure to supervise. *Butler v. City of Norman,* 992 F.3d 1053, 1055 (10th Cir. 1993).

Second, the court finds that Plaintiffs' proposed allegations against Ms. McLimans are futile because, for the same reasons outlined in the court's March 2, 2012 Recommendation, Ms. McLimans would be entitled to qualified immunity. To overcome Ms. McLimans's prior assertion of qualified immunity, Plaintiffs must demonstrate that Defendant McLimans's actions violated a federal constitutional or statutory right. (March 2, 2012 Recommendation at 7 (citing *Jensen,* 603 F.3d at 1196). Here, although Plaintiffs proposed to add allegations that Ms. McLimans failed to ensure that Plaintiffs restitution balance was correct throughout the life of the balance, which resulted in "Casino's [sic] unlawfully seiz[ing] Sam Walker [sic] property (winnings) based upon incorrect balances" after their restitution balance was "paid to zero" (Am. Comp. ¶¶ 196-205), Plaintiffs again fail to allege how these alleged actions violated their federal constitutional or statutory rights. (*See* March 2, 2012 Recommendation at 15 (citing *Nasious,* 492 F.3d at 1163). Accordingly, the court again finds that Ms. McLimans would be entitled to qualified immunity.

Altogether, for the foregoing reasons, the court finds that Plaintiffs' proposed allegations against Mr. Suthers and Ms. McLimans in both their official and individual capacities would be futile. Therefore, the court finds that Plaintiffs' Motion to Amend is properly denied with respect to Plaintiffs' proposed claims against these former defendants.

WHEREFORE, for the foregoing reasons, the court respectfully

RECOMMENDS that Defendants' "Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)" (Doc. No. 14) be GRANTED in part and DENIED. Specifically, the court RECOMMENDS that this Motion be DENIED to the extent that it seeks to dismiss Plaintiffs' claims in their entirety pursuant to *Heck v. Humphrey,* 512 U.S. 447 (1994), and DENIED as moot to the extent that it seeks to dismiss Plaintiffs' claims premised on the following criminal statutes: 18 U.S.C. §§ 241–242, 371, 1001, and 2234. The court RECOMMENDS that this Motion be GRANTED to the extent that it seeks to dismiss Plaintiffs' official capacity and municipal liability claims, Eighth Amendment claims, and Fifth Amendment for violations of their rights against self-incrimination..

The court further RECOMMENDS that the "Individual Defendants' Motion to Dismiss Pursuant to 12(b)(1)" (Doc. No. 15) be GRANTED in part and DENIED. Specifically, the court RECOMMENDS that this Motion be DENIED to the extent that it seeks to dismiss Plaintiffs' Fourth Amendment claims relating to January 11, 2010 search of the Park County Property, and GRANTED to the extent that it seeks to dismiss Plaintiffs' Fifth and Fourteenth Amendment claims alleging violations of their rights under the takings and due process clauses, Eighth Amendment claims, Fifth Amendment claims alleging violations of their rights against self-

incrimination, and Fourth Amendment claims relating to the December 15, 16, and 17, 2009, searches of the Park County Property.

The court further RECOMMENDS that Plaintiffs' "Opposed Motion for One Time Amendment of Plaintiffs' Complaint as a Matter of Course" (Doc. No. 33) be GRANTED in part and DENIED in part as follows:

1.  The court RECOMMENDS that Plaintiffs' Motion to Amend be GRANTED, and that Plaintiffs' Proposed First Amended Complaint be accepted as filed, to the extent that it seeks to (1) remove claims premised on the following statutes: 18 U.S.C. §§ 241–242, 371, 1001, and 2234; and (2) assert claims for violations of the Fourth Amendment based on the January 11, 2010 search of the Park County Property.

2.  The court RECOMMENDS that Plaintiffs' "Opposed Motion for One Time Amendment of Plaintiffs' Complaint as a Matter of Course" be DENIED, and that Plaintiffs' proposed First Amended Complaint be rejected, to the extent that it seeks to assert (1) claims against Defendants in their official capacities and for municipal liability, (2) claims for violations of Plaintiffs' Eight Amendment rights, (3) claims for violations of Plaintiffs' Fifth Amendment rights against self-incrimination; (4) claims for violations of the Fifth Amendment's takings clause and the Fourteenth Amendment's due process clause; (5) claims for violations of the Fourth Amendment based on the December 15, 16, and 17, 2009, searches of

the Park County Property; (6) claims against proposed defendants Tighe, Hodges, and Dowaliby; and (7) claims against former defendants Suthers and McLimans.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate

47

review);  *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 30th day of August, 2012.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge