FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

MAR 2 7 2012

GREGORY C. LANGHAM
CLERK

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

|  |  |  |
|---|---|---|
|  | ) | FILED |
|  | ) | UNITED STATES DISTRICT COURT |
|  | ) | DENVER, COLORADO |
|  | ) | **Civil Action** |
| **Samuel M Walker, pro se** | ) | **Sep 24, 2012** |
| **Diane H Walker, pro se** | ) | **No**_____ |
|  | ) | GREGORY C. LANGHAM, CLERK |
| **Plaintiffs,** | ) |  |
|  | ) |  |
| **v.** | ) |  |
|  | ) |  |
| **Fred Wegener, individual and official capacity** | ) |  |
| **Bobbi Priestly, individual and official capacity** | ) |  |
| **Cindy Hardey, individual and official capacity** | ) |  |
| **Rebecca Bramlett, individual and official capacity** | ) |  |
| **Amy Franck, individual and official capacity** | ) |  |
| **Juan Gallegos, individual and official capacity** | ) |  |
| **Sgt Brown, individual and official capacity** | ) |  |
| **Park County** | ) |  |
| **John Tighe, individual and official capacity** | ) |  |
| **Dick Hodges, individually and official capacity** | ) |  |
| **Mark Dowaliby, individual and official capacity** | ) |  |
| **Park County Commissioners** | ) |  |
| **John Suthers, individual and official capacity** | ) |  |
| **Debra McLimans, individual and official capacity** | ) |  |
|  | ) |  |
| **Defendants** | ) |  |
|  | ) |  |

## PLAINTIFFS' FIRST AMENDED COMPLAINT

**Come the Plaintiffs, pro se, and for cause of action would state as follows:**

### I.    INTRODUCTION

This is a civil rights complaint for declaratory, injunctive, and other appropriate relief

brought by the Plaintiffs.  This action arises under the Fourth, Fifth, Eighth, and Fourteenth

Amendments to the United States Constitution; under federal law.  Specifically, 42 U.S.C.

Section 1983 and Section 1988; under Code of Federal Regulations, and under Colorado common law for willful and wanton conduct with intentional and/or negligent infliction of emotional distress, theft of property, negligence, negligent supervision, gross negligence, and civil conspiracy.

The individual Defendants, acting in the scope of their employment and under color of state law, conducted four separate unlawful search and seizure actions. The Defendants actions and callous indifference caused injury to the Plaintiffs with the unlawful taking of Plaintiffs property; the taking of property without just compensation, cruel and unusual punishment prior to a conviction, denied Due Process before the unlawful taking, used coercion through threat and intimidation under color of state law, and failed to provide the Miranda Warning.

Action is also brought against Park County for its failure to properly train and supervise the individual Defendants in the proper procedures and conduct to ensure individuals and citizen's constitutional rights are protected while Park County conducts their enforcement duties.

## II.      JURISDICTION AND VENUE

1. This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. Section 1331, 1343, and 1367, and venue is properly set in the United States District Court for the District of Colorado pursuant to 28 U.S.C. Section 1391 and 2201.

2. The causes of action alleged herein arise from factual allegations occurring in this judicial district.

3. On information and belief, it is alleged herein that each of the named Defendants resides in this judicial district.

4. Plaintiffs reside in this judicial district.

5. Actual and non-economic damages in controversy are in excess of $75,000.00 for each plaintiff.

6. Punitive damages in controversy are in excess of $75,000.00 for each plaintiff.

## III. PARTIES

### A. Plaintiffs

7. The Plaintiff, Samuel M Walker [Sam], is a citizen and resident of Teller County, Colorado and owned property in Park County where the violations occurred.

8. The Plaintiff, Diane H Walker, is a citizen and resident of Teller County, Colorado and owned property in Park County where the violations occurred.

### B. Defendants

9. County Sheriff Fred Wegener, employed by Park County, is a citizen of the State of Colorado, was at all times material to the allegations in this complaint, acting individually and in his capacity as County Sheriff, and was acting under color of state law.

11. Officer Bobbi Jo Priestly, employed by Park County, is a citizen of the State of Colorado, was at all times material to the allegations in this complaint, acting individually and in her capacity as Animal Control (ACO)/Code Enforcement Officer, and was acting under color of state law.

12. Officer Rebecca Bramlett, employed by Park County, is a citizen of the State of Colorado, was at all times material to the allegations in this complaint, acting individually and in her capacity as Animal Control (ACO)/Code Enforcement

Officer, and was acting under color of state law.

13. Officer Cindy Hardey, employed by Park County, is a citizen of the State of Colorado, was at all times material to the allegations in this complaint, acting individually and in her capacity as Animal Control (ACO)/Code Enforcement Officer, and was acting under color of state law.

14. Officer Amy Franck, employed by Park County, is a citizen of the State of Colorado, was at all times material to the allegations in this complaint, acting individually and in her capacity as Park County deputy, and was acting under color of state law.

15. Deputy Juan Gallegos, employed by Park County, is a citizen of the State of Colorado, was at all times material to the allegations in this complaint, acting individually and in his capacity as Park County deputy, and was acting under color of state law.

16. Sgt Brown, employed by Park County, is a citizen of the State of Colorado, was at all times material to the allegations in this complaint, acting individually and in his capacity as Park County deputy, and was acting under color of state law.

17. John Tighe, Park County Commissioner for District 1, employed by Park County, is a citizen of the State of Colorado, is at all times material to the allegations in this complaint, acting individually and in his official capacity in the governing body of Park County, and was acting under color of state law.

18. Dick Hodges, Park County Commissioner for District 2, employed by Park County, is a citizen of the State of Colorado, is at all times material to the allegations in this complaint, acting individually and in his official capacity in the

governing body of Park County, and was acting under color of state law.

19. Mark Dowaliby, Park County Commissioner for District 3, employed by Park County, is a citizen of the State of Colorado, is at all times material to the allegations in this complaint, acting individually and in his official capacity in the governing body of Park County, and was acting under color of state law.

20. John W Suthers, Attorney General, employed by State of Colorado, is a citizen of the State of Colorado, is at all times material to the allegations in this complaint, acting in his capacity as the state legal authority, acting under color of state law.

21. Debra L McLimans, Park County Combined Court Clerk, employed by Park County, is a citizen of the State of Colorado, was at all times material to the allegations in this complaint, acting individually and in her capacity as Park County Combined Court Clerk, and was acting under color of state law.

## IV.   FACTUAL BACKGROUND

22. Samuel M Walker [Sam] and Diane H Walker [Diane], collectively as "the Walkers", are residents of Teller County Colorado and owned property in Park County Colorado.

23. In the years preceding December 15, 2009, Sam and Diane Walker raised, trained, and occasionally bred sled dogs at 6000 FS 108, a 160 acre ranch near the town of Hartsel in Park County Colorado.

24. The Walkers, since 2000, have maintained PACFA licensing through the State of Colorado, Department of Agriculture.

25. The Walkers also purchased Individual dog license tags each year for the years

2005 through 2009 complying with Park County dog licensing regulations.

26. Park County Animal Control Officers have been to the Walker's property on several occasions and were very familiar with the location and facilities.

27. At the Hartsel property, the Walkers have a ½ mile long gated driveway from FS 107/FS 108, a recreational vehicle (RV), and a completely fenced in area for operating their licensed dog kennel. The Walkers kennel was known to be well within the property and not visible from any boundary point.

28. Within the fenced kennel area there was also an 8ft x 15ft steel shipping container for use as a warming hut, storage of all dog food, hardware, and equipment, and office/break area for kennel operations and caretakers.

29. This warming hut was also used to heat water to support winter feeding activities where hot water was mixed into the dog food for better dog hydration.

30. The Walkers routinely leased sled dogs to Good Times Sled Dog Adventures in Breckenridge over the previous 4 years and for 2009-2010 winter sled dog season, 8 experienced sled dogs were again leased to them. Good Times picked up the 8 dogs in November 2009.

31. The Walkers loaned 6 dogs for the 2009-2010 winter sled dog season to fellow mushers Mark and Debra Su Stephens, who with Sam's help, moved into the Hartsel area in August 2008.

32. The Walkers knew of the Stephens since 2000, through the local sled dog clubs and also helped them move into the area using the our services and equipment, trucks, and heavy duty trailers in August 2008. Sam spent two full weekends driving back and forth from Conifer to Hartsel using $200.00 in diesel fuel

helping the Stephens get their sled dog kennel established. In return, Sam received 6 cans of spray paint as a thanks for his help.

33. Through the Stephens, Sam met Brian Whelan, in October 2009. Whelan was interested in getting into mushing and wanted to start a dog team. Since the Walkers had several older, experienced dogs and Whelan was interested in trading help in the kennel for the dogs, it seemed to be a workable situation. Sam then through the barter system, made a verbal agreement with Whelan for kennel help.

34. Sam agreed to sell four dogs to Whelan valued at $400.00, via barter to be worked off doing projects within the kennel starting in November 2009.

35. In late November 2008, Sam was notified that he had to be in California for work. He would be in CA from 14 December through 19 December 2009.

36. Sam contacted the Stephens and Whelan the prior week of his departure.

37. Whelan reluctantly agreed to caretake at the kennel to work off the $400.00 debt for the four dogs in December 2009 while Sam was out of town.

38. This caretaker stated to Park County ACOs that he had the dogs but never expected to hear from the Walkers again and was very surprised that Sam called him, so he reluctantly agreed to care for the dogs to pay off his debt after Sam called.

39. Sam had verbal contracts with the Stephens and Whelan for the period of 14 through 19 December 2009 to feed, water and straw the dogs.

40. Since Sam Walker was required in California on the eve of December 13, 2009, the caretakers agreed to care for the dogs at the Walker kennel on alternating days starting on December 14 through December 19, 2009 (Stephens on Monday 14th,

Whalen on Tues 15th, etc through Saturday, the 19th).

41. All Caretakers understood the dogs at the kennel required daily feeding, watering, and straw for each dog.

42. Both caretakers were advised that water had to be hauled in for the dogs .

43. Through experience, Sam routinely hauled in a minimum of 120 gallons daily during the winter as part of kennel operations and left 20 individual 6 gal containers at the kennel for caretaker use.

44. Sam purchased 1050 lbs (21 bags-one full pallet) of dog food on December 12, 2009.

45. Sam early Sunday morning 13 December 2009, added approximately 600 lbs (12 bags) to what was already stored in the warming hut, making the total dog food on the property 1000 lbs of dog food for caretaker use between December 14 through December 19, 2009.

46. The remaining 9 bags were returned to the Walker Teller County residence.

47. Sam ensured the Warming Shed was fully stocked with dog food for care taker use during his absence.

48. Sam ensured the full dog food bags were emptied into three large Tupperware bins, which contained 200 lbs each (600lbs total) and 10 individual 5 gallon buckets with lids which held approx 20 lbs each (200lbs total) and left 4-50lb bags unopened (200lbs total).  The 5 gal buckets were used initially to start the feeding of the kennel.

49. Sam purchased locally 6 additional straw bails and left the straw at the kennel for caretaker use to straw the dogs during Sam's absence.

50. Sam ensured ample food and straw was available at the kennel.  The caretakers were advised to haul water, and were provided emergency numbers for both Diane in Florissant, CO and Sam in California to the caretakers. Both the Stephens and Whelan needed to haul enough water (120gals) to the kennel, feed, and straw the dogs in the kennel and notify Sam or Diane of any problems.

51. On Monday, December 14, 2009, Debra Su Stephens arrived at the kennel with approximately 20 gallons of water, fed with two thirds of the normal ration for each dog, and provided a minimum of water to some dogs due to being 100 gal short of the required amount.

52. , Brian Whelan, arrived on the morning of Tuesday 15 December 2009 with the same 20 gal of water, fed and provided a minimum of water, still 100 gal short, to some of the dogs, gave straw to some of the dogs, and as stated in his interview with ACO's on 21 December 2009, was upset that he had to straw the dogs and he was running late to take his wife shopping.

53. On December 15, 2009 at approximately 1:03pm Sgt Bobbi Priestly received a call from a woman from the Humane Society of the United States, who reported having received a complaint regarding the condition of dogs located at the Walker property.

54. Nothing in Sgt. Priestly's report suggests that Priestly had any prior knowledge of the anonymous caller or his veracity.

55. Sgt. Priestly stopped by the Park County Sheriff's Office, and summoned three other law enforcement officers.

56. Together, all officers, Sheriff Fred Wegener, ACO Cindy Hardey, ACO Rebecca

Bramlett, and ACO Priestly, responded to the Walker property at approximately 315pm, about 2 hours following Sgt. Priestly's call with the anonymous caller.

57. Before going to the Walker's property on 15 December 2009, the officers did not seek, nor did they possess a search warrant.

58. ACOs Bobby Priestly and Cindy Hardey had been to the Walker Kennel prior to December 15, 2009, and were aware of the location of the kennel

59. At the property, the officers entered into the gated driveway. Drove up the 1 ½ mile driveway subsequently entering into the enclosed sections of the property where the kennel of dogs was located.

60. Corporal Hardey grabbed the camera from her patrol vehicle and began taking pictures of the dogs and property.

61. ACO Bramlett stated she made a map of where each dog was located by position within the kennel

62. Bramlett's map failed to identify all the dogs at all locations in the kennel.

63. Some dogs were scored using the Henneke body scoring for horses.

64. Later that day, the officers seized two of the approximately 100 dogs at the property.

65. Later that day, Corporal Hardey authored a search warrant, which was signed on the morning of December 16, 2009.

66. The averments contained in the search warrant were almost entirely comprised of information obtained during the warrantless entry onto the Walkers property on December 15, 2009.

67. ACOs Priestly and Hardey knew prior to December 15, 2009 that to access the

Walker kennel to actually see the dogs they would have to go through two posted gates then proceed up a half mile drive way to a third gate at the fenced kennel area on the property.

68. Tuesday, December 15, 2009, ACO Priestly had ample time to obtain a search warrant.

69. Priestly and other officers decided to conduct a search on December 15, 2009 without a search warrant.

70. The Walker property was fenced, gated, and posted with No Trespassing signs at the entry point.

71. All Sheriffs officials entered the fenced, gated, and posted property despite the posting and no search warrant.

72. No probable cause existed and no exigent circumstances existed to perform a warrantless search on December 15, 2009.

73. Debra Su Stephens fed and watered on Monday December 14, 2009 and no calls were made to Diane Walker of any problems at the kennel.

74. Sheriff Fred Wegener is responsible and establishes the standard of conduct for all officials within the Sheriff's Department.

75. Wegener is responsible for the proper training of all members of his staff.

76. Wegener is responsible for the proper training of all ACOs within the Animal Control/Code Enforcement section.

77. No standard scoring system was used to assess the health of the dogs.

78. ACOs assessed some dogs using the Henneke Body Scoring System developed specifically for horses.

79. The horse scoring system rates the body condition of a horse on a scale from 1 to 9 not the health of the animal.

80. Several veterinarians and laboratories rated our dogs on a scale from 1-5.

81. The ACOs noted and took pictures of dogs, empty water buckets, and no food at each dog location, even though Debra Su Stephens watered and fed on Monday December 14, 2009 and Whalen allegedly fed and watered that day, December 15, 2009.

82. ACO Priestly seized two dogs without a warrant on December 15, 2009.

83. ACO Priestly removed property without a warrant and failed to provide the Walkers notice of the seizure on December 15, 2009.

84. ACO Priestly failed to notify the Walkers that these two dogs were seized so the Walkers could have the opportunity to bond IAW 18-9-202.5 CRS.

85. These officials failed to secure the Walker property as they departed.

86. The state veterinarian, Dr Kate Anderson and her staff within the Dept of Agriculture was called to conduct a kennel assessment of each dog for consistency.

87. Dr Anderson assessed the dogs health using the Henneke Body Scoring System designed for horse's body condition not health.

88. ACO Priestly determined that 30 dogs would be seized and removed from the Walker property on December 16, 2009.

89. Unsupervised volunteers moved about the Walker property removing Walker personal property at their leisure.

90. ACOs failed to protect and secure Walker property under the authority of the

court approved search warrant.

91. ACOs failed to maintain chain of custody of any and all evidence obtained under the authority of the search warrant.

92. ACOs failed to inventory/document the seized dogs as they were removed from the property.

93. Officials failed to link through documentation each dog being seized with their respective destination.

94. On December 16, 2009, law enforcement officers entered the property pursuant to a search warrant.

95. Once Diane arrived at the kennel, Officer Juan Gallegos served her with the search warrant.

96. Officer Gallegos then shadowed Diane with threats and intimidation everywhere she went on the property keeping his hand very near to his weapon the entire day, "keeping the peace" the entire day on December 16.

97. Diane considered herself in custody of the officer that served her.

98. Diane was not free to go anywhere on the Walker property or off the property without a Park County official noting everything she said or did.

99. Officer Gallegos did not provide a Miranda warning at any time while he was "keeping the peace" the entire day keeping Diane within arm's reach and in custody.

100.     During the search conducted December 16, 2009, Diane Walker was asked numerous questions throughout the entire day, yet neither Sgt Priestly or any other officers provided her a Miranda Warning at anytime during the day on

December 16, 2009.

101.     Statements made by Diane Walker were used against her in official reports.

102.     Sam Walker was never provided a Miranda Warning by Priestly during phone call conversations on December 16, 2009.

103.     Numerous officers questioned both Walkers and listened in on phone conversations between Sam and Diane which resulted in comments made by the Walkers being used against them in official reports.

104.     During the search on December 16, 2009, Sgt. Priestly sought permission from Diane to return to the property the next day –December 17, 2009 to continue their search and to seize the remaining dogs.

105.     Consent was sought by Diane by means of coercion and duress.

106.     On December 16, 2009, Priestly stated all dogs taken would require approximately $640/month bond per dog in accordance with an amount determined by Park County.

107.     Colorado statute 18-9-202.5 CRS defines bonding and process details.

108.     Priestly seized 2 dogs on December 15, 2009 during the warrantless search and seizure.

109.     Priestly did not provide the Walkers notice of property (dogs) seized December 15.

110.     Priestly seized 30 dogs on Wednesday, December 16, 2009.

111.     The state veterinarian, Dr Kate Anderson, stated the 70 remaining dogs did not need to be removed since they were not in immediate danger.

112.    ACO Priestly insisted all dogs were to be removed because Park County

did not have enough manpower to care for the remaining dogs at the kennel.

113.    ACO Priestly insisted that the remaining 70 healthy dogs be removed

stating that "she did not have the manpower to come out to the property to ensure

the dogs were cared for"

114.    Sgt Priestly stated this knowing that the Stephens were still available to

care for the dogs.

115.    Sgt Priestly also knew that Sam Walker would be returning on 19

December 2009.

116.    ACO Priestly added pressure demanding that the dogs be bonded

immediately or release them to the county stating, "it would go easier for you",

insisting Diane sign the release of our dogs.

117.    Officer Gallegos continued to threaten and intimidate Diane with his hand

near his weapon, "keeping the peace" within arm's length.

118.    Sgt. Priestly, through pressure and intimidation, stated bonding for all 100

dogs would be approximately $60,000/month per the bonding statute with no

assurance that any of the animals would ever be returned.

119.    The decision for bonding was demanded immediately that day adding

additional pressure and emotional distress on Diane.

120.    Diane signed the release under duress, due to the threats, intimidation, and

coercion conducted under color of state law.

121.    In the middle of all the turmoil and confusion Sgt Priestly also on

numerous occasions told Diane she better get an attorney.

122.     Priestly quickly coerced her into signing a form to allow officials to use the same search warrant to return on Thursday, December 17, to seize the remaining 70 healthy dogs while still in the custody of Officer Juan Gallegos.

123.     Throughout the entire ordeal, it was known to the ACOs that Sam Walker was to return on December 19, 2009, but Priestly hastily cleared the property of all animals prior to his return.

124.     The ACOs failed to secure the Walker property prior to their departure on December 16, 2009.

125.     Priestly failed to obtain a new search and seizure warrant for December 17, 2009.

126.     Priestly and Gallegos unlawfully coerced Diane Walker to provide permission to return to the property for December 17, 2009.

127.     Priestly conducted an unlawful warrantless search on December 17, 2009.

128.     On Thursday, December 17, 2009, Park County officials and other government officials and civilian volunteers trespassed onto the Walker property under authority of Park County Sheriffs officials.

129.     ACOs and Officer Gallegos allowed the Channel 9 news truck to trespass onto the Walker property, move about the property unsupervised, and to incite the local community.

130.     ACOs instructed all volunteers on December 16, 2009 to not enter the property prior to ACO arrival on December 17, 2009.

131.     When the ACOs arrived to the Walker property on December 17, 2009, they found that the caretakers broke the crime scene tape and entered onto the

property disregarding ACO instructions to not enter the Walker property until ACO arrival.

132.     ACOs allowed the caretakers and others to continue to move about the property unsupervised.

133.     Unsupervised, the Stephens and Whalen, took dogs, dog food, equipment and other personal property from the Walkers property.

134.     Unsupervised, the caretakers loaded numerous dogs and personal property without accountability by Park County officials.

135.     ACOs failed to search the caretakers for personal property taken from the Walker property on December 17, 2009..

136.     ACOs failed to account for each dog taken by the caretakers and others on December 17, 2009.

137.     ACOs and officials failed to inspect any vehicle prior to entry on to the Walker property nor on exit from the Walker property on any day for Walker personal property removed from the Walker property.

138.     Officer Franck stated she inventoried each vehicle at the Walkers.

139.     Officer Franck's actual conduct was inconsistent with her report.

140.     Park County officials are trained to write a draft report on what happened, then compare the report to the procedural handbook, then ensure the official report reflects procedural correctness by adjusting the draft.

141.     ACO Hardey documented she seized 2 bags, 80 pounds (understated amount) of dog food, when the two bags, were each sealed 50 pound bags for a total of 100 pounds actually seized.

142.     ACO Hardey seized Walker property without just compensation.

143.     ACO Hardey documented she seized 11 bags of shavings

144.     ACO Hardey failed to document hardware, equipment, and dog food taken by officials and others when the property was under ACO control.

145.     Park County Sheriffs officials condoned the theft of Walker personal property.

146.     ACOs determined the dogs within the kennel did not have water nor apparent food at each location on December 15, 2009.

147.     ACOs failed to charge caretakers Stephens or Whalen for failure to feed or water or provide protection for the dogs IAW 18-9-202(1)(a).

148.     ACO Priestly was notified by the Walkers on her cell phone on December 20, 2009, of specific items taken from the property.

149.     ACOs failed to inventory the dog food stored in the warming shed on their initial warrantless search on December 15, 2009.

150.     ACOs failed to inventory the dog food stored in the warming shed on any day following December 15, 2009.

151.     The Walkers ensured 1000 pounds of dog food was in the storage container on December 13, 2009.

152.     The caretakers used approximately 300 lbs December 14-16, 2009.

153.     ACO Hardey documented 80lbs taken but understated the amount by 20 lbs (marked 50lb dog food bags totaling 100lbs) with 100lbs seized..

154.     Caretakers stated they took at least 100 lbs each (200lbs) while the Walker property was under the authority of the Park County officials under color of state

law.

155.      Numerous five gallon buckets with lids used to store and feed the dogs in the kennel were taken while the Walker property was under the control of Park County officials.

156.      ACOs failed to document the 400 pounds of dog food taken during the raid.

157.      ACOs used extensive overtime to reconcile seized dogs with their whereabouts between December 18 and December 30, 2009.

158.      ACOs created a separate inventory sheet if they forgot the gender of a dog.

159.      ACOs Priestly and Bramlett, together, conducted and recorded physical interviews of caretakers Stephens and Whalen at the Park County Sheriff's office December 21, 2009.

160.      ACOs confirmed during the interview process that the caretakers had taken Walker personal property while the property was under the authority of the ACOs.

161.      The sheriff's department failed to search each caretaker property for other stolen Walker personal property.

162.      When the Walkers called the Sheriff's office to file a stolen property report, but Sgt Brown refused to take a report over the phone and challenged us, doubting anything had been taken.

163.      Sgt Brown condoned the theft of Walker personal property even though the Walkers list of stolen items did not match the items returned except the number of spray paint cans returned by the Stephens.

164.    Several letters of communication between the DDA and Walker's attorneys addressed the issue of stolen property identified and not returned but the Sheriff's department was non-responsive.

165.    A caretaker allegedly returned one bag of dog food to the ACOs, but kept the other for personal use.

166.    The ACOs failed to return the dog food to the Walkers.

167.    The ACOs unlawfully seized the dog food returned by Whalen.

168.    ACOs rushed to issue arrest warrants for Sam and Diane Walker before Christmas day.

169.    ACOs insisted the arrests be completed by Christmas yet they issued the arrest warrant for Diane Elaine Walker on the 22nd in error and had to redo the warrant with the court requiring extensive overtime to correct.

170.    Their error was corrected on December 24, 2009, even though it was recommended to delay the arrests until December 28, 2009.

171.    Extensive officer overtime was used to correct their hasty mistakes.

172.    The Walkers designated a specific area in the north east corner of the kennel area as a grave yard for burial of dogs

173.    For each dog that died from natural causes or euthanasia consistent with law, the Walkers buried each dog facing east and placed sage over there face in celebration of their life as demonstrated in some Native American cultures.

174.    ACOs did not remove 5 deceased dogs during the December raid.

175.    ACO Priestly justified an additional search/seizure warrant to pick up the 5 dead dogs but brought a backhoe out to dig up the entire dog grave yard on a

witch hunt on Jan 11, 2010 based on additional unreliable information from caretaker Debra Su Stephens.

176.     Caretaker Stephens made false statements to ACOs Priestly and Bramlett as to the estimated number of dead dogs buried in the grave yard.

177.     The ACOs were looking for more than 100 dogs dead and buried.

178.     ACOs only found 35 dogs in the process of desecrating the grave yard and creating a biohazard and hazard to local endangered animals.

179.     These dogs died from natural causes or were euthanized consistent with law over the previous 5 years.

180.     ACO Bramlett stated they found the number of dead dogs specified on the warrant on the surface, which was where they left them in December.

181.     The backhoe from Road and Bridge was never required to support the search warrant to remove dead dogs from the property.

182.     ACO Priestly submitted a fictitious document with Road & Bridge letterhead but there was no indication R&B ever saw the document and it was used as cost documentation to support a Restitution cost assessment for the court.

183.     No required victim impact statement was provided by Road and Bridge.

184.     As each dog was dug up they were removed from the bags they were buried in.

185.     Several of these dogs had been euthanized and were mixed up with the dogs that died of natural causes.

186.     ACO Priestly failed to ensure all animals dug up in the grave yard were buried properly.

187.    ACO Priestly had knowledge of the proper burial of euthanized animals as a former vet tech working for Dr Wright in Park County Lake George area.

188.    ACO Priestly left remains of euthanized dogs on the surface of the grave yard contaminating the environment as a bio-hazard.

189.    ACO Priestly left remains of euthanized dogs on the surface of the grave yard creating a serious threat to local endangered species.

190.    As the supervising ACO, Priestly failed to bury euthanized dogs properly exposing the environment to a bio-hazard and created a grave danger to local endangered animals violating numerous Federal laws.

191.    The ACOs exceeded the scope of the warrant.

192.    The ACOs failed to notify the Walkers of this second warrant.

193.    ACO Bramlett provided false information in a warrant affidavit to get access to the Walker's Sam's Club dog food purchase history.

194.    ACOs failed to maintain control of the Walker property by treating the Raid as a Rescue Operation instead of a crime scene.

195.    Walker dog license file review would reveal the same information.

196.    The Park County Court Clerk, Debra McLimans, has the administrative duty to monitor and timely update the county Restitution balances.

197.    The Park County Combined Court Clerk is required to timely certify Restitution balances at the court of record for Defendants.

198.    Park County Combined Court Clerk, McLimans, failed to ensure the Walker's Restitution balance was correct throughout the life of the balance.

199.    McLimans failed to provide notice in March 2011 to Plaintiff, Sam

Walker, prior to seizure of his portion of the 2010 state tax refund filed jointly.

200.  McLimans unlawfully applied Sam Walker's portion of the joint tax refund in March 2011 to the Plaintiff Diane Walker Restitution balance prior to any restitution ordered by the court to Plaintiff Sam Walker.

201.  The Restitution balance was ordered 'joint and several' on June 28, 20211.

202.  The Restitution balance was paid to zero on August 4, 2011.

203.  Casino's unlawfully seized Sam Walker property (winnings) based upon incorrect balances reflected in the system in late September 2011.

204.  The Restitution balance was zero but the system reported greater than zero.

205.  The court clerk, McLimans, failed to certify a zero balance in August 2011.

206.  The state Attorney General, John Suthers, has a duty to ensure state statutes are constitutionally compliant.

207.  The state Attorney General, John Suthers, failed to ensure the animal cruelty statute, 18-9-202 CRS, was constitutionally compliant.

208.  The animal seizure provision of 18-9-202 CRS is defective because it is void of a 'notice of seizure and hearing' requirement to the owner of the property.

209.  The state Attorney General failed to ensure the financial bonding statute, 18-9-202.5 CRS, was constitutionally compliant.

210.  The bonding statute is defective because notice is dependent upon the 'citizen' property owner providing 'notice' to the government instead of the notice requirement TO the citizen FROM the government (the notice and hearing

requirement by county officials).

211.    The bonding statute is defective because it is designed to coerce through intimidation bonding of an animal prior to a finding of guilt.

212.    The state Attorney General failed to ensure the numerous intercept statutes (restitution, tax refunds, gambling winnings, etc) xxxxxx CRS, were consistent , linked and constitutionally compliant.

## V.    CLAIMS

### COUNT 1.......12/15 search

### Violation of U.S.C. Title 42, Section 1983
### (all defendants)

213.    Plaintiffs incorporate each and every allegation set forth in paragraphs 1-212, as if set forth herein.

214.    Plaintiffs are all "citizens" under the authority of 42 USC Section 1983.

215.    Defendants are "persons" within the meaning of this section and its jurisdictional counterparts.

216.    On December 15, 2009, Defendants, Wegener, Priestly, Hardey, Bramlett, acted with willful and wanton conduct in concert and/or conspired together and committed acts designed to deprive Plaintiffs' Sam and Diane Walker of their property which was seized without Due Process (no Notice, No hearing) during an unlawful warrantless search and with deliberate indifference and callous disregard deprived the Walkers their right to Procedural and Substantive Due Process in violation of the Fourth (search & seizure), Fifth (no due process, unlawful taking), and Fourteenth Amendments (no due process) of the US Constitution.

217.    Two dogs were seized IAW 18-9-202 and one was placed within 5 days of seizure without due process.

218.    Animal inventory sheets were created "after-the-fact" when gender was unknown.

219.    Procedures executed were not in accordance with the approved county resolution for Animal Control execution but Defendants Priestly, Hardey, Bramlett operate IAW

unwritten policies established by Sheriff Wegener.

220.    During the commission of the above unlawful acts, these defendants were

operating under color of Colorado law. The actions described above constitute a

violation of 42 U.S.C. Section 1983.

221.    As a direct and proximate result of these violations of Plaintiffs' 42 U.S.C.

Section 1983 Civil Rights, Plaintiffs incurred legal expenses and suffered great

personal injury, including severe mental anguish, emotional distress, loss of property

and business interests and personal reputations.


### COUNT II............12/16 search

### Violation of U.S.C. Title 42, Section 1983
### (all defendants)

222.    Plaintiffs incorporate each and every allegation set forth in paragraphs 1-221, as if

set forth herein.

223.    Plaintiffs are all "citizens" under the authority of 42 USC Section 1983.

224.    Defendants are "persons" within the meaning of this section and its jurisdictional

counterparts.

225.    On December 16, 2009, Defendants, Priestly, Hardey, Bramlett, Franck, Gallegos,

all acted with willful and wanton conduct in concert and/or conspired together and

committed acts designed to accomplish unreasonable searches and seizures at the

property of Plaintiffs, Sam and Diane Walker, in violation of Plaintiffs right to be free

from unreasonable searches and seizures in violation of the Fourth Amendment of the

United States Constitution.

226.    Defendants acted in concert to provide an affidavit with information unlawfully

obtained directly from a warrantless search on December 15, 2009.

227.    These officials then seized 30 dogs without due process.

228.    These officials with callous disregard and deliberate indifference for her emotional state, demanded Diane Walker bond all the dogs in the kennel for $60,000.00 per month because they were all to be seized creating an unlawful excessive bail (bonding) with a direct result of cruel and unusual punishment prior to a conviction.

229.    These officials threatened and intimidated Diane Walker (violated 4th Amend-seizure, 5th & 14th Amend-due process, 8th Amend-excessive bail/fees & cruel and unusual punishment), coercing her to sign ownership of our property, the dogs, over to the county without due process.

230.    These same Park County officials allowed volunteers and caretakers to unlawfully take Walker personal property while under the control of the warrant (the officials).

231.    These same officials failed to advise Plaintiffs of their rights via the Miranda Warning PRIOR to Diane's open field interrogation while still in the custody of Officer Gallegos and statements Plaintiff's statements against them in official reports in direct violation and with callous disregard and deliberate indifference of Plaintiff's Fifth Amendment rights.

232.    These same officials, so anxious to get public exposure to this alleged horrific scene, failed to provide the very things the Plaintiffs' were charged with and the caretakers failed in their duty, were in violation of 35-42-108 CRS, Care of Confined Animal.

233.    During the commission of the above unlawful acts, these defendants were

operating under color of Colorado law. The actions described above constitute a violation of 42 U.S.C. Section 1983, Fourth, Fifth, Eighth, and Fourteenth Amendments of the U.S. Constitution.

234.    As a direct and proximate result of these violations of Plaintiffs' 42 U.S.C. Section 1983 Civil Rights, Plaintiffs incurred legal expenses and suffered great personal injury, including severe mental anguish, emotional distress, and loss of property and business interests and reputation.

## COUNT III........12/17 SEARCH

### Violation of U.S.C. Title 42, Section 1983
### (all defendants)

235.    Plaintiffs incorporate each and every allegation set forth in paragraphs 1-234, as if set forth herein.

236.    Plaintiffs are all "citizens" under the authority of 42 USC Section 1983.

237.    Defendants are "persons" within the meaning of this section and its jurisdictional counterparts.

238.    On December 17, 2009, Defendants, Priestly, Hardey, Bramlett, Franck, all acted with willful and wanton conduct in concert and/or conspired together and committed acts designed to accomplish unreasonable searches and seizures at the property of Plaintiffs, Sam and Diane Walker, in violation of Plaintiffs right to be free from unreasonable searches and seizures in violation of the Fourth Amendment of the United States Constitution.

239.    Diane Walker was unlawfully coerced through threats and intimidation to sign a form on December 16, 2009 which transferred Walker ownership of our dogs to the

county and allowed these officials and others to return on December 17, 2009 to seize the remaining healthy animals.

240. This coerced permission is a violation of the 5th Amendment for self-incrimination and a taking without just compensation and a violation of the 5th and 14th for denial of due process.

241. Defendants conspired and acted in concert conducting an unlawful warrantless search and subsequent unlawful seizure of all the remaining healthy dogs from the property, seizure of dog food, hardware and equipment without just compensation or due process with callous disregard and deliberate indifference for Plaintiff's Constitutional Rights.

242. Defendants conspired and acted with willful and wanton conduct with deliberate indifference and in concert and failed to protect and secure Walker property, allowed the crime scene to be compromised by volunteers, omitted, mis-stated or falsified events reflected in official reports and representations, and facilitated the transfer and conversion of Walker personal property with callous disregard for Plaintiffs Constitutional rights.

243. During the commission of the above unlawful acts, these defendants were operating under color of Colorado law. The actions described above constitute a violation of 42 U.S.C. Section 1983, Fourth, Fifth, and Fourteenth Amendments of the U.S. Constitution.

244. As a direct and proximate result of these violations of Plaintiffs' 42 U.S.C. Section 1983 Civil Rights, Plaintiffs incurred legal expenses and suffered great personal injury, including severe mental anguish, emotional distress, and loss of

property and business interests and personal reputations.

## COUNT IV....1/11 SEARCH

### Violation of U.S.C. Title 42, Section 1983
### (all defendants)

245.    Plaintiffs incorporate each and every allegation set forth in paragraphs 1-244, as if

set forth herein.

246.    Plaintiffs are all "citizens" under the authority of 42 USC Section 1983.

247.    Defendants are "persons" within the meaning of this section and its jurisdictional

counterparts

248.    On January 11, 2010, Defendants, Priestly, Hardey, Bramlett, all acted in concert

and/or conspired together and committed acts designed to accomplish unreasonable

searches and seizures at the property of Plaintiffs, Sam and Diane Walker, in

violation of Plaintiffs right to be free from unreasonable searches and seizures in

violation of the Fourth Amendment of the United States Constitution.

249.    Defendants acted with willful and wanton conduct with deliberate indifference

and in concert and conspired to willfully exceed the authority and scope of the court

approved search and seizure warrant with unnecessary severity.  The ACOs found the

deceased dogs specifically described by the warrant on the surface, but as a result of

false testimony by witness Stephens, the ACOs went on a "witch hunt" and continued

to dig up the entire grave yard to search for more dogs not declared in the warrant.

They desecrated the grave yard which was hallowed ground, and created a biohazard

to the environment, an extreme hazard to local endangered animals, and a direct

violation of Federal environmental statutes.  These actions with callous disregard and deliberate indifference, directly violated the Fourth Amendment of the U.S. Constitution.

250.   During the commission of the above unlawful acts, these defendants (Priestly, Hardey, Bramlett)  were operating under color of Colorado law. The actions described above constitute a violation of 42 U.S.C. Section 1983 as an illegal search violating the 4th amendment..

251.   As a direct and proximate result of these violations of Plaintiffs' 42 U.S.C. Section 1983 Civil Rights, Plaintiffs incurred legal expenses and suffered great personal injury, including severe mental anguish, emotional distress, and loss of property and business interests and personal reputations.


### COUNT V......Bonding

### Violation USC Title 42 Section 1983
### (all defendants)

252.   Plaintiffs incorporate each and every allegation set forth in paragraphs 1-251, as if set forth herein.

253.   Plaintiffs are all "citizens" under the authority of 42 USC Section 1983.

254.   Defendants are "persons" within the meaning of this section and its jurisdictional counterparts

255.   On December 15, December 16, December 17, 2009, Defendants, Wegener, Priestly, Hardey, Bramlett, all acted with willful and wanton conduct in concert and/or conspired together and committed acts designed to accomplish unreasonable searches and seizures at the property of Plaintiffs, Sam and Diane Walker, in

violation of Plaintiffs right to be free from unreasonable: searches and seizures in violation of the Fourth Amendment; excessive bail or fees resulting in cruel and unusual punishment in violation of the Eighth Amendment; and coercion and intimidation to turn over personal property to law enforcement which violates the Fifth Amendment of the United States Constitution.

256.   Defendants (Wegener, Priestly, Hardey, Bramlett) acted willfully and knowingly and with deliberate indifference and in concert and conspired through threats and intimidation when demanding bonding of all dogs or ownership be transferred to the county.  This situation created an unlawful taking of property without Due Process (5th violation) and excessive bail (bonding) and excessive fines resulting in Cruel and Unusual Punishment (8th violation) prior to a conviction.  These Defendants also made numerous materially false and fictitious statements in writing, and concealed material facts.  These unlawful acts constitute a violation of 42 U.S.C. Section 1983 and the Fourth, Fifth, Eighth, and Fourteenth Amendments of the U.S. Constitution.

257.   Plaintiffs also allege that the Colorado statutes 18-9-202 CRS and 18-9-202.5 CRS are defective and unconstitutional.  First:  These two statutes are integral to each other yet they are not linked.  The seizure statute, 18-9-202, fails to provide any due process for notice and hearings for the citizen, and the bonding statute, 18-9-202.5, requires the owner to provide notice to the agency instead of the reverse as required by Due Process demanded by the US Constitution.  Second:  The bonding statute, 18-9-202.5, which requires a "seizure bond" is illegal and unconstitutional because it constitutes an unlawful taking of personal property, an excessive bail (bond) with the direct result of cruel and unusual punishment.  These unlawful acts constitute a

violation of 42 U.S.C. Section 1983 and the Fourth, Fifth, Eighth, and Fourteenth Amendments of the U.S. Constitution.

258.    During the commission of the above unlawful acts, these defendants were operating under color of Colorado law. The actions described above constitute a violation of 42 U.S.C. Section 1983.

259.    As a direct and proximate result of these violations of Plaintiffs' 42 U.S.C. Section 1983 Civil Rights, Plaintiffs incurred legal expenses and suffered great personal injury, including severe mental anguish, emotional distress, and loss of property and business interests and personal reputations.


**COUNT VI**....Policies, Customs, and Practices

**Violation of Civil Rights Pursuant to Title 42 U.S.C Section 1983**
**(all defendants)**

260.    Plaintiffs incorporate each and every allegation set forth in paragraphs 1-259, as if set forth herein.

261.    Plaintiffs are all "citizens" under the authority of 42 U.S.C. Section 1983.

262.    Defendants are "persons" within the meaning of this section and its jurisdictional counterparts.

263.    Defendant Fred Wegener, in his capacity as County Sheriff of Park County, Colorado with deliberate indifference and willful and wanton conduct, implicitly adopted and implemented, and participated in careless and reckless policies, customs, or practices, that included, among other things, of allowing employees of the Park County Sheriff's department to conduct warrantless searches and seizures without

training to ensure protection of Constitutional Rights of citizens while conducting their enforcement duties.

264.    Defendant Fred Wegener, in his capacity as County Sheriff of Park County, Colorado implicitly adopted and implemented careless and reckless policies, customs, or practices allowing his employees to act with willful and wanton conduct, that included, among other things, of allowing employees of the Park County Sheriff's department to conduct searches and seizures of property without just compensation, conduct criminal investigations without established processes and procedures for property control, evidence tracking, and protection of personal property, and allowing officers to threaten, intimidate, and coerce to get around or avoid rights and privileges guaranteed by the US Constitution. Defendants are trained to ensure their report drafts are consistent with their officer procedural manual and to adjust the report if their conduct is inconsistent with the manual. Numerous reports and affidavits did not reflect what was said or done accurately at the Walker property. Mis-statements, omissions, and false statements and representations run rampant. The above actions directly infringe on Plaintiffs' rights guaranteed under the Fourth, Fifth, Eighth, and Fourteenth Amendments to the Constitution of the United States.

265.    The failure of the Park County Sheriff, Fred Wegener, and the County of Park County, to adequately train and supervise the Defendants Priestly, Hardey, Bramlett, Brown, Franck, and Gallegos amount to a callous and deliberate indifference to the rights of the Walkers to be free from unreasonable searches, seizures, denial of due process, demanding excessive bail (bond) which directly causes cruel and unusual punishment, and taking without just compensation, and protection from self

incrimination guaranteed under the Fourth, Fifth, Eighth, and Fourteenth Amendments to the Constitution of the United States.

266.    As a result of this callous and deliberate indifference to the Walkers' rights and Defendants willful and wanton conduct, the Walkers suffered personal injuries and lost the companionship and value of their sled dogs and are entitled to relief under 42 U.S.C. Section 1983.

267.    The Board of County Commissioners, which include John Tighe, Dick Hodges, and Mark Dowaliby, actively participated and approved County Resolution No. 2009-07 which defines county charges, fees, and fines enforced by animal control.  These fees are excessive and violate the 8th amendment excessive bail, fees, with resulting cruel and unusual punishment.

268.    In committing the acts complained of herein, Defendants acted under color of state law to deprive Plaintiffs as alleged herein of certain constitutionally protected rights including, but not limited to: a) the right to be free from unreasonable searches and seizures; b) the right not to be deprived of liberty without due process of law; c) the right not to be deprived of property by excessive bail (bond) without due process of law; d) the right to be free from cruel and unusual punishment; e) the right to just compensation for taking of property.

## PRAYERS FOR RELIEF

WHEREFORE, the above premises considered, Plaintiffs' demand:

1. That process issue to Defendants and they be required to answer in time allowed by law.

2. That judgement be rendered in favor of the Plaintiffs and against the Defendants on all claims asserted herein.

3. That Plaintiffs be awarded those damages to which it may appear they are entitled by proof submitted in this cause for actual damages, their physical and mental pain and suffering, both past and future; permanent injury and disability; loss of enjoyment of life; loss of their personality, our dogs; and medical and psychological expenses, both past and future.

4. That Plaintiffs be awarded treble punitive damages against Defendants.

5. That Plaintiffs' be awarded reasonable expenses incurred in this litigation, including reasonable attorney and expert fees, pursuant to 42 U.S.C Section 1988 (b) and (c).

6. That the Plaintiffs receive any further and general relief to which they are entitled, such as prospective relief that warrants declaratory relief with state statutes 18-9-202 and 18-9-202.5 be declared unconstitutional and injunctive relief with a cease and desist order on enforcement of these unconstitutional statutes until legislatively corrected.

7. A jury for the trial of this matter.

Respectfully submitted by pro se litigants,

Samuel M Walker
POB 14085
Colorado Springs, CO 80914
719-646-1919 (h)

Diane H Walker
POB 59
Florissant, CO 80816
719-330-7325 ©