**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.        11-cv-03238-PAB-KMT

SAMUEL M. WALKER, pro se
DIANE H. WALKER, pro se

Plaintiffs,

v.

FRED WEGENER, individual and official capacity
BOBBY PRIESTLY, individual and official capacity
CINDY HARDEY, individual and official capacity
REBECCA BRAMLETT, individual and official capacity
AMY FRANCK, individual and official capacity
JUAN GALLEGOS, individual and official capacity
SGT. BROWN, individual and official capacity
PARK COUNTY
JOHN TIGHE, individual and official capacity
DICK HODGES, individual and official capacity
MARK DOWALIBY, individual and official capacity
PARK COUNTY COMMISSIONERS
JOHN SUTHERS, individual and official capacity
DEBRA MCLIMANS, individual and official capacity

Defendants.

---

**DEFENDANTS FRED WEGENER, BOBBY (SIC) PRIESTLY, CINDY HARDEY,
REBECCA BRAMLETT, AMY FRANCK, JUAN GALLEGOS, AND DEP. SGT.
BROWN'S REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

---

Defendants, Fred Wegener, Bobby (sic) Priestly, Cindy Hardey, Rebecca Bramlett, Amy Franck, Juan Gallegos, and Dep. Sgt. Brown, by and through Timothy P. Schimberg and Andrew R. McLetchie of Fowler, Schimberg & Flanagan, P.C., hereby submit their Reply in Support of Their Motion for Summary Judgment as follows:

## I. INTRODUCTION

In their Motion, Defendants established that they were entitled to judgment as a matter of law. The Defendants showed that the warrant allowed them to search for six deceased dogs and only four deceased dogs were seized. Therefore, Defendants showed that their execution of the January 11, 2010 search warrant was objectively reasonable under the totality of the circumstances.

In Response, Plaintiffs contend that Defendants exceeded the scope of the search warrant because the search warrant only allowed Defendants to search for six deceased dogs. Plaintiffs argue that after Defendants found the remains of six dogs, that were not among the six dogs Defendants were searching for, Defendants needed to cease their search because they found a sixth deceased dog. In other words, Plaintiffs argue Defendants needed to cease their search once six dead dogs were found regardless of whether the dogs found were the ones Defendants were searching for. This argument is not tenable.

The undisputed facts show that Defendants complied with the terms of the search warrant by looking for six deceased Huskies on Plaintiffs' property that they believed had recently died due to neglect by Plaintiffs. Plaintiffs construction of the plain language of the search warrant is myopic and inconsistent with the controlling legal authorities. Accordingly, Defendants are entitled to judgment as a matter of law concerning Plaintiffs' sole remaining claim for relief for allegedly exceeding the scope of the January 11, 2010 Warrant in violation of Plaintiffs' Fourth Amendment rights.

## II.       RESPONSE TO THE WALKERS' "STATEMENT OF MATERIAL UNDISPUTED FACTS"

1.      Admitted.  Defendants admit that the search warrant speaks for itself.  The Defendants deny Plaintiffs' characterizations of the warrant.

2.      Admitted.

3.      Denied.  The first, second, and third paragraphs on the second page of Defendants' Exhibit C to the Motion for Summary Judgment (Sergeant Priestly's affidavit in support of a search warrant) outline six dogs that she suspected had recently died at the Walkers' property.  In the warrant, Sergeant Priestly requested authority to search for those six deceased dogs.

4.      Admitted in part and denied in part.  Plaintiffs' cite no record facts for this undisputed fact.  Defendants admit that Sergeant Priestly and others used a backhoe to search for deceased animals at Plaintiffs' property.  Defendants deny that a backhoe was used to "desecrate the animal grave yard."  Plaintiffs have cited no record support for the claim that this was a "animal grave yard."  Further, Plaintiffs cited no record support for the proposition that any alleged "animal grave yard" was "desecrated."

5.      Admitted.

6.      Admitted.  It is admitted as is outlined in Plaintiffs' Exhibit A, that the Officers were initially able to retrieve four dogs by digging with shovels.

7.      Admitted in part and denied in part.  It is admitted that after initially recovering four dogs, Defendants continued to search for the additional two dogs outlined in the warrant.  The thirty-five additional carcasses discovered during that excavation were further decomposed than those dogs outlined in the warrant would have been.  *See* Exhibit A, Sergeant Priestly's

Affidavit at ¶¶ 11-12. Officer Bramlett's report, attached to Plaintiffs' Response as Exhibit A, is instructive and should be reviewed in its entirety. In particular, the fourth and fifth full paragraphs provide as follows:

> As we approached the area known as the "pit" I noticed that there were no dogs in it. I asked Sergeant B. Priestly if Samuel had removed the deceased dogs, and she stated that she did not know, but it appeared the ground had been recently dug up. Corporal Hardey, Officer C. France and I began to dig up the ground. After a very short time, we all began finding deceased animals both inside and outside of dog food bags. The ground was frozen, however we were able to dig our four deceased dogs and one deceased cat from the shallow and recently dug grave. These dogs were identified as the same dogs seen on the last visit to the Walker Property, just thrown on top of the dirt in the pit. We photographed each animal both inside the pit and place in a white plastic bag outside of the pit. These photographs were identified with yellow placards listed from A to Z ending at AK. (see attached photographs).
>
> Once we removed the dogs that we could with only shovels, we had the men from Road and Bridge being digging with the backhoe. We uncovered several more dog food bags containing more deceased dogs that were farther along in the decomposition process. We dug approximately six feet deep, and continued to move up the ravine towards the fence line. As we continued we began finding only bones, skulls, femurs, and ribs. We also uncovered what appeared to be the skull of a goat or something like that. All of these findings were photographed and marked. (see Sergeant B. Priestly's report.) Once the entire ravine was dug, in total, we uncovered approximately thirty-five deceased dogs.

8.     Admitted in part and denied in part. It is admitted that Defendants recovered four dogs. Plaintiffs cite no record support for the proposition that those four recovered dogs were "euthanized." Plaintiffs cite no record support for the proposition that the opening of dog food bags in which deceased and neglected dogs had been stuffed into created a "biohazard to the environment."

9.     Admitted in part and denied in part. Defendants admit that they continued digging after discovering four of the dogs identified in the warrant. Defendants continued

digging to try and find the other two dogs identified in the warrant, but were unable to do so. *See* Exhibit A at ¶ 13. Defendants admit that additional deceased dogs were discovered, but those were not the deceased dogs identified in the warrant. *See* Exhibit A attached hereto, Affidavit of Bobbi Priestly at ¶ 12.

10. Denied. The affidavit in support of the search warrant made clear that the Defendants were looking for six specific dogs that they believe recently died at the property. *See* Exhibit A, Bobbi Jo Priestly's affidavit, *see also,* affidavit in support of the search warrant (Exhibit C to the Motion for Summary Judgment) at p. 20 ¶¶ 1-4. In executing the warrant, the Officers found four deceased dogs, whose decomposition was consistent with that of recently deceased Huskies. *Id.* at ¶ 8. The dogs that Defendants were searching for had recently died. *Id.* at ¶ 7. The additional remains that were recovered during this search were decomposed such that the Officers did not believe that they were recently deceased. *Id.* Accordingly, the Officers continued searching for the two additional dogs that they believed were recently deceased. *Id.*

11. It is admitted that Plaintiffs advised Defendants that there were "euthanized animals" on the property. However, this fact is immaterial.

12. Denied. Exhibit D is hearsay and cannot be considered in deciding this summary judgment motion. Exhibit D appears to be a web page from the Colorado Veterinary Medical Association.

13. Denied. Again, Exhibit E is a letter addressed to an unknown recipient from a Veterinarian named James P. Wright. The letter is hearsay and cannot be considered.

14. This fact is immaterial, but is admitted in part and denied in part. Plaintiffs cite no record support for the proposition that each buried dog was in a sealed plastic bag.

15. Denied. Plaintiffs cite no record support for this fact.

16. Admitted in part and denied in part. Defendants admit, for purposes of summary judgment, the facts set forth in the Affidavit of Nancy Mae Cease attached to Plaintiffs' Motion for Summary Judgment as Exhibit F. That affidavit merely establishes that she took photographs of an animal graveyard located at Plaintiffs' property. It further states that she "personally observed animal remains (bones) strewn over the surface of the graveyard and at least two plastic bags were partially exposed to the environment at the surface." It further states that she "personally observed a very thick blue bag torn open with what appeared to be numerous bite marks on the plastic by wildlife." The affidavit does not state when these observations were made. The affidavit does not state where the blue plastic bag came from. The remaining photographs attached to this exhibit as Exhibits F1-F3 are of such poor quality that they cannot be determined to show anything.

17. Denied. Plaintiffs cite no record support for this fact.

18. Denied. Plaintiffs cite no record support for this fact.

19. Admitted.

20. Denied. Plaintiffs' Exhibit D is hearsay and should not be considered. Plaintiffs cite no admissible evidence that stands for the proposition that exposing a euthanized dog on the surface of the land creates a biohazard.[1]

---

[1] Plaintiffs make repeated references to the Federal Migratory Bird Act; the Eagle Protection Act; and the Endangered Species Act. The Eagle Protection Act and the Migratory Bird Act do not allow for private rights of action either express or implied. *See Defenders of Wildlife v. The Environmental Protection Agency,* 882 F.2d 1294, 1301-1302 (8th Cir. 1988) *see also, Turtle Island Restoration Network v. United States Department of Commerce,* 438 937 (9th Cir. 2006) (holding that the Migratory Bird Act does not authorize a private right of action). The Endangered Species Act does allow for citizen suits. *See generally,* 24A Fed.Prac. Lawyers Ed.,

### III.     PLAINTIFFS CANNOT MEET THEIR BURDEN TO DEFENDANTS' QUALIFIED IMMUNITY DEFENSE

It is Plaintiffs' burden to demonstrate that Defendants are not entitled to Qualified Immunity.  *See Anderson v. Creighton,* 483 U.S. 635, 639-40 (1987).  Once a Section 1983 defendant asserts qualified immunity, the plaintiff must show:  (1) that the defendant violated a constitutional or statutory right; and (2) that the right was clearly established when the violation occurred.  *See Olsen v. Layton Hill Mall,* 312 F.3d 1304, 1312 (10th Cir. 2002).  Plaintiffs have failed to meet this burden.

The law in this circuit is well settled that a law enforcement officer's reliance on a valid warranty entitles them to qualified immunity on a Fourth Amendment claim.  *See generally, Davis v. Gracie,* 111 F.3d 1472, 1480 (10th Cir. 1997), *see also, Lewis v. City of Mount Vernon,* 984 F.Supp. 748, 754 (S.D.N.Y. 1997) (a search warrant issue by a neutral magistrate, upon a finding of probable cause, must be afforded great deference and creates a presumption that a officers executing the warrant acted in an objectively reasonable fashion.").  In the *Lewis* case, in discussing the reasonableness of the officers' execution of a search warrant the Court noted, "in evaluating the individual defendants' qualified immunity claim, however, the standard is not whether the officer's conduct could have been improved upon.  Rather, the question is whether it was reasonable for the officers-and the magistrate-to have concluded that the issuance and execution of the warrant did not violate the Fourth Amendment." *Id.*

---

§ 56: 2130, Notice Required Prior to Bringing Suit.  However, prior to bringing suit under the Endangered Species Act, a citizen must provide sixty days notice to the Secretary of Commerce and the Secretary of Interior.  *Id.* (citing 16 U.S.C. § 1540(g)(2)(B)(i)).  Plaintiffs have provided no evidence that they provided any notice to the Secretary of Commerce or the Secretary of the Interior under the Endangered Species Act.  Therefore, to the extent that Plaintiffs are attempting to assert any cause of action under the statute, Defendants are entitled to judgment as a matter of law.

7

An officer's conduct in executing a search warrant is subject to the Fourth Amendment's mandate of reasonableness from the moment of the officer's entry until the moment of departure. *See Lawmaster v. Ward*, 125 F.3d 1341, 1348 (10th Cir. 1997). In the *Lawmaster* case, the Tenth Circuit concluded that government agents executing a warrant authorizing the search of a home for an unregistered machine gun and machine gun parts did not act unreasonably by continuing to search after discovering a gun similar to that described by an informant that was not an illegal machine gun. *Id.* The Court concluded that an illegal gun could have been hidden somewhere else in the house. *Id.* Similarly, in this case, the Officers did not act unreasonably in continuing to look for the two additional deceased dogs that they suspected might be within the pit after finding other deceased dogs.

Government agents conducting a search are entitled to rely, in good faith, on a magistrate's determination of probable cause. *Id.* Although the Constitution does not specifically address how police officers should execute a search warrant. *Id.* A warrant that it is reasonably executed will withstand constitutional scrutiny. *Id.* A police officer's conduct in executing a search warrant is subject to the Fourth Amendment's mandate of reasonableness. *Id.* An officer may conduct a search provided his search is reasonably necessary to effectuate the warrant's purpose. *Id.* Whether a police officer's conduct in executing the search warrant is reasonable is a highly fact dependent inquiry that must be determined on a case by case basis. *Id.* In addressing the reasonableness of the execution of a search warrant in the context of a qualified immunity defense, the Court must evaluate the totality of the circumstances as a matter of law. *Id.*

In order for a plaintiff to show that the law is clearly established, for purposes of a qualified immunity defense, is not enough for the plaintiff to make general allegations that the officer's conduct was an unreasonable violation of the Fourth Amendment. *Id.* Rather, the asserted rights contours must be sufficiently well defined such that a reasonable official would understand that what he or she was doing violates that right. *Id.*

In this case, the search warrant specifically allowed the Officers to search Plaintiffs' property for six deceased Husky dogs. The six deceased Husky dogs were described in the affidavit in support of the search warrant. The affidavit in support of the search warrant explained that the Officers believed that the deceased dogs would be located in a pit on the property in which other deceased dogs were buried. The Officers executed the warrant on January 13, 2011. The Officers used shovels and dug in the area around the pit and discovered four of the dogs described in the affidavit in support of the warrant. The Officers continued to search for the other two dogs described in the affidavit in support of the warrant. The search involved using a backhoe to dig after the Officers were not able to uncover the two dogs by using shovels. As is discussed above, the search resulted in finding other dogs that were far more decomposed than the deceased dogs that the Officers were searching for. The undisputed facts set forth above and in the previous briefs outline the totality of the circumstances in this case. This Court should find that as a matter of law, under the totality of the circumstances, that the Defendants' conduct in executing the January 11, 2010 search warrant was objectively reasonable and as such, they are entitled to qualified immunity.

### IV. CONCLUSION

The Defendants have demonstrated that they are entitled to qualified immunity. Plaintiffs' argument that Defendants needed to stop the search after a sixth deceased dog was found, regardless of whether it was one of the dogs Defendants were searching for, is myopic and should be rejected. Under the totality of the circumstances, Defendants' execution of the search warrant was objectively reasonable. Therefore, this Court should find that Defendants are immune from suit and grant judgment as a matter of law to Defendants.

Respectfully submitted this 10th day of December, 2012.

*(Original signature on file at the office of Fowler, Schimberg & Flanagan, P.C.)*

s/Timothy P. Schimberg
Timothy P. Schimberg
Andrew R. McLetchie

FOWLER, SCHIMBERG & FLANAGAN, P.C.
1640 Grant Street, Suite 150
Denver, Colorado 80203
(303) 298-8603

ATTORNEYS FOR PARK COUNTY DEFENDANTS

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 10th day of December, 2012, I caused a true and correct copy of the foregoing to be filed via the ECF system, with notice of same being electronically served to the following:

Herbert C. (Lee) Phillips, Esq.
Park County Attorney
Hayes, Phillips, Hoffman & Carberry, P.C.
P.O. Box 1046
675 Main Street
Fairplay, CO 80440


      Transmitted via First Class U.S. Mail, proper postage prepaid, to the following:

| | |
|---|---|
| Samuel M. Walker | Diane H. Walker |
| P.O. Box 14085 | P.O. Box 59 |
| Colorado Springs, CO 80914 | Florissant, CO 80816 |
| ***Pro Se* Plaintiff** | ***Pro Se* Plaintiff** |


                                                           s/Leslie Johnson
                                                           Leslie Johnson