IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11–cv–03238–RM–KMT

SAMUEL M WALKER, and
DIANE H WALKER,

      Plaintiffs,

v.

FRED WEGENER,
BOBBY PRIESTLY,
CINDY HARDEY,
REBECCA BRAMLETT,
AMY FRANCK,
JUAN GALLEGOS,
DEPT SGT BROWN,
PARK COUNTY, and
PARK COUNTY COMMISSIONERS,

      Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

      This case comes before the court on "Defendants' Motion for Summary Judgment."

(Doc. No. 51, filed Oct. 25, 2012.)  For the following reasons, the court recommends that

Defendants' Motion be granted.

## PROCEDURAL HISTORY

      In this case, Plaintiffs have challenged several searches and seizures that took place on

their property between December 15, 2009 and January 13, 2010.  (*See generally* First Am.

Compl. [FAC], filed Sept. 24, 2012.)  Plaintiffs' Original Complaint was filed on December 12,

2011.  (Doc. No. 1.)  Therein, Plaintiffs asserted six claims pursuant to Section 1983, although

each of those claims incorporated a number of separate alleged constitutional violations.

On December 22, 2011, former defendants John Suthers and Debra McLimans filed a

Motion to Dismiss.  (Doc. No. 3.)  On March 26, 2012, District Judge Philip A. Brimmer

adopted this court's March 2, 2012 Recommendation (Doc. No. 21) that Mr. Suthers and Ms.

McLimans's Motion to Dismiss be granted and dismissed Mr. Suthers and Ms. McLimans as

defendants.

On January 23, 2012, the remaining Defendants filed two separate motions to dismiss

(Doc. Nos. 14 & 15) and, on March 27, 2012, Plaintiffs filed an "Opposed Motion for One Time

Amendment of Plaintiffs' Complaint as a Matter of Course" (Doc. No. 33 [Mot. Am.]).  On

September 24, 2012, Judge Brimmer enter an order adopting this court's August 30, 2012

Recommendation that both Defendants' motions to dismiss and Plaintiffs' Motion to Amend be

granted in part and denied in part.  Specifically, as to the motions to dismiss, Judge Brimmer's

order dismissed all of Plaintiffs' claims, with the exception of Plaintiffs' Fourth Amendment

claim relating to the January 11, 2010 search of the Park County Property.  Similarly, Judge

Brimmer's order (1) granted Plaintiffs' Motion to Amend, and accepted Plaintiffs' First

Amended Complaint, to the extent that it sought to assert a Fourth Amendment claim based on

the January 11, 2010 search of the Park County Property;[1] and (2) denied Plaintiffs' Motion to

---

[1] Plaintiffs' Motion to Amend was also granted to the extent that it sought to remove
claims premised on criminal statutes—namely 18 U.S.C. § 241-242, 371, 1001, and 2234.

Amend, and rejected the proposed First Amended Complaint, to the extent that it sought to assert

any other claims or add any additional defendants.  Finally, Judge Brimmer granted Defendants

leave to file a motion for summary judgment as to Plaintiffs' remaining Fourth Amendment

claim within thirty days of the entry of his order.

Claim four of the First Amended Complaint—i.e. the sole remaining claim that relates to

the January 11, 2010 search—alleges, in pertinent part:

> Defendants . . . willfully exceed[ed] the authority and scope of the court approved
> search and seizure warrant with unnecessary severity.  [Defendants] found the
> deceased dogs specifically described by the warrant on the surface, but . . . went
> on a "witch hunt" and continued to dig up the entire grave yard to search for more
> dogs not declared in the warrant.  They desecrated the grave yard which was
> hallowed ground, and created a biohazard to the environment, an extreme hazard
> to local endangered animals, and a direct violation of Federal environmental
> statutes.

(FAC ¶ 249.)  Defendants filed their Motion for Summary Judgment as to this claim on October

25, 2012.  (*See* Mot. Summ. J.) (S*ee also* Minute Order, Doc. No. 54 (granting Defendants' an

extension of time to file their Motion for Summary Judgment.)  "Plaintiffs' Answer to

Defendants [sic] Motion for Summary Judgment" (Doc. No. 56 [hereinafter "Response"]) was

filed on November 19, 2012 and Defendants' Reply was filed on December 10, 2012 (Doc. No.

61.)  Accordingly, this matter is ripe for the court's review and recommendation.

## FACTUAL BACKGROUND

Plaintiffs are residents of Teller County, Colorado and owned property in Park County,

Colorado, where, prior to December 15, 2009, they raised, trained, and occasionally bred sled

dogs on 160 acres of ranch land near the town of Hartsel in Park County.  (FAC ¶¶ 22-23.)  On

December 15, 2009, Defendant Priestly, a Sergeant assigned to Animal Control with the Park County Sheriff's Department (Mot. Summ. J., Ex. D, Affidavit of Sergeant Bobbi Jo Priestly ¶ 1 [Priestly Aff.]), received a call from a representative with the Humane Society relaying a complaint regarding the conditions of the dogs on the Park County Property (FAC ¶ 53). Accordingly, Defendants Priestly, Wegener, Bramlett, and Hardey conducted several searches of Plaintiffs' property on December 15-17, 2009, and eventually seized a number of dogs, dog food, equipment and other personal property.  (Aug. 30, 2012 Recommendation at 2-5.)  A more detailed factual recitation of these events is included in this court's August 30, 2012 Recommendation, and is incorporated herein by reference.  (*See id.*)

On January 11, 2010, Defendant Priestly obtained a search warrant from a State District Court Judge authorizing Defendants to return to Plaintiffs' property and search for and seize "[s]ix deceased dogs of Husky descent that are located in a ravine on the property."  (Mot. Summ. J., Ex. A.)  On January 13, 2010, Defendants Priestly, Franck, Hardey, and Bramlett returned to the Park County Property to execute that search warrant.  (Resp., Ex. A.)

When they arrived, they approached the ravine, or "pit."  (*Id.*)  Defendant Bramlett noticed that there were no dogs in the ravine.  (*Id.*)  Instead, it appeared to Defendant Bramlett that "the ground had been recently dug up."  (*Id.*)  As such Defendants Bramlett, Hardey, and France began to dig up the ground with shovels.  (*Id.*; *see also* Priestly Aff. ¶ 7.)  After "a very short time," they began finding deceased dogs both inside and outside of dog food bags.  (Resp., Ex. A.)  Although the ground was frozen, they were eventually able to dig out four deceased dogs (as well as one deceased cat).  (*Id.*; *see also* Priestly Aff. ¶ 9.)  Defendants identified these

4

dogs as the dogs previously seen on the last visit to Plaintiffs' property; in other words, these deceased dogs constituted four of the six deceased dogs Defendants were authorized to search for and seize by the search warrant. (*See* Resp., Ex. A.)

Once Defendants removed the dogs that they were able to uncover using only shovels, Defendants had two members from Park County Road and Bridge begin digging with a backhoe. (*Id.*) They uncovered several more dog food bags containing more deceased dogs that were too decomposed to be the remaining two deceased dogs authorized to be seized by the search warrant. (*Id.*) As they dug further, they began finding only bones, skulls, femurs, and ribs. (*Id.*) Ultimately, Defendants dug approximately six feet deep throughout the ravine. (*Id.*) Once the entire ravine was dug up, Defendants uncovered approximately thirty-five deceased dogs. (*Id.*)

## LEGAL STANDARD

### A. *Summary Judgment Standard*

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c). A disputed fact

is "material" if "under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citing *Anderson*, 477 U.S. at 248).

When ruling on a motion for summary judgment, a court may consider only admissible evidence. *See Johnson v. Weld Cnty., Colo.*, 594 F.3d 1202, 1209-10 (10th Cir. 2010). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Concrete Works*, 36 F.3d at 1517. Moreover, because Plaintiffs are proceeding *pro se*, the court, "review[s] [their] pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). At the summary judgment stage of litigation, a plaintiff's version of the facts must find support in the record. *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Thomson*, 584 F.3d at 1312.

### B.    *Qualified Immunity*

The doctrine of qualified immunity shields government officials from individual liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Saucier v. Katz*, 533 U.S. 194, 121 (2001).

Because of the underlying purposes of qualified immunity, courts address qualified immunity questions differently from other summary judgment decisions.  *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001).  After a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff, who must meet a "heavy two-part burden." *Id.*  Plaintiffs first must establish that the facts, taken in the light most favorable to Plaintiffs, show that the officer's conduct violated a constitutional right.  *Saucier*, 533 U.S. at 201.  If Plaintiffs establish a violation of a constitutional or statutory right, "the next, sequential step is to ask whether the right was clearly established." *Id.*  This determination must be made "in light of the specific context of the case, not as a broad general proposition." *Id.*  "The relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202.  If the plaintiff fails to satisfy either part of this "heavy two-part burden," the court must grant the defendant qualified immunity and dismiss the deficient claims.

The United States Supreme Court has altered somewhat the analytical process outlined in *Saucier*, holding that the sequence of the analysis is no longer mandatory. *Pearson v. Callahan*, 555 U.S. 223 (2009). The judges of the district courts and the courts of appeals are now permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand. *Id.* at 236. The Supreme Court noted, however, that the sequence set forth in *Saucier* often is the appropriate analytical sequence. *Id.*

## ANALYSIS

Defendants argue in their Motion for Summary Judgment that they are entitled to qualified immunity from Plaintiffs' fourth claim because they complied with relevant case law regarding the execution of a warrant. (Mot. Summ. J. 8-11.) The court agrees.

Plaintiffs do not dispute the validity of the search warrant that authorized Defendants to conduct the January 13, 2010 search. *See also Lawmaster v. Ward,* 125 F.3d 1341, 1348 (10th Cir. 1997) (citing *United States v. Williams,* 897 F.2d 1034, 1038-39 (10th Cir. 1990) ("Agents conducting a search are entitled to rely, in good faith, on a magistrate's[2] determination of probably cause."). Rather, they maintain the manner in which the warrant was executed violated their rights under the Fourth Amendment. (*See* FAC ¶ 249.)

_____

[2] Plaintiffs point out that the search warrant was not signed by a "detach Magistrate," but was instead issued by a District Judge. (Resp. at 2.) This fact is immaterial. Although, more typically, it is a magistrate judge who signs and issues warrants, the fact that a district judge issued the search warrant issue does not affect its validity.

"Although the Constitution does not specifically address how an officer should execute a search warrant, a warrant that is reasonably executed will withstand constitutional scrutiny." *Id.* (citing *Dalia v. United States,* 441 U.S. 238, 257 (1979)); *see also United States v. Penn,* 647 F.2d 876, 882 n.7 (9th Cir. 1980) (citing *Terry v. Ohio,* 392 U.S. 1, 17-19 (1968)) ("A warranted search is unreasonable if it exceeds in scope or intensity the terms of the warrant.").

> An officer's conduct in executing a search is subject to the Fourth Amendment's mandate of the reasonableness from the moment of the officer's entry until the moment of departure. However, so long as the officer's conduct remains within the boundaries of reasonableness, an officer has discretion over the details of how best to proceed with a search warrant's execution. Occasionally, such details include damaging property, detaining residents, or taking action necessary to protect the searching officers. However, because the touchstone of the constitutionality of an officer's conduct during a search is reasonableness, when executing a search warrant, an officer is limited to conduct that is reasonably necessary to effectuate the warrant's purpose.

*Lawmaster,* 125 F.3d at 1349 (internal citations omitted).

The facts presented in this case are very similar to *United States v. Becker,* 929 F.2d 442, 446 (9th Cir. 1991), where the Ninth Circuit Court of Appeals considered whether using a jackhammer to search beneath a concrete slab was unreasonable. In *Becker,* a "valid and broad" warrant was issued to search the residence of the defendant. *Id.* at 444, 446. On the day agents arrived to execute the warrant, they observed a newly-poured concrete pad located near a shop on the defendants' property, which the defendant admitted had been poured after a search warrant had been executed at his neighbor's home. *Id.* at 444. The agents then rented a jackhammer to remove portions of the concrete slab and discovered several pieces of aluminum foil, which later tested positively for the presence of methamphetamine. *Id.*

9

The Ninth Circuit first concluded that because the concrete slab was within the residence and yard subject to the warrant, "searching *beneath* [the slab] was clearly within the scope of the warrant." *Id.* at 446 (citing *Penn,* 647 F.2d at 881) (emphasis added). The fact that the slab was within the scope of the warrant alone, however, did not end the court's inquiry because "[r]easonableness in scope can be 'vitiated . . . by the manner in which the police conducted the search . . . .'" *Id.* (quoting *Penn,* 647 F.2d at 882-83). The *Becker* court further noted that "while the destruction of property in carrying out a search is not favored, it does not necessarily violate the fourth amendment." *Id.* (citing *Tarpley v Green,* 684 F.2d 1, 9 (D.C. Cir. 1982)); *see also Dalia,* 441 U.S. at 258 ("[O]fficers executing search warrants on occasion must damage property in order to perform their duty.") Instead, consistent with the Tenth Circuit's discussion in *Lawmaster,* "[t]he standard is reasonableness; 'destruction of property that is not reasonably necessary to effectively executed a search warrant may violate the Fourth Amendment.'" *Becker,* 929 F.2d at 446; *see also Lawmaster,* 125 F.3d at 1349.

Under the particular facts and circumstances of that case, the *Becker* court concluded that using a jackhammer to remove the slab and searching beneath it was not unreasonable. *Becker,* 929 F.2d at 446-47. More specifically, because the agents were presented with evidence of the manufacture of methamphetamine in the shop next to the concrete slab, and because the concrete slab was poured shortly after the defendant's associate's home across the street had been searched, "the agents had ample reason to believe that the concrete slab was being utilized to hide the very evidence they were legally on the premises to find." *Id.* Because "[t]he only way

to obtain this evidence was to use a jackhammer to break up the concrete," under the circumstances, the destructive search technique was not unreasonable.  *Id.* at 447.

Here, as in *Becker,* the search warrant issued to Defendants was broad; it authorized Defendants to search for "[s]ix dogs of Husky descent that are located in a ravine on the property."  (Mot., Ex. A.)  Contrary to Plaintiffs' position (Resp at 2), the court finds nothing in Defendant Priestly's affidavit submitted in support of the search warrant that would somehow limit the area to be searched to the surface of the ravine.  Consequently, searching beneath the surface of the ravine was within the scope of the warrant.  *Becker,* 929 F.2d at 446 (citing *Penn,* 647 F.2d at 881).[3]

In addition, the court finds that using shovels and then a backhoe to execute the search was not unreasonable.  Upon arriving at the ravine, Defendant Bramlett notice that there were no deceased dogs on the surface and that it appeared that the ground had been recently disturbed.  (Resp., Ex. A.)  As such, Defendants had ample reason to believe that the deceased dogs were on the premises, but that they had since been buried under the ravine.  (*See also* Priestly Aff. ¶ 7.)  Indeed, four of the dogs identified in the warrant were found buried.  Accordingly, it was not unreasonable for Defendants to beginning digging with shovels to locate the deceased dogs.

---

[3] Even assuming that Defendants had sufficient time to obtain an additional search warrant reflecting the fact that the deceased dogs may have since been buried, it was unnecessary for them to do so "as they already had a warrant to search the [ravine] for precisely the type of evidence found under the [ravine]." *Becker,* 929 F.2d at 446 (citing *United States v. Morris,* 647 F.2d 568, 573 (5th Cir. 1981)).

Because the ground was frozen, however, Defendants were only able dig out four of the six deceased dogs identified in the warrant using shovels.  (Resp., Ex. A; Priestly Aff. ¶ 9.)  As such, the court cannot say it was unreasonable for Defendants to then employ a backhoe to find the remaining deceased dogs.  Again, Defendants were presented with facts suggesting that the deceased dogs—including the two deceased dogs Defendants were unable to locate using only shovels—had been buried beneath the ravine.  The fact that Defendants ultimately were unable to locate the last two deceased dogs is immaterial to whether the execution was reasonable.  Instead, because Defendants were presented with evidence suggesting that these dogs had been buried beneath the ravine, the court finds that employing a backhoe to excavate the frozen ground in order to locate the remaining two deceased dogs was reasonably necessary to effectuate the warrant's purpose.  *Lawmaster,* 125 F.3d at 1349.

Plaintiffs also maintain that Defendants left the ravine in an essentially ransacked state by (1) opening the sealed plastic bags containing some of the dead dogs; (2) leaving those plastic bags exposed to the environment; and (3) not re-burying any of the previously-buried dogs a minimum of two feet[4] below the ground after they excavated the ravine.  (Resp. at 3.)  Plaintiff allege that this left a number of the deceased dogs still strewn about the surface of the ravine even at the time Plaintiffs filed their response.  (*Id*)  Under some circumstances, a search that

---

[4] Plaintiffs maintain that re-burying the dogs at least two feet underground was appropriate, if not required, because some of the dogs were euthanized and thus, if not buried, they presented a potential poison threat to local wildlife.  (*See* Resp., Ex. B-E.)  Indeed, Plaintiffs maintain that exposing euthanized dogs on or near the surface creates a biohazard in violation of the Migratory Bird Treaty Act, Eagle Protection Act, and Endangered Species Act.  (*Id.* at 3.)

unreasonably ransacks an area to be searched may violate the Fourth Amendment. *Lawmaster,* 125 F.3d at 1349-50 ("[W]e are unable to hold the Agents' conduct of leaving Mr. Lawmaster's gun in a dogs' water bowl and leaving cigar and cigarette ashes in his bedding was reasonably necessary to carry out the warrant's purpose to search for and seize a machine gun and parts.") However, because Defendants have raised the defense of qualified immunity in the summary judgment context, it is Plaintiffs burden to present some evidence to support their allegations of the state of the ravine after the search; mere allegations, without more, are insufficient to avoid summary judgment. *Id.* (citing *Ginter v. Stallcup,* 869 F.2d 384, 388 (8th Cir. 1989)).

The court finds that Plaintiffs have failed to submitted evidence on this aspect of their fourth claim sufficient to defeat Defendants' assertion of qualified immunity. The only evidence Plaintiffs have submitted in support of their allegations as to the state the ravine after the January 13, 2010 search is an Affidavit of Nancy Mae Sease and several pictures attached thereto. (Resp., Ex. F [Sease Aff.] & F-1–F-3.) In her affidavit, Ms. Sease maintains that "she personally observed animal remains (bones) strewn over the surface of the graveyard[,] at least two plastic bags [] partially exposed to the environment at the surface . . . and a very thick blue bag torn open and with what appeared to be numerous bite marks on the plastic by local wildlife." (Sease Aff. ¶¶ 3-4.) However, as Defendants point out (Reply at 6), Ms. Sease's affidavit does not establish *when* she made these observations. (*See id.*) The pictures attached to Ms. Sease's affidavit are likewise undated and, moreover, are of such poor quality that the court is unable to ascertain the condition of the area. (*See* Resp. Ex. F-1–F-3.) As such, even viewing the facts

submitted in a light most favorable to Plaintiffs, there is no evidence to directly attribute the state of the ravine, as observed by Ms. Sease, to Defendants' actions.

Altogether, for the foregoing reasons, the court finds that Plaintiffs have failed to establish that Defendants violated their Fourth Amendment rights. Therefore, the court finds that Defendants are entitled to qualified immunity from Plaintiffs' fourth claim and that, as a consequence, Defendants' Motion for Summary Judgment is properly granted.

WHEREFORE, for the foregoing reasons, the court respectfully

RECOMMENDS that "Defendants' Motion for Summary Judgment" (Doc. No. 51) be GRANTED and that summary judgment be entered in favor of Defendants on Plaintiffs' remaining claim. The court further

RECOMMENDS that the District Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this recommendation would not be taken in good faith and therefore *in forma pauperis* status will be denied for the purpose of appeal. *See Coppedge v. United States*, 369 U.S. 438 (1962). Thereafter, if Plaintiffs file a notice of appeal they also must pay the full $455.00 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days of the court's final order in accordance with Fed. R. App. P. 24.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.

14

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A

general objection that does not put the district court on notice of the basis for the objection will

not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's

report and recommendation must be both timely and specific to preserve an issue for de novo

review by the district court or for appellate review." *United States v. One Parcel of Real Prop.*

*Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to

make timely objections may bar *de novo* review by the district judge of the magistrate judge's

proposed findings and recommendations and will result in a waiver of the right to appeal from a

judgment of the district court based on the proposed findings and recommendations of the

magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's

decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection

does not preclude application of the "firm waiver rule");  *One Parcel of Real Prop.*, 73 F.3d at

1059-60 (a party's objections to the magistrate judge's report and recommendation must be both

timely and specific to preserve an issue for *de novo* review by the district court or for appellate

review);  *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir.

1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had

waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342,

1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 14th day of June, 2013.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge